IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

| | |
|---|---|
| Heydee De Leon, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | Case No. 48-2007-CA-001452-O |
| ) | Division 35 |
| v. ) | |
| ) | CLASS REPRESENTATION |
| Bank of America, N.A.(USA), a/k/a FIA Card Services, N. A., ) ) ) | |
| Defendant. ) _____) | |

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Heydee De Leon, by and through her undersigned counsel, on behalf of herself and all others similarly situated, and sues Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., for damages, as follows:

**JURISDICTION**

1.   This is an action for damages where the matter in controversy exceeds $15,000, exclusive of interest, attorneys' fees and costs.

**VENUE**

2.   Venue is in this Court.

**CONDITIONS PRECEDENT**

3.   All conditions precedent to the filing of this suit, if any, have been performed have occurred or have been waived.

## PARTIES

4. Plaintiff Heydee De Leon is a resident of Orange County, Florida.

5. Defendant Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., is a national banking association, organized and existing under the laws of the State of Delaware, is registered and authorized to do business in Florida, and does business in Orange County, Florida.

## THE CONTRACT

6. Defendant issued a credit card to Plaintiff.

7. Plaintiff accepted and used the credit card.

8. By Plaintiff's acceptance and use of the credit card a contractual relation arose between Plaintiff and Defendant.

9. The contractual relation between Plaintiff and Defendant is primarily governed by the CARDHOLDER AGREEMENT (the Agreement), copy of which is attached hereto as Exhibit 1.

10. Section 1.3.10 of the Agreement defines "Business Day" as "Monday through Friday, excluding federal bank holidays."

11. The phrase "Business Day" is not used anywhere in the Agreement as pertains to the allegations of this complaint.

12. The phrase "Business Day" is used in the numbered sections of the Agreement only twice, to wit: on the cited

Section 1.3.10 defining it and on Section 7.6 titled "Stopping Payment on Checks."

13. Section 7.6 of the Agreement titled "Stopping Payment on Checks," has no bearing whatsoever in this case.

14. The phrase "Business Day" is used again in the "Billing Rights Summary" following the numbered sections of the Agreement in a part referring to stopping a payment, which has no bearing whatsoever in this case.

15. Several clauses of the Agreement, including section 3.2, refer to "day."

16. "Day" is not defined in the Agreement.

17. There is nothing in the Agreement indicating that "day" is anything other than a natural calendar day.

18. "Day" is defined in dictionaries as a natural 24 hour period of rotation of the Earth.

19. Several clauses of the Agreement, including section 3.2, refer to "days."

20. "Days" is not defined in the Agreement.

21. There is nothing in the Agreement indicating that "days" is anything other than more than one natural calendar day.

22. "Days" is defined in dictionaries as the plural of a natural 24 hour period of rotation of the Earth.

23.  Several clause of the Agreement, including section 4.1.2, refer to "Payment Due Date."

24.  "Payment Due Date" is not defined in the Agreement.

25.  There is nothing in the Agreement indicating that "Payment Due Date" has any meaning other than the one given to it in the English language.

26.  Section 6.1 of the Agreement states that "we (Defendant) will credit your (Plaintiff's) payment to your (Plaintiff's) Account upon receipt."

27.  There is nothing in the Agreement indicating that the phrase "we will credit your payment to your Account upon receipt" has any meaning other than the one given to it in the English language.

28.  Section 6.3 of the Agreement states "[y]ou (Plaintiff) will pay at least the Minimum Payment Due … by the Payment Due Date on you Statement."

29.  "Statement" is defined in Section 1.3.7 of the Agreement as "an Account billing statement."

30.  Plaintiff received from Defendant monthly Statements, copy of one of which is attached hereto as Exhibit 2.

31.  The Agreement does not define how or where the payment contemplated in Section 6.3 is to be made.

32.  Defendant recognizes four alternate means of payment, to wit: in person, by mail, by telephone and online.

33. Nowhere in the Agreement or the Statement does it state that a payment in person at one of Defendant's locations on a Saturday is not a payment that will be credited to Plaintiff's account "upon receipt" as provided in section 6.1 of the Agreement.

34. Nowhere in the Agreement or the Statement does it state that a Saturday is not a "day" under the Agreement.

35. Nowhere in the Agreement or the Statement does it state that the payment by Plaintiff has to be made on a "Business Day."

