UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

HEYDEE DE LEON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A. (USA), a/k/a FIA CARD SERVICES, N.A.,

Defendant.

Case No. 6:09-cv-1251-ORL-28-KRS

**BANK OF AMERICA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND ACCOMPANYING MEMORANDUM OF LAW**

Bank of America, N.A. (USA), a/k/a FIA Card Services, N.A. (the "Bank" or "Bank of America")[1], hereby moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., because Plaintiff has failed to state a cause of action as a matter of law. In support of its motion, the Bank submits the accompanying memorandum of law.

WHEREFORE, Bank of America respectfully requests that this Court dismiss Plaintiff's Amended Complaint for failure to state a cause of action.

## MEMORANDUM OF LAW

Defendant Bank of America, N.A. (USA) f/k/a FIA Card Services, N.A. (the "Bank" or "Bank of America") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint (the "Amended Complaint") filed by plaintiff

[1] Defendant Bank of America, N.A. (USA) no longer exists; its successor institution is FIA Card Services, N.A. For ease of reference and convenience on this motion, we refer to these two entities as the "Bank" or "Bank of America."

Heydee DeLeon ("DeLeon" or "Plaintiff") on June 30, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**PRELIMINARY STATEMENT**

Plaintiff claims she made a payment to her Bank of America credit card account in person at a Bank of America branch in Orange County, Florida on June 18, 2005, which was the payment due date indicated on her May 2005 monthly credit card account statement. She claims this payment was not posted on the date the payment was made. Instead, the payment was posted to her account on the next business day, June 20, 2005, and, as a result, Plaintiff claims she was allegedly assessed a late fee and/or finance charges. Plaintiff claims that the Bank's failure to post this payment to her account on June 18 constitutes a violation of the federal Fair Credit Billing Act, a breach of contract, and a deceptive and unfair trade practice.

Try as she might, however, Plaintiff cannot ignore the fact that the Bank's payment-posting practices on which she bases her claims: (1) expressly comply with the federal law and regulations she claims were violated; and (2) were completely and clearly disclosed to her as part of the payment terms governing her credit card account with the Bank. Consequently, each of her claims fails as a matter of law.

Plaintiff attaches a monthly credit card account statement to the complaint, however, she did not attach all pages of that statement. She conveniently appended only the first page of that statement to the complaint (Am. Compl. Ex. 2) (attached for the Court's reference as Exhibit C) while omitting the second page of that statement that sets out the terms concerning

the posting of payments to Plaintiff's credit card account. (Ex. B.)[2] Those terms state that payments directly mailed to the Bank at a post office box in Texas are credited upon receipt, while crediting of payments made in any other manner may be delayed up to five days.

Both the federal Fair Credit Billing Act and Regulation Z expressly permit the Bank's payment-posting practices. Once the Bank had specified the requirements for payments to be credited upon receipt—as the Bank did here—the Bank could then delay up to five days the crediting of payments made in any other fashion. 12 C.F.R. § 226.10. Thus, under the terms governing Plaintiff's account, the Bank could credit her in-person payment at the Bank branch up to five days later because the payment was not sent by mail to the post office box in Texas. (Ex. B.) And, under Regulation Z, finance charges and late fees may be assessed to the Plaintiff during those five days. Fed. Res. Board Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I § 226.10(b)(1), (3). Thus, because the Bank's payment-posting practices comply with, and are expressly permitted by, the federal Fair Credit Billing Act and Regulation Z, there is no violation of the statute.

Moreover, by crediting Plaintiff's June 18 payment on June 20 (within five days of payment), the Bank complied with the terms of the parties' agreement. Consequently, Plaintiff's breach of contract claim fails as a matter of law.

[2] Plaintiff states in the complaint at paragraph 30 that "Plaintiff received from Defendant monthly Statements, copy of one of which is attached hereto as Exhibit 2." Plaintiff, however, did not attach her monthly credit card account statement, but a copy of Jennifer Mendoza's, who has filed a separate, but similar suit, making similar allegations. (DeLeon and Mendoza share the same counsel.) A copy of Plaintiff DeLeon's May 2005 statement, which she refers to in the complaint, is attached as Exhibit B.

Finally, Plaintiff's deceptive and unfair trade practice claim fails for two reasons. First, Florida's Deceptive and Unfair Trade Practices Act by its terms does not apply to nationally regulated banks, such as Bank of America. Second, even if the Act did apply, the payment-posting practices of which Plaintiff complains are not unfair or deceptive because they were disclosed to Plaintiff on her May 2005 monthly credit card account statement.

