**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HEYDEE DE LEON and JENNIFER MENDOZA,**

      **Plaintiffs,**

**-vs-**                                                            **Case No. 6:09-cv-1251-Orl-28KRS**

**BANK OF AMERICA, N.A. (USA),**

      **Defendant.**

_____

# ORDER

This cause is before the Court on the motions to dismiss (Docs. 15 & 26) filed by Defendant, Bank of America, N.A. (USA) ("the Bank"). Plaintiffs, Heydee De Leon ("De Leon") and Jennifer Mendoza ("Mendoza"), have filed a Response thereto (Doc. 28), and Defendant has filed a Reply to the Response (Doc. 36). The matter is now ripe for adjudication and the Court issues the following ruling thereon.

## I. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S.

at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## II. Analysis[1]

On January 4, 2006, De Leon commenced her action entitled De Leon v. Bank of America, N.A. (USA), aka FIA Card Services, N.A., Case No. 06-CA-000180, in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, asserting claims under Florida's Consumer Collection Practices Act ("FCCPA"). The action was then transferred to the Ninth Judicial Circuit, Orange County, Florida, in January 2007. On June 30, 2009, De Leon filed her Amended Complaint in Orange Count. (Am. Compl., Doc. 2). The Bank removed the action to this Court on July 20, 2009 on the basis of federal question jurisdiction and the Class Action Fairness Act. (Doc. 1).

In a three-count Amended Complaint filed on behalf of herself and other similarly situated persons, De Leon claims that the Bank breached its contract, violated the Federal Fair Credit Billing Act ("FCBA"), and engaged in deceptive and unfair trade practices.[2]

---

[1] Plaintiffs originally filed separate lawsuits, but Mendoza's action, Case No. 6:09-cv-1295-Orl-31/KRS has since been consolidated with De Leon's suit, Case No. 6:09-cv-1251-Orl-28/KRS, by this Court's August 17, 2009 Order (Doc. 25). Because the claims asserted in the Amended Complaints are virtually identical, the Court's discussion and analysis will focus on the facts as set forth in De Leon's Amended Complaint with the understanding that the analysis applies equally to Mendoza's claims.

[2] In the Amended Complaint, De Leon does not specify whether she is bringing her state law claims under Florida's or Arizona's laws.

According to the Amended Complaint, De Leon made a payment at a local branch office of the Bank on June 18, 2005—the payment due date specified in her May 2005 monthly credit card account statement. (Am. Compl. ¶ 40). Instead of crediting her in-person payment to her account on the same date, the Bank credited her account the following business day, resulting in the payment being "late" and De Leon being charged late fees and penalties. (Id. ¶¶ 41-42). De Leon contends that this failure to credit her account "upon receipt" of her payment at the local branch office constitutes a breach of contract, a violation of the FCBA, and a deceptive and unfair trade practice. The Bank has moved for dismissal of all counts, arguing that De Leon has failed to state a claim upon which relief can be granted. The Court examines each claim separately.

### A. Count I—Breach of Contract

In her Amended Complaint, De Leon states that the Bank issued her a credit card with the terms of this credit card "primarily governed" by the "Cardholder Agreement" ("Agreement"). (Am. Compl. ¶¶ 6-9). This Agreement states that Arizona law governs De Leon's breach of contract claim. (Agreement, § 7.18 ("This Agreement is governed by applicable Arizona and Federal law.") (original in all capitals letters))). Under Arizona law, De Leon "has the burden of proving the existence of the contract, its breach[,] and the resulting damages" in order to bring an action for breach of contract against the Bank. Graham v. Asbury, 540 P.2d 656, 667 (Ariz. 1975). In the instant case, neither party disputes that a contract existed. Instead, the parties disagree as to what documents comprised the contract and whether De Leon has stated a claim to relief that is plausible on its face.

De Leon alleges in the Amended Complaint that the Bank's failure "to credit 'upon receipt' the payment made by Plaintiff in person at one of Defendant's locations on a Saturday is a breach of Defendant's contractual covenant to credit Plaintiff's account 'upon receipt' of the payments as provided in section 6.1 of the Agreement." (Am. Compl. ¶ 43). Section 6.1 of the Agreement provides that the Bank "will credit your payment to your account upon receipt." (Agreement, Ex. 1 to Am. Compl.). De Leon claims in Count I that the Bank "breached the standardized Agreement by failing to credit Plaintiff's payments to her account upon receipt." (Am. Compl. ¶ 86).