36. Nowhere in the Agreement or Statement does it state that if the "Payment Due Date" falls on a Saturday then the payment must be made before the Saturday.

37. Nowhere in the Agreement or Statement does it state that if the payment is made in person at one of Defendant's locations on a Saturday then the payment will not be credited upon receipt as provided in section 6.1 of the Agreement.

38. Nowhere in the Agreement or Statement does it state that if the payment is made in person at one of Defendant's locations on a Saturday then the payment will not be credited until the next "Business Day."

## THE PAYMENT

39. Defendant had and has locations in Orange County, Florida, and throughout the United States, open to the public on Saturdays where Plaintiff and others similarly situated could make and in fact made payments in person to their credit card accounts, which payments were received by Defendant.

40. Plaintiff made a payment in person at one of Defendant's locations in Orange County, Florida, on a Saturday, June 18, 2005.

## THE WRONG

41. Defendant did not credit "upon receipt" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday.

42. Defendant did not credit until the next "Business Day" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday.

43. Defendant's failure to credit "upon receipt" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday is a breach of Defendant's contractual covenant to credit Plaintiff's account "upon receipt" of the payment as provided in section 6.1 of the Agreement.

44. Defendant misled Plaintiff into believing that Plaintiff's payment made in person at one of Defendant's

locations on a Saturday would be credited to Plaintiff's account "upon receipt."

45. Defendant's breach of contract and misleading of Plaintiff as detailed above is an unfair and deceptive trade practice of Defendant.

### THE DAMAGES

46. Defendant's breach of its contract with Plaintiff, and Defendant's misleading, unfair and deceptive trade practice, has directly and proximately caused damages to Plaintiff in that it caused Plaintiff to be found late in the payment, be imposed a late payment fee, have her interest rate on the credit card balance increased, have her interest rate on subsequent credit card charges increased, or have a negative entry into her credit history, all of which caused her monetary losses.

47. Defendant has equally breached its contract, mislead and incurred in the unfair and deceptive trade practice with all others similarly situated with Plaintiff who made payments to Defendant on their credit card accounts on any given day but whose payments were not credited "upon receipt," and who, as a direct and proximate result thereof, suffered damages similar to those of Plaintiff described above.

## ATTORNEYS' FEES

48. Plaintiff has become obligated to pay attorneys' fees to her counsel and to incur in costs for this litigation.

## GOVERNING LAW

49. Section 7.18 of the Agreement establishes that the Agreement "is governed by applicable Arizona and Federal Law."

50. Under Federal Law, the regulations of the Office of the Comptroller of the Currency of the United States establish that state contract and tort claims are not preempted by Federal Law. See, Applicability of State Law to National Bank Operations, 12 C.F.R. §7.4009(c)(2009). Specifically, Section 7.4009(c) states that:

> State laws on the following subjects are not inconsistent with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers:
>
> (1) Contracts;
> (2) Torts;
> (3) Criminal law;
> (4) Rights to collect debts;
> (5) Acquisition and transfer of property;
> (6) Taxation;
> (7) Zoning; and
> (8) Any other law the effect of which the OCC determines to be incidental to the exercise of national bank powers or otherwise consistent with the powers set out in paragraph (a) of this section.

Case 6:09-cv-01251-JA-KRS Document 2 Filed 07/20/09 Page 9 of 20 PageID 25

De Leon v. Bank of America; Case No.48-2007-CA-001452-O
Amended Complaint
Page 9 of 20

Thus, according to the OCC regulations, Plaintiff's contract and tort claims are not preempted by federal law.

51. Under Arizona Law, any clause in the Agreement purporting to prohibit a class action for a breach of the Agreement or to deny Plaintiff and all others similarly situated access to the courts in a class action to redress wrongs committed by Defendant under the Agreement, is unconscionable and of no legal force and effect. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388(Ariz.,1984).

## CLASS ACTION REPRESENTATION ALLEGATIONS

52. Plaintiff brings this action on behalf of herself and other individuals similarly situated. This action is maintainable as a class action pursuant to Florida Rules of Civil Procedure, Rule 1.220(b)(1) and 1.220(b)(2), or alternately, Rule 1.220(b)(3).

53. The class is defined as:

> All credit card accounts obligors of Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., whose payments to their accounts were not credited to the accounts upon receipt, resulting in that the obligor was found late in the payment, was imposed a late payment fee, had his or her interest rate on the credit card balance increased, had his or her interest rate on subsequent credit card charges increased, or had a negative entry into his or her credit history.