Accordingly, because each of Plaintiff's claims fails as a matter of law, the complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiff, as a Bank of America credit cardholder, agreed to abide by the terms and conditions governing her account as set forth by the Bank. (See Am. Compl. ¶¶ 6-38 (describing the relevant contractual provisions governing Plaintiff's relationship with the Bank); see also Ex. A, § 1.1 (Cardholder Agreement stating that the cardholder's relationship with the Bank is governed by the terms of the Agreement, the Additional disclosures appended to the Agreement, and "other documents that we may refer to as part of this Agreement.")) Specifically, Plaintiff agreed to pay the Bank for all transactions on her account, and to make at least the minimum payment due on her account each month by the due date specified in her monthly credit card account statement. (Ex. A, § 1.3.7 (defining "Statement"), § 6.1 (cardholder's "Promise to Pay" the Bank for all transactions), and § 6.3 (Minimum Payment Due provision).) As expressly permitted under federal law, the Cardholder Agreement, the additional disclosures, and other documents referring to credit

terms, including the monthly statement, governed the relationship between Plaintiff and the Bank. See 12 C.F.R. §§ 226.5-226.10.

Specific payment terms governing Plaintiff's account were set forth each month in her monthly credit card account statement. These terms include the amount Plaintiff had to pay each month on any outstanding credit card balance, the methods by which Plaintiff could make payment, where to send her payment, the date by which her payment was due, and other information about her account, such as her finance rates and the length of her grace period. (See Ex. B.)

Plaintiff's monthly credit card account statement also provided the manner, method, location and time for Plaintiff to make payment each month in order for payment to be posted to her account on the date the Bank received her payment, and stated that crediting all other payments, *i.e*. payments that do not meet these specifications, may be delayed up to five days. (See Ex. B.) This information is on the statement payment coupon and it reads: "**IMPORTANT INFORMATION ABOUT YOUR ACCOUNT**: **Prompt Crediting of Payments**":

> We will credit payments mailed with the enclosed payment coupon and received by us at either the P.O. Box on the front or the P.O. Box above no later than noon as of the date we receive it. Crediting of all other payments may be delayed up to five days.

(Ex. B.)[3]

[3] In attaching the account statement to the Amended Complaint, however, Plaintiff failed to include the second page of that statement, which contained the key language about payment posting at issue here. (Cf. Am. Compl. Ex. 2 to Ex. B.)

Pursuant to her May 2005 monthly credit card statement, Plaintiff was required to make at least the minimum payment on her account by June 18, 2005. (Ex. B.) The post office box listed on the payment coupon is a Dallas, Texas address. Rather than make payment by mail to that address, Plaintiff made a payment in person at a Bank of America branch located in Orange County, Florida on June 18, 2005, the day her payment was due. (Am. Compl. ¶ 40). Because Plaintiff's payment was made in person, rather than by mail sent to the Dallas address, the Bank did not credit the payment to Plaintiff's account on June 18. That payment was instead credited on the following business day, June 20, 2005 (Am. Compl. ¶ 42), as stated on Plaintiff's May 2005 monthly credit card statement. (Ex. B.) (providing that crediting of payments not mailed to the Dallas post office box may be delayed up to five days). And because Plaintiff's payment was posted after the payment due date of June 18, she was assessed a late payment fee.

Plaintiff filed this action in Florida state court on January 4, 2006, asserting a claim under the Florida Consumer Debt Collection Practices Act. On June 5, 2009, Plaintiff filed a motion to amend the original complaint to add class allegations, a claim under the federal Fair Credit Billing Act ("FCBA"), a breach of contract claim, and a deceptive and unfair trade practices claim. (Plaintiff dropped her Florida Consumer Debit Collection Practices Act claim.) In sum, Plaintiff alleges that, by failing to credit her payment on the date on which she made payment in person, the Bank (i) violated the FCBA; (ii) breached its contractual obligations to Plaintiff; and, (iii) engaged in deceptive and unfair trade practices. On June 23, 2009, the Bank consented by stipulation to Plaintiff's request to amend the complaint; the stipulation was ordered by the Court on June 30, 2009. The Bank then

removed the case to this Court on July 20, 2009, based on federal question and diversity jurisdiction.