In its motion to dismiss, the Bank contends that the parties' contractual relationship is governed "by the terms of the Cardholder Agreement and monthly billing statement." (Doc. 15 at 11). The monthly billing statement ("Statement") contains a section entitled "Prompt Crediting of Payments" that states, "We will credit payments mailed with the enclosed payment coupon and received by us at either the P.O. Box on the front [of the statement] or the P.O. Box above no later than noon as of the date we receive it. Crediting of all other payments may be delayed up to 5 days." (Statement, Ex. B to Doc. 22). The Bank asserts that "[b]ecause the terms of the parties' agreement permit[] the Bank to post non-conforming payments up to five days after receipt, such a delay does not constitute a breach." (Doc. 15 at 11-12).

De Leon presents several arguments in response. First, she claims that because the Bank relies "on a document . . . that is not included with the Amended Complaint, [it] has thereby introduced a factual challenge." (Doc. 28 at 4). This argument is at best unavailing, if not disingenuous. De Leon herself included a copy of the monthly account statement with

her Amended Complaint, albeit only the first page. (See Ex. 2 to Amended Complaint).[3] Notably, De Leon failed to submit the complete document, which if considered as part of the contract would directly undermine her claim due to the language contained therein. (See Statement at 2). The law is clear: Because the Statement is a "document[] central to or referenced" in the Amended Complaint, the Court may properly consider it on a Rule 12(b)(6) motion. LaGrasta, 358 F.3d at 845.

De Leon next argues that the plain language of the Agreement demonstrates that the Statement is not part of the contract. (Doc. 28 at 5). Section 1.1 of the Agreement states: "This Agreement governs your credit card account . . . with us. It consists of this document, an attached 'Additional Disclosures' and other documents that we may refer to as part of this Agreement." (Agreement § 1.1). Section 1.3 then provides definitions for terms used throughout the Agreement, including defining "Statement" as "an Account billing statement." (Agreement § 1.3.7). Though the Agreement makes reference to the Statement in various aspects, De Leon correctly notes that "[n]owhere in the Agreement does it indicate that Billing Statements comprise part of the Agreement." (Doc. 28 at 5). Nor does the Statement itself give notice that the Bank intended it to constitute a part of the Agreement or an amendment thereto. As neither the Agreement nor the Statement itself state that the Statement is "part of th[e] Agreement," the Court finds that the Statement is not a part of the

---

[3]The Court notes that the statement attached to De Leon's Amended Complaint is actually a single page of Mendoza's June Statement.

parties' contractual relationship.[4] As the Agreement states that "we will credit your payment to your account upon receipt" and De Leon has alleged that the Bank did not do so, Plaintiff has stated a cause of action for breach of contract. Accordingly, the Bank's motions to dismiss must be denied as to Count I.[5]

B. Count II—Fair Credit Billing Act

De Leon alleges in Count II that by failing to credit her account on the same date that she made her payment at the local branch, the Bank violated the FCBA, 15 U.S.C. § 1666

---

[4]The Bank argues that De Leon herself believed that the Statement was a part of the parties' contractual relationship based upon her pleadings in the Amended Complaint. Specifically, under a section entitled "**THE CONTRACT**," De Leon alleges that "[n]owhere in the Agreement or the Statement does it state that a payment in person at one of Defendant's locations on a Saturday is not a payment that will be credited to Plaintiff's account 'upon receipt' as provided in section 6.1 of the Agreement," (id. ¶ 33), "[n]owhere in the Agreement or Statement does it state that if the 'Payment Due Date' falls on a Saturday then the payment must be made before the Saturday," (id. ¶ 36), and "[n]owhere in the Agreement or Statement does it state that if the payment is made in person at one of Defendant's locations on a Saturday then the payment will not be credited upon receipt as provided in section 6.1 of the Agreement," (id. ¶ 37). Despite this inartful drafting, De Leon describes "the wrong" as "a breach of Defendant's contractual covenant to credit Plaintiff's account 'upon receipt' of the payment as provided in section 6.1 of the Agreement." (Id. at 43). Notably, De Leon makes no reference to the Statement in this paragraph or in the subsequent allegations setting forth the breach of contract claim. (Id. ¶¶ 42, 84-88). De Leon's breach of contract claim is not one of "failure to disclose payment terms at issue" as the Bank asserts, (Doc. 36 at 3), but rather the claim is one of failure to credit payments as specified in the Agreement itself.