54. The members of the class are so numerous that joiner of all members individually is impracticable. The exact number of the class members can be determined only by appropriate

discovery from Defendant. Plaintiff believes that the class exceeds 100,000 persons.

55. Plaintiff's claims are typical of the claims of the members of the class. Plaintiff will fairly and adequately protect and represent the interests of the members of the class, and Plaintiff, on behalf of herself and the class, has retained undersigned counsel who is experienced and competent in class actions.

56. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Since damages suffered by the individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation would make it virtually impossible for members of the class effectively to obtain individual redress for the wrongful conduct of Defendant, except by class action.

### COMMON QUESTION OF LAW AND FACT EXIST AS TO ALL MEMBERS OF THE CLASS AND PREDOMINATE OVER QUESTIONS SOLELY AFFECTING INDIVIDUAL MEMBERS OF THE CLASS

57. The questions of law and fact common to the class include, but are not limited to: whether the conduct of Defendant constitutes a breach of contract, violates the Federal Fair Credit Billing Act, is misleading, and is an unfair and deceptive trade practice.

58. Furthermore, the prosecution of separate claims and defenses by individual members of the class would create a risk of either:

   a. Inconsistent or varying adjudications concerning individual members which would establish an incompatible standard of conduct for the party opposing the class;

   b. Adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudication, or substantially impair or impede the ability of other members of the class who are not parties to protect their interest; or

   c. A further risk that many valid claims would not be prosecuted for the reason that the amounts of claims are less than the probable cost of litigation.

### Rule 1.220(a)(1)

59. Upon information and belief, the class consists of tens of thousands of persons, making individual joinder of the class members impracticable.

### Rule 1.220(a)(2)

60. There are questions of law and fact common to the class members.

61. The common questions of law and fact predominate over any question that affects any one class member.

62. Such common questions include, but are not limited to:

a. Whether Defendant breached the terms of its contracts with the class members;

b. Whether Defendant has violated the Federal Fair Credit Billing Act;

c. Whether Defendant has violated the Florida or Arizona Unfair and Deceptive Trade Practices Act; and

d. Whether Defendant's practices have caused the class members to suffer damages.

### Rule 1.220(a)(3)

63. Plaintiff's claims are typical of those of the class members.

64. Every class member has a tangible and legally protectable interest at stake in this action.

65. Plaintiff's claims and the claims of the other class members have a common origin and share a common basis.

66. Plaintiff's claims and the claims of the other class members arise from the same wrongful practices of Defendant.

67. Plaintiff stated claims are typical of the claims of the other class members because Plaintiff has been a victim of the same alleged wrongful practices.

68. Plaintiff and the other class members have the same remedial theory, seek the same relief, and are required to prove the same material and substantive facts.

69. The claims and remedial theories of Plaintiff are sufficiently aligned with the interests of other class members to ensure that the universal claims of the class will be prosecuted with diligence and care.

### Rule 1.220(a)(4)

70. Plaintiff is willing and able to serve the Court and the other class members in a representative capacity, and will undertake all of the obligations and duties material thereto.

71. Plaintiff will fairly and adequately protect the interests of the class members.

72. Plaintiff has no interest that is adverse to, or which is in direct conflict with, the interests of the other class members.

73. Plaintiff's self interests are co-extensive with, and not antagonistic to, those of the other class members.

74. Plaintiff will undertake to well and truly represent and protect the interests of the other class members.

75. Plaintiff has engaged the services of the undersigned counsel and law firm who are experienced in complex class action litigation, with specific experience in consumer protection class action litigation.

76. The undersigned counsel and law firm will adequately prosecute this action, and will assert, protect and otherwise well represent Plaintiff, and the other class members.

## Rule 1.220(b)(1)

77. Prosecution of separate actions by the individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interest of the other class members who are not parties to the action, or could substantially impair or impede the ability of other class members to protect their interests.

78. The prosecution of separate actions by the individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class.

79. Incompatible standards and inconsistent or varying adjudications on what would be, essentially, the same facts, proof, and legal theories, would also create, and allow to exist, inconsistent and incompatible rights within the class.

## Rule 1.220(b)(2)

80. Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

De Leon v. Bank of America; Case No.48-2007-CA-001452-O
Amended Complaint
Page 15 of 20

## Rule 1.220(b)(3)

81. The questions of law and fact common to the class members predominate over any questions affecting any individual class Member.