## ARGUMENT

To survive a motion to dismiss based Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 958 (11th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553 (2007)). While a complaint need not provide detailed factual allegations, a plaintiff is obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Systems, Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 555). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Most importantly, the facts supporting the claim must be "consistent with the allegations in the complaint." Twombly, 550 U.S. at 562.

### I. THE BANK'S PAYMENT-POSTING PRACTICES ARE EXPRESSLY PERMITTED BY THE FEDERAL FAIR CREDIT BILLING ACT AND REGULATION Z.

Plaintiff claims that by failing to credit her June 18, 2005 payment on the date that payment was made at a Bank branch, the Bank violated the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666c, and Regulation Z, the Federal Reserve Board regulation

implementing the FCBA (15 U.S.C. §1666c). (Am. Compl. ¶ 93). Both the FCBA and Regulation Z, however, expressly permit the conduct Plaintiff complains of and, therefore, her FCBA claim fails as a matter of law.

The FCBA provides that "Payments received from [a credit cardholder] shall be posted promptly to the [cardholder's] account as specified in regulations of the Board" and that no charges can be assessed to a cardholder's account if the creditor "has received the [cardholder's] payment in readily identifiable form **in the amount, manner, location and time indicated by the creditor** . . . ." 15 U.S.C. § 1666c (emphasis added). Regulation Z, the Federal Reserve Board regulation implementing the FCBA, explicitly permits a bank to take up to five additional days to post credit for a payment on a credit card account if that payment is not made in accordance with the requirements specified by the bank. In particular, 12 C.F.R. § 226.10 provides in relevant part:

> (a) General Rule. A creditor shall credit payment to the consumer's account as of the date of receipt . . . except as provided in paragraph (b) of this section.
>
> *  *  *
>
> (b) Specific requirements for payments. If a creditor specifies, **on or with the periodic statement**, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within five days of receipt.

12 C.F.R. § 226.10 (emphasis added).

The Official Staff Commentary to Regulation Z, issued by the staff of the Division of Consumer and Community Affairs of the Federal Reserve Board, provides in relevant part as follows:

> 1. *Payment Requirements.* The creditor may specify requirements for making payments, such as: Specifying one particular address for receiving payments, such as a post office box.
>
> * * *
>
> 3. *Acceptance of non-conforming payments.* If the creditor accepts a non-conforming payment (for example, payment at a branch office, when it had specified that payment be sent to headquarters) finance charges may accrue for the period between receipt and crediting of payments.

Fed. Res. Board Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I § 226.10(b)(1), (3). Bank practices in conformity with Regulation Z and the Board's comments do not violate the FCBA. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980) (courts must defer to the decision of the Federal Reserve Board on consumer loan disclosure issues); Hauk v. JP Morgan Chase Bank, 552 F.3d 1114 (9th Cir. 2009) (Regulation Z should be accepted by the courts, as should the [Federal Reserve] Board's interpretation of its own regulation).

The FCBA, Regulation Z, and the Official Commentary explicitly permit the very practice of which Plaintiff here complains. The regulations provide that payments that are made in the manner, location, and time indicated by the creditor—such as by mail to a post office box, which the Bank has done here—on or with the periodic statement must be credited as of the date of receipt. 12 C.F.R. § 226.10(a), (b); Fed. Res. Board Official Staff Commentary 12 C.F.R. pt. 226, Supp. I § 226.10(b)(1). Such payments are referred to as "conforming payments," as they conform to the payment requirements governing the cardholder's account. 12 C.F.R. § 226.10(a). Plaintiff's May 2005 monthly credit card statement included requirements she had to abide by for her payment to be posted to her account upon receipt by the Bank; she needed to mail payment with the payment coupon

attached to her monthly credit card statement directly to the Bank at the Texas address. (Ex. B.)

Once the Bank had so specified these payment requirements, it could then, under Regulation Z and the Official Staff Commentary, delay crediting any non-conforming payments by up to five days and, during those five days, finance charges may accrue. 12 C.F.R. § 226.10(b); Fed. Res. Board Official Staff Commentary 12 C.F.R. pt. 226, Supp. I § 226.10(b)(3).