[5]De Leon also argues in her Response that even if the terms of the Statement are a part of the contract, the Statement is not enforceable because the terms are unconscionable. (Doc. 28 at 9-11). Because De Leon did not assert a cause of action for unconscionability in her Amended Complaint, she is barred from raising it now. A plaintiff may not amend a complaint through briefs in opposition to a motion to dismiss. Car Carriers, Inc. v. Ford Motor Co., 754 F.2d 1101, 1107 (7th Cir. 1984). Even if the Court allowed De Leon to argue unconscionability in this manner, she provides no facts to support such a claim other than a generic statement of the law. Such a claim would be dismissed under Rule 12(b)(6). Iqbal, 129 S. Ct. at 1949.

et seq., and its implementing regulation, Regulation Z, 12 C.F.R. Part 226. (Am. Compl. ¶¶ 90-93). The Bank now moves to dismiss this claim, arguing that it fails as a matter of law because the FCBA and Regulation Z explicitly permit this practice. (Doc. 15 at 8-9).

Section 1666c of the FCBA provides:

Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount, manner, location, and time indicated by the creditor to avoid the imposition thereof.

15 U.S.C. § 1666c.

Regulation Z—the Federal Reserve Board regulation implementing the FCBA—permits a bank to take up to five additional days to credit a payment made on a credit card account when such payment is not made in the manner specified by the Bank. See 12 C.F.R. § 226.10. Regarding a bank's ability to specify certain requirements for payments, Regulation Z provides in part:

(a) General rule. A creditor shall credit a payment to the consumer's account as of the date of receipt, . . . except as provided in paragraph (b) of this section.

(b) Specific requirements for payments. If a creditor specifies, *on or with the periodic statement*, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt.

Id. (emphasis added). Notably, subsection (b) explicitly allows a bank to specify requirements for payment on the periodic statement and to take up to five days to credit nonconforming payments to the customers account.

Further, the Federal Reserve Board, through its Official Staff Commentary to

Regulation Z, provides explanatory details regarding "Specific requirements for payments." In relevant part, the Official Staff Commentary states that the creditor "may specify requirements for making payments, such as: . . . Specifying one particular address for receiving payments, such as a post office box." Staff Commentary, Pt. 226, Supp. (*I)*, note § 226.10(b)(1). The Commentary also notes that "[i]f the creditor accepts a non-conforming payment (for example, payment at a branch office, when it has specified that payment be sent to headquarters), finance charges may accrue for the period between receipt and crediting of payments." (Id. § 226.10(b)(3)).

In the Statement, the Bank clearly specifies that payment is to be made at one of two P.O. Boxes. (Statement, at 2 ("We will credit payments mailed with the enclosed payment coupon and received by us at either the P.O. Box on the front or the P.O. Box above no later than noon as of the date we receive it.")). Because De Leon did not make payment in the manner specified in the Statement, the Bank is allowed to delay crediting of the nonconforming payment for up to five days. The Bank credited this payment within the allowed five-day period (notably, the Bank credited her payment on the next business day), placing the Bank's actions in compliance with the practices permitted by the FCBA and Regulation Z. Accordingly, Plaintiff has failed to state a claim for a violation of the FCBA, see Demry v. Citibank (South Dakota), N.A., 81 F. App'x. 368, 370 (2d. Cir. 2003) (affirming district court's dismissal of claim and finding of no statutory violation when defendant bank had complied with requirements of Regulation Z), and the Bank's motion to dismiss must be granted as to Count II.

### C, Count III—Deceptive and Unfair Trade Practices

In Count III, De Leon asserts a claim for "deceptive and unfair trade practices."[6] (Am. Compl. ¶¶ 95-101). Although the parties agree that Arizona law governs the breach of contract claim, it is disputed whether Florida or Arizona law applies to Count III. Before proceeding to the merits of the motion to dismiss this count, the Court must first determine which state's law to apply.

The Bank correctly contends that the Arizona choice of law provision contained in section 7.18 of the Agreement does not control De Leon's claim for deceptive and unfair trade practices. Section 7.18 of the Agreement provides that "THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW." (Agreement, § 7.18 (all caps in original)). It is well established law, however, that "'[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision. . . . Rather, [the choice of law issue is] decided according to the law of the forum state.'" Burger King Corp. v. Austin, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992) (quoting Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir.1992)); see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1300 (11th Cir. 2003). The choice of law