82. A class action is superior to other available methods for the fair and efficient adjudication of this dispute because:

a. Claims by individual class members are impractical because the costs to pursue individual claims far exceed the value of what any individual class member has at stake;

b. Individual class members have no interest in prosecuting or controlling separate actions;

c. It is desirable to concentrate litigation of the class members' claims in this forum; and

d. The proposed class action is manageable.

### COUNT 1: BREACH OF CONTRACT

83. Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

84. Defendant entered into a standardized Agreement with Plaintiff, attached hereto as Exhibit 1.

85. Said standardized Agreement provided that Defendant would credit Plaintiff's payments to her account upon receipt.

86. Defendant breached the standardized Agreement by failing to credit Plaintiff's payments to her account upon receipt.

87. As a result of Defendant's failure to credit Plaintiff's payments to her account upon receipt, Plaintiff has suffered damages.

88. Pursuant to the terms of the standardized Agreement, the prevailing party is to this action is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for compensatory damages; pre-judgment and post-judgment interest; declaratory and injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

### COUNT 2: FEDERAL FAIR CREDIT BILLING ACT

89. Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

90. Defendant's conduct set forth above violates the Federal Fair Credit Billing Act.

91. Specifically, 15 U.S.C. § 1666c provides in relevant part:

> Prompt crediting of payments; imposition of finance charge. Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount,

manner, location, and time indicated by the creditor to avoid the imposition thereof.

92. The regulations of the Board, specifically 12 C.F.R. § 226.10, provide in part:

> Prompt crediting of payments.
>
> (a) General rule. A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge or except as provided in paragraph (b) of this section.
>
> (b) Specific requirements for payments. If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt.

93. By failing to credit Plaintiff's account on the date that it received Plaintiff's payment, Defendant violated the above cited statute and regulation.

94. As a result of Defendant's violation of the above cited statute and regulation, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for statutory damages pursuant to 15 U.S.C. §1640; compensatory damages; pre-judgment and post-judgment interest; declaratory and injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

## COUNT 3: DECEPTIVE AND UNFAIR TRADE PRACTICES

95. Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

96. Defendant entered into a standardized Agreement with Plaintiff, attached hereto as Exhibit 1.

97. Said standardized Agreement provided that Defendant would credit Plaintiff's payments to her account upon receipt.

98. Defendant breached the standardized Agreement by failing to credit Plaintiff's payments to her account upon receipt.

99. This breach of the standardized Agreement is Defendant's standard practice, and the same constitutes a misleading, unfair and deceptive trade practice.

100. As a result of Defendant's failure to credit Plaintiff's payments to her account upon receipt, Plaintiff has suffered damages.

101. Pursuant to the terms of the standardized Agreement, the prevailing party is to this action is entitled to reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for statutory damages; compensatory damages; pre-judgment and post-judgment interest; declaratory and

injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff and the other Class Members demand a trial by jury of all issues triable before a jury.

**I HEREBY CERTIFY** that on June 5, 2009, I electronically filed this document with the Clerk of the Court by using the Electronic Case Filing System which will send a notice of electronic filing to the following:

Tee Persad, Esq., Counsel for Plaintiff

Wallace Rudolph, Esq., Counsel for Plaintiff

Alberto E. Lugo-Janer, Esq., Counsel for Plaintiff

Christi R. Adams, Esq., Counsel for Defendant

**I FURTHER CERTIFY** that on June 5, 2009, I e-mailed copy of this document to:

William Peerce Howard, Esq., Co-Counsel for Plaintiff, at

WHoward@ForThePeople.com

Counsel for Plaintiff
**CPLS, P.A.**
Attorneys & Counselors at Law
201 East Pine Street, Suite 445
Orlando, FL 32801
Tel 407-647-7887
Fax 407-647-5396
www.cplspa.com
CPLS File No. 44-1


(Signed electronically) Tee Persad
_____
Tee Persad, Esq.
Fla. Bar No. 0045594
attorneypersad@cplspa.com


(Signed electronically) Wallace Rudolph
_____
Wallace Rudolph, Esq.
Fla. Bar No. 0488119
wrudolph@cplspa.com


(Signed electronically) Alberto E. Lugo-Janer
_____
Alberto E. Lugo-Janer, Esq.
Florida Bar Number 0972592
Alugojaner@cplspa.com
lugojaner@earthlink.net