Accepting Plaintiff's allegations as true, this is precisely what has happened here and, therefore, do not state a claim for violation of the FCBA. Plaintiff's June 18, 2005 payment did not conform to the payment requirements indicated in her May 2005 monthly credit card account statement in order for her payment to be posted to her account upon receipt by the Bank. Instead, she made payment in person—a non-conforming payment—and, as a result, the Bank delayed posting her June 18 payment (a Saturday) until the next business day, June 20. (Am. Compl. ¶ 40). During that 5-day period for non-conforming payments, "finance charges may accrue," (see Fed. Res. Board Official Staff Commentary 12 C.F.R. pt. 226, Supp. I § 226.10(b)(3)) and such finance charges include late fees. See, e.g., Esquibel v. Chase Manhattan Bank USA, N.A., 276 F. App'x. 393, 396 (5th Cir. 2008) (under the FCBA, finance charges include late fees and all other charges imposed by the creditor as an incident to the extension of credit). Indeed, the Official Commentary to Regulation Z even cites to payment in person at a bank branch—the very manner of payment upon which Plaintiff bases her case—as an example of a non-conforming payment for which payment may be delayed up to five days and finance charges may be assessed. See Fed. Res. Board Official Staff

Commentary 12 C.F.R. pt. 226, Supp. I § 226.10(b)(3) ("If the creditor accepts a non-conforming payment **(for example, payment at a branch office, when it had specified that payment be sent to headquarters) finance charges may accrue** for the period between receipt and crediting of payments.") (emphasis added).

In sum, the provisions of the FCBA and Regulation Z upon which Plaintiff relies permit the exact conduct that Plaintiff alleges is wrongful. Because the payment-posting practices at issue are expressly permitted by the FCBA and Regulation Z, they do not constitute a violation of the FCBA. See, e.g., Demry v. Citibank (S.D.), N.A., No. 01-cv-9959, 2003 U.S. Dist. LEXIS 1000 (S.D.N.Y. Jan. 24, 2003), *aff'd* 81 F. App'x. 368, 369-370 (2d Cir. 2003) (dismissing claim and finding no statutory violation where defendant bank complied with Regulation Z). Accordingly, this claim must be dismissed.

## II. THE BANK POSTED PLAINTIFF'S NON-CONFORMING PAYMENT IN COMPLIANCE WITH THE EXPRESS TERMS OF THE AGREEMENT AND THEREFORE THERE IS NO BREACH.

Arizona law governs Plaintiff's breach of contract claim (Am. Compl., Ex. 1, ¶ 7.18), and to prevail on a breach of contract claim under Arizona law, "a plaintiff must show a contract, a breach of contract, and damages." Konrath v. Amphitheater Unified School Dist. No. 10, 2007 U.S. Dist. LEXIS 72306, at *26 (D. Ariz. Sept. 26, 2007). Here, it is undisputed that a valid contractual relationship exists between the Bank and Plaintiff, and that such relationship is governed by the terms on the Cardholder Agreement and monthly billing statement. (Am. Compl. ¶¶ 33-38). As shown above, the monthly credit card account statement clearly alerts the customer that payments not mailed to the proper address may be delayed up to five days. (Ex. B.)

Because the terms of the parties' agreement permits the Bank to post non-conforming payments up to five days after receipt, such a delay does not constitute breach. Indeed, Plaintiff has done no more than allege that the Bank has acted in accordance with the terms governing Plaintiff's credit card account and, as a result, she fails to state a claim for breach of contract. "A party to a contract does not breach it by fully performing his obligations with the utmost good faith." Dobson v. Grand Int'l Bhd. of Locomotive Eng'rs, 101 Ariz. 501 (1966).

## III. BECAUSE FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT DOES NOT APPLY TO NATIONALLY REGULATED BANKS, THIS CLAIM MUST ALSO BE DISMISSED.

Plaintiff's third claim alleges that the Bank engaged in deceptive and unfair trade practices by failing to post Plaintiff's in-person payment on the date that payment was made. This claim, however, also fails as a matter of law.

### A. Florida Law Governs Plaintiff's Claim for Deceptive and Unfair Trade Practices.

Plaintiff does not specify whether Florida or Arizona law governs her deceptive and unfair trade practices claim. In fact, as a question common to the class members, she lists "Whether Defendant has violated the Florida or Arizona Unfair and Deceptive Trade Practices Act." (Am. Compl. ¶ 62(d).) But because Plaintiff's deceptive trade practices claim sounds in tort, the contractual choice of law provision in the Cardholder Agreement does not apply. And as a result of Florida's choice of law analysis, Florida, not Arizona, has the most significant relationship to Plaintiff's tort. This claim, therefore, is governed by Florida's Unfair and Deceptive Trade Practices Act (or "FDUTPA").