---

[6]Though De Leon submits a claim for "deceptive and unfair trade practices," she does not identify whether she is seeking to recover under Florida law or Arizona law. When listing common questions of law or fact in the class allegations section of the Amended Complaint, De Leon identifies as one common question of fact "[w]hether Defendant has violated the Florida or Arizona Unfair Trade Practices Act." (Am. Compl. ¶ 62(c)). However, as it appears that Arizona has not passed an Unfair Trade Practices Act, it is unclear to the Court to what De Leon is referring. In her response to the motion to dismiss, however, De Leon argues that her claim for "deceptive and unfair trade practices" is covered by the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 et seq.. (Doc. 28 at 18-19).

provision in the Agreement is construed narrowly as, by its own terms, it only governs the Agreement itself and "does not refer 'to any and all claims or disputes arising out of the'" Agreement such as a claim for deceptive and unfair trade practices as alleged in Count III.[7] Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009) (quoting Green Leaf Nursery, 341 F.3d at 1301). Accordingly, this Court finds that the choice of law provision contained in the Agreement is not controlling as to Count III.

Absent a controlling choice of law provision, federal courts sitting in diversity apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); McMahon v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001). With regard to tort claims, Florida courts apply "the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws § 145." Trumpet Vine Invs., N.V. v. Union Capital Partners, I, Inc., 92 F.3d 1110,1115-16 (11th Cir.1996). As the Trumpet Vine court explained, Section 145 of the Restatement provides that "'[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties

---

[7]Courts are not in agreement regarding whether a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") is a tort claim or a statutory cause of action. Compare Horowitch v. Diamond Aircraft Indus., Inc., 526 F. Supp. 2d 1236, 1249 (M.D. Fla.2007) (treating FDUTPA as a tort claim), and Monmanco, Inc. v. McDonald's Corp., No. 3:04-cv-270-J-99HTS, 2005 WL 1027261, at *5 (M.D. Fla. Mar. 30, 2005) (same), with Jones v. Jeld-Wen, Inc., No. 07-22328-CIV, 2008 WL 2699434, *7 (S.D. Fla. June 30, 2008) ("As for the FDUTPA claim, this is a statutory cause of action."), and Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 632 (Fla. 1st DCA 1999) (finding a claim under FDUTPA is "an independent statutory claim" that "does not arise out of the contract."). However, this Court need not decide this issue because the treatment of the choice of law provision would remain the same regardless of whether the claim is a tort claim or a statutory claim, as neither arises out of the Agreement at issue.

under the principles stated in § 6.'" Id. at 1116 (quoting Restatement (Second) of Conflict of Laws § 145(1)). "'Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Id. (quoting Restatement (Second) of Conflict of Laws § 145(2)).

Application of these factors to this case results in a finding that Florida law governs De Leon's claim for deceptive and unfair trade practices. De Leon alleges that both the injury and the conduct causing the injury occurred in Florida when the Bank did not credit her account "upon receipt" of her in-person payment, resulting in penalties and late fees. (Am. Compl. ¶¶ 40-42, 45). Notable to this Court, De Leon does not allege that either the injury or any of the conduct causing injury occurred in Arizona. Further, De Leon states that she is a resident of Florida, (id. ¶ 4), and that the Bank is a "national banking association, organized and existing under the laws of the State of Delaware, . . . registered and authorized to do business in Florida, and does business in Orange County, Florida," (id. ¶ 5). Neither party presents arguments as to the final factor, the place where the relationship is centered; however, because the facts weigh so heavily in favor Florida law under the first three factors, this Court finds that Florida law governs Count III.

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") governs allegations of deceptive and unfair trade practices in Florida. § 501.201, Fla. Stat., et seq. However, by its very terms, FDUTPA specifically excludes federally regulated banks from its coverage.

§ 501.212(4)(c), Fla. Stat. ("This part does not apply to: . . . (4) Any person or activity regulated under law administered by: . . . (c) Banks or savings and loan associations regulated by federal agencies."). Because the Bank is a federally regulated national banking association, De Leon's claim fails as a matter of law, and the Bank's motion to dismiss must be granted as to Count III. See Caban v. J.P. Morgan Chase & Co., 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009) (finding that the FDUTPA claims "fail as a matter of law because the statute does not apply to federally regulated banks"); Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Cos., No. 8:06-cv-104-T-30MSS, 2007 WL 220172, at *7 (M.D. Fla. Jan. 26, 2007).

### III. Conclusion

In accordance with the foregoing discussion, it is hereby **ORDERED** that the Bank's motions to dismiss (Doc. 15 & 26) are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** as to Count II and Count III and **DENIED** as to Count I.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 16th day of November, 2009.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party