When dealing with claims arising in tort, the applicable law is not controlled by a contractual choice of law provision; instead, it is decided according to the law of the forum state. Burger King Corp. v. Austin, 805 F.Supp. 1007, 1012 (S.D. Fla. 1992). A claim alleging deceptive and unfair trade practices sounds in tort. See, e.g., Am. Boxing & Athletic Ass'n v. Young, 911 So. 2d 862, 865 (Fla. 2d DCA 2005) (characterizing FDUTPA claim as a tort claim); Crowley Liner Servs. v. Transtainer Corp., No. 06-21995, 2007 U.S. Dist. LEXIS 8332, at *15 (S.D. Fla. Feb. 6, 2007) ("The defendant's FDUTPA counterclaim sounds in tort.") Thus, although the agreement between the parties contains an Arizona choice of law clause, it is a narrow one that specifically relates only to the "agreement" and does not encompass related tort claims. (Ex. A, § 7.18) ("THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW."); see Green Leaf Nursery v. E.I duPont de Nemours & Co., 341 F.3d 1292, 1300 (11th Cir. 2003) (finding a choice of law provision stating that the contract "shall be governed and construed in accordance with the laws of the State of Delaware . . . ." was narrow and did not encompass a tort claim); Auto Internet Mktg., Inc. v. Targus Info. Corp., No. 8:08-cv-1868, 2008 U.S. Dist. LEXIS 98595, *8 (M.D. Fla. Dec. 5, 2008) (applying the law of the state designated in the parties' choice of law provision in analyzing the breach of contract claim, and the law of the state with the "most significant relationship" in analyzing the tort claim). The parties' choice of law provision, therefore, does not govern Plaintiff's tort claim for deceptive and unfair trade practices.[4]

---

[4] The same result would apply if the Court were to find that the FDUTPA claim was statutory in nature, as opposed to a traditional tort. See Management Computer Controls, Inc. v.

To determine which state's law should apply, Florida applies the "most significant relationship" test. See Garcia v. Pub. Health Trust of Dade County, 841 F.2d 1062, 1065 (11th Cir. 1988); Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980). Florida courts consider the following factors in determining which state has the most significant relationship to the tort: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Garcia, 841 F.2d at 1064 (quoting Restatement (Second) of Conflict of Laws, § 145).[5]

Based on a balancing of these factors, Florida law governs Plaintiff's deceptive and unfair trade practices claim. Plaintiff alleges that the injury and the conduct that caused that injury occurred in Florida. (Am. Compl. P. 40). She further alleges that the Bank is a national banking association based in Delaware that conducts business in Florida. (Id. at ¶ 5).

---

Charles Perry Constr., Inc., 743 So. 2d 627, 632 (Fla. 1st DCA 1999) (finding that an unfair trade claim under FDUTPA is "an independent statutory claim" that "does not arise out of the contract.") As the Court of Appeals of Florida has noted, "[t]he use of the venue clause as a defense to the [FDUTPA] statutory claim . . . would undermine the effectiveness of the statute. Id.

[5] Where a court sits in federal question jurisdiction, there is uncertainty as to whether the forum state's choice-of-law rules apply, or instead federal common law rules are appropriate. See, e.g., Pescatore v. Pan American World Airways, Inc., 97 F.3d 1, 12 (2d Cir. 1996) (stating "demonstrably, the law is unsettled when it comes to applying either a federal common law choice of law rule or state choice of law principles in non-diversity cases"). This issue is moot in this case, however, since Florida applies a test nearly identical to that invoked in the Restatement (Second) of Conflict of Laws. In re Air Crash near Cali, Colom., No. 96-MD-1125, 1997 U.S. Dist. LEXIS 14143, *7, n. 3 (S.D. Fla. Aug. 18, 1997) (noting that Florida applies the Restatement approach to determining the law governing a tort dispute).

In addition, Plaintiff admits that she is a resident of Florida. (Id. at ¶ 4). These factors point to Florida, not Arizona, as having the most significant relationship to Plaintiff's tort claim. Accordingly, Plaintiff's deceptive and unfair trade practices claim is governed by Florida law.

**B. Florida's Unfair and Deceptive Trade Practices Act Does Not Apply to Nationally Regulated Banks, and the Bank's Payment-Posting Practices are Not Unfair or Deceptive In Any Event.**

Allegations of deceptive and unfair trade practices in Florida are governed by the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, Fla. Stat., *et seq.* FDUTPA, however, is self-preempting as it does not apply to federally regulated banks like the Defendant. § 501.212(4)(c), Fla. Stat. ("This part does not apply to: . . . (4) Any person or activity regulated under laws administered by: . . . (d) Banks or savings and loan associations regulated by federal agencies . . ."); see also Caban v. J.P. Morgan Chase & Co., 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009) (finding FDUTPA claim "fail[s] as a matter of law because the statute does not apply to federally regulated banks such as Chase.") There is no dispute that the Bank is a national banking association (see Am. Compl. ¶ 5) that is regulated by federal agencies. Accordingly, under the very terms of FDUPTA, this claim fails as a matter of law.

Even if FDUTPA did apply to the Bank—and it does not—Plaintiff's claim would still fail because she cannot establish that the conduct complained of was "likely to mislead" consumers. Rebman v. Follett Higher Educ. Group, Inc., 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008). As discussed in Section I, *supra*, the payment-posting terms on Plaintiff's credit card account were fully and clearly disclosed to Plaintiff in her monthly credit card account statements, and the Bank credited Plaintiff's payment in accordance with those terms.

Because it was fully disclosed, such conduct is neither unfair nor deceptive under FDUTPA. Berry v. Budget Rent a Car Sys., 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (defendant's fee charge was not unfair or deceptive because it was clearly disclosed to plaintiff at the time of the transaction); Millennium Communications & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (finding that promoter of credit card program did not violate FDUTPA by sending out postcard solicitations because solicitation did not contain any deceptive statements).

Despite Plaintiff's suggestion that Arizona law may govern this claim (see Am. Compl. ¶ 62(c)), the Arizona Consumer Fraud Act ("ACFA") would not apply to an act committed outside Arizona, especially where the alleged wrongful conduct does not concern local Arizona business. Ariz. Rev. Stat. § 44-1521, *et. seq.* See State ex rel. Corbin v. Goodrich, 151 Ariz. 118, 124 (Ariz. Ct. App. 1986) (ACFA "applies to acts committed within Arizona in violation of its provisions. Victims need not be Arizona residents in order for the state to enforce its statutes against a person or persons conducting business within the state. Arizona has the legitimate interest in insuring that *local business* is conducted honestly.") (emphasis added); State ex rel. Corbin v. Hovatter, 144 Ariz. 430, 431 (Ariz. Ct. App. 1985) (Arizona "has an interest in protecting the welfare of its consumers"). Even if ACFA did apply, as in Berry, 497 F. Supp. 2d 1361 and Millennium Communications., 761 So. 2d 1256, *supra*, Plaintiff's claim would also fail under the Arizona statute because the alleged unfair or deceptive conduct was clearly disclosed to Plaintiff.

## CONCLUSION

For the reasons set forth above, Bank of America respectfully requests that its motion to dismiss be granted and that the First Amended Complaint be dismissed in its entirety with prejudice.

Dated: August 3, 2009

/s/ Christi R. Adams

James S. Grodin
Florida Bar No. 0655181
Christi R. Adams
Florida Bar No. 0498351
FOLEY & LARDNER LLP
111 North Orange Avenue
Suite 1800
Orlando, FL 32801
(407) 244-3235
(407) 648-1743 (Facsimile)
JGrodin@foley.com
CAdams@foley.com

Mark P. Ladner
(*pro hac vice*)
David J. Fioccola
(*pro hac vice*)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
(212) 468-7900 (Facsimile)
MLadner@mofo.com
DFioccola@mofo.com

*Attorneys for Defendant*
*BANK OF AMERICA, N.A. (USA),*
*a/k/a FIA CARD SERVICES, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was furnished this 3rd day of August, 2009 via filing with the Court's CM/ECF system to counsel for Plaintiff: William Peerce Howard, P.A., Morgan & Morgan, P.A., One Tampa City Center, 201 N. Franklin St., 7th Floor, Tampa, FL 33602; and Alberto E Lugo-Janer, and Tee Persad, Esq., CPLS, P.A., 201 E. Pine Street, Suite 445, Orlando, FL 32801.

/s/ Christi R. Adams
Christi R. Adams, FBN 0498351