# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HEYDEE DE LEON and JENNIFER MENDOZA, on behalf of themselves and others similarly situated,**

**Plaintiffs,**

**-vs-**                                                    **Case No.  6:09-cv-1251-Orl-28KRS**

**BANK OF AMERICA, N.A. (USA) n/k/a FIA CARD SERVICES, N.A.,**

**Defendant.**
_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS** (Doc. No. 65) |
| **FILED:** | **June 2, 2011** |

## I.    INTRODUCTION.

Plaintiffs Heydee De Leon and Jennifer Mendoza, both of whom are residents of Orange County, Florida, filed Plaintiffs' Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class (Plaintiffs' Motion), in which they request that the Court, *inter alia*, "enter an Order (i) preliminarily approving the Settlement Agreement entered into by the Parties in this cause; (ii) conditionally certifying a Class for settlement purposes only; (iii) appointing Plaintiffs as named Class Representatives for the Settlement Class; (iv) appointing

certain of Plaintiffs' counsel as Lead Class Counsel and certain of Plaintiffs' counsel as Class

counsel; (v) appointing Rust Consulting, Inc. as the Settlement Administrator; (vi) authorizing the

parties to disseminate notice to the Class as contemplated by the Parties' Settlement Agreement;

and (vii) setting a hearing date for final approval of the Settlement Agreement."  Doc. No. 65 at 1.

Plaintiffs filed the following in support of their motion:

- Settlement Agreement, Doc. No. 65-1, with attached Exhibit A[1] (Claim Form), Exhibit B (Class Notice), Exhibit C ([Proposed] Approval Order), and Exhibit D ([Proposed] Final Order and Judgment;

- A two-page Declaration of J. Andrew Meyer, Doc. No. 65-2, with attached information concerning proposed Lead Class Counsel Morgan & Morgan, P.A. and proposed Class Counsel CPLS, P.A. and proposed Settlement Administrator, Rust Consulting Inc.;

- A short form Notice of Class Action Settlement, Doc. No. 65-3; and,

- Plaintiffs' Memorandum in Support of Motion, Doc. No. 66.

Plaintiffs assert that this motion is unopposed.

Plaintiffs initially sued Bank of America, N.A. (USA) as the named Defendant.  Bank of

America, N.A. (USA) a/k/a FIA Card Services, N.A. filed an answer to the class action complaint,

Doc. No. 48, in which it asserted that "Bank of America, N.A. (USA) no longer exists, but . . . its

successor, FIA Card Services, N.A. ('FIA'), is a national banking association and citizen of

Delaware."  *Id*. at ¶ 5.  The signatories to the Settlement Agreement are Plaintiffs De Leon and

---

[1] Subparagraph 31(a) states, "Each and every exhibit to this Settlement Agreement is incorporated herein by this reference as though fully set forth herein." Doc. No. 65-1 at 35 ¶ 31(a). For purposes of this Order, citations will be to the pagination assigned when a document was electronically filed.

Mendoza, as Class Representatives, and FIA Card Services, N.A.[2], by Gail C. Kilmer, Senior Card Marketing Product Executive.

On June 24, 2011, FIA filed the Declaration of David Fioccola, one of Defendant's attorneys, in which he certifies that he gave notice as required by the Class Action Fairness Act ("CAFA").  Doc. No. 67-1.

The presiding District Judge referred Plaintiffs' Motion to the undersigned for an order or a report and recommendation.  For the reasons set forth in more detail herein, the Court finds that the evidence and legal authority presented is insufficient for the Court to make the findings required to certify a class under Fed. R. Civ. P. 23(a) and (b)(3).  Unless and until the requirements for class certification are met, preliminary approval of the Settlement Agreement would be premature.  Therefore, the motion is **DENIED without prejudice**.

## II.   PROCEDURAL HISTORY.

The state court records filed in support of removal of these cases reflect that, in 2006, Plaintiffs De Leon and Mendoza filed separate complaints against Defendant Bank of America Corporation in the Circuit Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida.  They alleged that Defendant violated Florida's Consumer Collection Practices Act, Chapter 559, Fla. Stat.  Bank of America, N.A. (USA) was later substituted as the Defendant.  The parties thereafter agreed to transfer venue in these cases to the Circuit Court for the Ninth Judicial Circuit in Orange County, Florida.

---

[2] The Settlement Agreement defines "Defendant" to mean "FIA Card Services, N.A." Doc. No. 65-1 at 8 ¶ 2(k).

-3-

Discovery was conducted in both cases before either Plaintiff filed a complaint that contained class action allegations.

On February 17, 2009, Mendoza filed in the Circuit Court in Orange County, Florida, an amended complaint, on behalf of herself and others similarly situated, in which she named Bank of America, N.A. (USA) and 100 unidentified individuals as Defendants.  Mendoza alleged that Bank of America, N.A. breached its Cardholder Agreements, and that the Defendants were unjustly enriched, violated the Florida Consumer Collection Practices Act, and engaged in deceptive and unfair trade practices in violation of Chapter 501, Fla. Stat.

On June 5, 2009, De Leon and Mendoza each filed in the Circuit Court in Orange County, Florida a three-count amended complaint on behalf of herself and others similarly situated against Bank of America N.A. (USA), now known as FIA Card Services, N.A.  They each alleged in Count I - breach of a Bank of America Cardholder Agreement[3]; Count II - violation of the Federal Fair Credit Billing Act, 15 U.S.C. § 1666c ("FEBA"); and Count III - Deceptive and Unfair Trade Practices ("DUPTA").  Pursuant to the stipulation of the parties, Circuit Court judges granted leave to file the amended complaints on June 30 and July 20, 2009, respectively.

On July 20, 2009 and July 27, 2009, Defendant removed these cases to this Court based on federal question jurisdiction and upon diversity of citizenship pursuant to the Class Action Fairness Act ("CAFA").  This Court later consolidated the two cases into the present lead case.[4]

---

[3]   An exhibit to each amended complaint is an undated Bank of America Cardholder Agreement.  Section 7.18 of the Agreement states, "THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW."  Case No. 6:09-cv-1251-Orl-28KRS, Doc. No. 2-2 at 6 ¶ 7.18; Case No. 6:09-cv-1295-Orl-31KRS, Doc. No. 4 at 27 ¶ 7.18.

[4] Hereinafter, citations to docket numbers will refer to documents filed in the lead case.

Defendant filed motions to dismiss the amended complaints.  On November 16, 2009, the Court entered an Order granting Defendant's motion to dismiss Counts II and III, Plaintiffs' claims for violations of FEBA and DUPTA[5], but denying Defendant's motion to dismiss Count I, Plaintiffs' breach of contract claims.  Doc. No. 42.

The gist of Count I, the only remaining claim before the Court, is that each Plaintiff timely made an in-person payment on her credit card account to a local Bank of America branch (De Leon on June 18, 2005; Mendoza on July 2, 2005), but Defendant improperly charged each a late fee in the amount of $35.00.  The Court rejected Defendant's argument that its Billing Statement provided the place and method of payments and found that "the Statement is not part of the parties contractual relation."  Doc. No. 42 at 5-6.

On December 10, 2009, Defendant filed an answer, in which it treated both amended complaints as a single complaint.  Doc. No. 48 at 1 n. 1.  Defendant denied knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation "that the Agreement is standardized."  *Id.* ¶ 84.

The Court granted the parties' requests to extend deadlines and entered an amended scheduling order.  Doc. Nos. 52, 59, 60.  Thereafter, the parties requested and the Court granted a stay of the case to allow settlement discussions to continue.  Doc. Nos. 59, 60.

On June 2, 2011, Plaintiffs filed the above-referenced motion.  The following sections will describe some of the prominent terms of the Settlement Agreement, discuss some of Plaintiffs'

---

[5]   The Court concluded that Florida law governed the deceptive and unfair trade practices claim and found that the claim was specifically excluded by the Florida Deceptive and Unfair Trade Practices Act.  Doc. No. 42 at 11-12. The Court also found that the Bank of America Cardholder Agreement was governed by Arizona law.  *Id.* at 3.

numerous failures to present evidentiary support to establish the requirements for class certification set forth in Fed. R. Civ. P. 23(a) and (b)(3), and comment on some of the terms in the Settlement Agreement, proposed Preliminary Approval Order and proposed Notice to absent class members.

## III.   THE PROPOSED SETTLEMENT AGREEMENT.

   A.   *Settlement Class*.

The Settlement Agreement consists of 30 pages of text, with 31 numbered headings containing 134 subparagraphs and subparts, as well as incorporated Exhibits A - D.  It is to be governed by the laws of the State of Delaware.  Doc. No. 65-1 at 34 ¶ 26.

It defines the "Settlement Class" as follows:

> [A]ll Persons who, at any time between April 1, 2005 and October 19, 2006:  (x) had a credit card account with FIA[6] and (y) made a Qualifying Payment in connection with that account (i) in person at a Bank of America banking center, (ii) by phone using Bank of America's pay-by-phone service, or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.  For avoidance of doubt, all three conditions (x) through (z) must be satisfied to be eligible for Settlement Class membership.

---

   [6] FIA is defined to mean FIA Card Services, N.A. and all predecessor and successor entities. Doc. No. 65-1 at 10 ¶ 2(p).

*Id.* at 14 ¶ 2(cc).[7]  Plaintiffs estimate that the Settlement Class contains "hundreds of thousands of members and potentially as many as 500,000 consumers."  Doc. No. 66 at 13.

For purposes of the class definition, "Qualifying Payment" is defined as follows:

> [P]ayment by a FIA cardholder on a FIA credit card account where the payment is (x) equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made (y) not determined by Defendant to be deficient for non-sufficient funds, and (z) made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder.

Doc. No. 65-1 at 11 ¶ 2(v).

A Settlement Class Member must timely submit a Claim Form to the Settlement Administrator.  If the Settlement Administrator determines that the class member satisfies the requirements to receive a payment or account credit under the Settlement Agreement, the class member then becomes an "Approved Settlement Class Member."  *Id.* at 7-8 ¶ 2(b), (g) and at 25-27 ¶ 10.

B.      *Settlement Amount.*

Defendants agree to pay "up to the Settlement Amount," defined as "ten million U.S. dollars ($10,000,000)," *id.* at 13 ¶ 2(bb), from which Court-approved attorneys' fees and costs,

---

[7] Other papers submitted in support of the motion describe the class somewhat differently. *See, e.g.,* Doc. No. 65-1 at 51-52 ¶ 4 ([Proposed] Order Preliminarily Approving Class Action Settlement and Related Matters); Doc. No. 65-1 at 64 ([Proposed] Final Order and Judgment); Doc. No. 65-1 at 43 (Legal Notice by Order of the Court); Doc. No. 65-1 at 41 (Claim Form); Doc. No. 65-3 (Short Form Notice).  All of the documents should be conformed to state the class definition correctly and completely.

service awards to the Representative Plaintiffs[8], Settlement Costs[9], and any other cost or expense approved by the Court will be deducted, leaving the "Net Settlement Amount" available for payments to Approved Settlement Class Members.  *Id.* at 10 ¶ 2(s).  After the total cost of distribution to Approved Settlement Class Members has been determined by the Settlement Administrator, a maximum of $500,000 from the remaining Settlement Amount (if any) will constitute the "Cy Pres Fund," which will be distributed to organizations agreed on by the parties and Class Counsel.  *Id.* at 25 ¶ 9(i).  "Any amount left over after all such payments from the Settlement Amount shall be retained by Defendant."  *Id.* at 23 ¶ 9(a) (Monetary Payment).

---

[8] Under the Settlement Agreement, Plaintiffs De Leon and Mendoza may each apply for a payment of not more than $2,500 "for their service as the representatives of the Settlement Class . . . ."  Doc. No. 65-1 at 25 ¶ 9(j).

[9] Settlement Costs are defined as follows:

[A]ll costs of providing Class Notice to the Settlement Class as ordered by the Court plus all fees, costs and expenses of settlement administration.  This includes, but is not limited to, the fees, costs and expenses associated with: preparing, printing and mailing Class Notices and/or Claim Forms; retaining the Settlement Administrator; preparing and transmitting the Electronic Notice; creating, hosting and maintaining the Settlement Website; establishing, operating and maintaining the Settlement 1-800 number; receiving, processing and verifying Claim Forms; data storage; establishing and maintaining the designated post office boxes for receiving Claim Forms and opt-out requests; opt-out processing costs; preparing, disseminating and filing any data or reports required by the Settlement Agreement or the Court; printing, preparing and transmitting payments and account credits to Settlement Class Members (excepting the amounts of the payments themselves); account reconciliation; preparation of the final accounting of the Settlement Administrator; administration and labor incidental or related to the foregoing; and any and all other actions reasonably necessary to the performance, approval and effectuation of the Settlement . . . .

Doc. No. 65-1 at 14-15 ¶ 2(ff).  Settlement Costs do not include "the labor costs of Bank of America employees or outside counsel."  *Id.*  Because "Bank of America" is an undefined term, and the Defendant in this case is FIA Card Services, Inc., it is unclear whether Settlement Costs may include labor costs of FIA Card Services, Inc.'s employees and their outside counsel.

Defendants agree to pay each Approved Settlement Class Member:

> $28 in full satisfaction of their Claim, provided that if the Net Settlement Amount is insufficient to provide each Approved Settlement Class Member with such $28 payment, Defendant will pay . . . an amount equal to the Net Settlement Amount divided by the number of Approved Settlement Class Members (the "Pro Rata Amount").[10]  Only one valid Claim will be paid per Approved Settlement Class Member, regardless of the number of Qualifying Payments made or late or other fees assessed.

*Id.* at 23 ¶ 9(b).

    C.    *Release of Claims.*

All members of the settlement class who fail timely to opt-out of the settlement, whether or not they receive any payment, and whether they receive notice of the settlement, are defined as "Releasors" "for themselves and on behalf of their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors in interest and assigns and any authorized users of the FIA credit card accounts."[11]  Doc. No. 65-1 at 13 ¶ 2(y).  Upon final settlement approval, "each of the Releasors unconditionally, fully and finally releases and discharges each of the Defendant Releasees from each of the Released Claims."  *Id.* at 22 ¶ 7.

---

[10] In FIA's sole discretion, payments to Approved Settlement Class Members who have an open and active FIA credit card account in good standing at the time of the payment may be made by a credit to the FIA credit card account.  Doc. No. 65-1 at 24 ¶ 9(e).

[11] The Settlement Agreement does not contemplate providing notice of the release or of the scope of the release to any person following "on behalf of."  Perhaps Plaintiffs De Leon and Mendoza know their own "on behalf of" Releasors, but Plaintiffs have not provided any information to the Court in that regard, much less any such information about the "on behalf of" Releasors for absent Settlement Class Members.

"Defendant Releasees" are defined as follows:

> Defendant [FIA Card Services, N.A.] and each of its predecessors,
> successors (including without limitation, acquirers of all or
> substantially all of the assets, stock, or other ownership interests of
> the Defendant) and assigns; the past, present and future, direct and
> indirect, parents (including but not limited to, holding companies),
> subsidiaries, affiliates and associates (as defined in SEC Rule 12b-2
> promulgated pursuant to the Securities Exchange Act of 1934) of
> any of the above; financial institutions, corporations, trusts, or other
> entities that may hold or have held any interest in any account or
> any receivables relating to any account, or any receivables or group
> of receivables, or any interest in the operation or ownership of FIA;
> and the past, present and future principals, trustees, partners,
> contractual counterparties (including, without limitation, affinity,
> agent bank, and co-brand contractual parties), officers, directors,
> employees, agents, vendors (including processing facilities),
> attorneys, shareholders, advisors, predecessors, successors
> (including, without limitation, acquirers of all or substantially all of
> the assets, stock, or other ownership interests of any of the above),
> assigns, representatives, heirs, executors and administrators of any
> of the above.[12]

*Id.* at 8-9 ¶ 2(l).

The Releasors release Defendant Releasees from the "Released Claims," defined as

follows:

> [A]ny and all Claims (i) that in whole or in part arise out of or relate
> to any late payment or other fees or charges of any kind assessed by
> FIA on Qualifying Payments up through the date of the Preliminary
> Approval,[13] including without limitation, any and all Claims based

---

[12] Neither Plaintiffs nor Defendant provided the Court any information about the entities that fall within the definition of Defendant Releasees or provided the Court an estimate of the number of Defendant Releasees.

[13] The definition of "Qualifying Payment" is not limited to the April 1, 2005 to October 1, 2006 period included in the definition of the Settlement Class.  Thus, among other claims, class members will release claims arising out of late payments or other fees or charges assessed by FIA on Qualifying Payments from the beginning of time to the date of preliminary approval of the settlement agreement.

-10-

in whole or in part on any act, omission, event, incident, matter, dispute, facts, business practices, transactions or occurrences, or injury up through the date of Preliminary Approval regarding FIA's crediting of payments to credit card accounts, including, without limitation, failure to credit such payments by a given date; or (ii) that are or could have been asserted within the scope of the facts asserted in the Litigation; or (iii) that arise out of or relate in any way to the administration of the Settlement Agreement, other than claims for breach of the Settlement Agreement.

Released Claims include, without limitation, all Claims described in the prior sentence that arise under, or which could arise under, any federal, state or other law relating to disclosures (*e.g*., the Truth in Lending Act, 15 U.S.C. sec. 1601 <u>et seq</u>., Regulation Z, 12 C.F.R., pt. 226, Article 10 of the New York Personal Property law, or the Song-Beverly Credit Card Act, Section 1747 <u>et seq</u>. of the California Civil Code) or consumer protection or unfair or deceptive acts or practices (*e.g.* the Fair Credit Billing Act, 15 U.S.C. 1666C <u>et seq</u>., 12 C.F.R. 226.10, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.021 <u>et seq</u>., Section 17200, <u>et seq</u>. of the California Business and Professions Code, Section 17500 <u>et seq</u>. of the California Business and Professions Code, Section 1750 <u>et seq</u>. of the California Civil Code, Section 349 of the New York General Business Law, or Sections 3724-6 and 37-24-31 of the South Dakota Codified Laws), or any principle of common law or equity, including, but not limited to, breach of contract, breach of duty, fraud, conversion, good faith and fair dealing, negligent misrepresentation, unconscionability or unjust enrichment, without regard to <u>whether or not any of the Representative Plaintiffs or any of the Settlement Class Members knows or suspects such Claim to exist</u> in his, her or its favor at the time of the Releases, and without regard to the subsequent discovery or existence of other <u>different or additional facts, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to opting out</u> of the Settlement Class or with respect to this Settlement Agreement.

. . . [T]he Released Claims specifically <u>extend to and include claims that the Representative Plaintiffs and the Settlement Class Members do not know or suspect to exist in their favor at the time of the Final Settlement Approval.</u>  This paragraph constitutes a <u>release and waiver</u> of, without limitation as to any other applicable law, section 1542 of the California Civil Code, and any and all similar laws of other states.  Section 1542 of the California Civil Code provides:

-11-

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER
> MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.
>
> Representative Plaintiffs understand and acknowledge, and <u>each
> member of the Settlement Class shall be deemed to understand and
> acknowledge, the significance of these releases and of this waiver</u> of
> California Civil Code section 1542 and of any and all similar laws
> of other states relating to limitations on releases, including, without
> limitation, limitations on releases of unknown or unliquidated
> claims.

Doc. No. 65-1 at 11-13 ¶ 2(w) (emphasis added).

The release of Released Claims by the Settlement Class is accompanied by covenants not to sue, pursuant to which each Releasor covenants and agrees "not to take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claims(s) against any of the Defendant Releasees." *Id.* at 22 ¶ 8.

>    D.    *Preliminary Injunctions.*

The Settlement Agreement provides for entry of Exhibit C, [Proposed] Order Preliminarily Approving Class Action Settlement and Related Matters ("Preliminary Approval Order"). *Id.* at 17-18 ¶ 4(a). The Preliminary Approval Order consists of 12 pages containing 31 numbered paragraphs. *Id.* at 50-62.

The first sentence of paragraph 23 of the Preliminary Approval Order states, in part, as

follows:

> All Settlement Class Members . . . are stayed and enjoined from
> commencing, instituting, <u>continuing</u>, pursuing, <u>maintaining</u>,
> prosecuting or <u>enforcing</u> any Released Claim . . . directly or
> indirectly, in any judicial, administrative, arbitral, or other forum
> until Final Settlement Approval or termination of the Settlement
> Agreement, whichever occurs earlier; provided, that this stay and
> injunction shall not apply to individual claims of any member of the
> Settlement Class who has timely and properly opted out from the
> Settlement Class as permitted by the Court.

*Id.* at 57 ¶ 23 (emphasis added).

The first sentence of paragraph 30 of the Preliminary Approval Order states, in part, as

follows:

> In the event that any of the provisions of this Preliminary Approval
> Order is asserted by any Defendant Releasee . . . as a defense . . . or
> otherwise asserted . . . in any other suit, action, or other proceeding
> brought by one or more Settlement Class Members or any Person
> actually or purportedly acting on behalf of any such Settlement
> Class Member(s), that suit, action, or other proceeding shall be
> <u>immediately stayed and enjoined</u> as to such Settlement Class
> Member(s) until the Court has entered an order or judgment finally
> determining any issues relating to such defense or assertion and <u>no</u>
> <u>further judicial review of such order or judgment is possible</u>.

*Id.* at 60 ¶ 30 (emphasis added).

    E.    *Notice to Settlement Class Members.*

Defendant is required to send notice to the Settlement Class members who are "reasonably

identifiable" within "120 days after the beginning of the calendar month following the Court's

entry of the Preliminary Approval Order . . . ."  *Id.* at 19 ¶ 5(a), (b).  Defendant, in its discretion,

may send notice by mail, email or other electronic means.  The notice, by whatever means it is

sent, need not contain the full Class Notice and Claim Form, as long as the notice provided

-13-

describes how recipients can download or obtain by mail the full Class Notice and Claim Form. *Id.* ¶¶ 5(b) and (c).

Notice will be sent to the last current address or an email address shown in FIA's computerized records.  *Id.* at 19-20 ¶ 5(b), (c).  Within 90 days after the beginning of the calendar month following entry of the Preliminary Approval Order, the Settlement Administrator will establish a settlement website which makes available a downloadable, full-length form of the Class Notice and Claim Form.  *Id.* at 20 ¶ 5(d).

> F.      *Class Representatives and Special Compensation.*

Plaintiffs ask that the Court approve the named Plaintiffs, Heydee De Leon and Jennifer Mendoza, as Representative Plaintiffs and find that they have and will fairly and adequately protect the interests of the Settlement Class.  *Id.* at 51 ¶ 2.  Defendant agrees not to oppose a payment of not more than $2,500, payable from the Settlement Amount, to each Representative Plaintiff.  *Id.* at 25 ¶ 9(j).

> G.      *Class Counsel, Attorneys' Fees and Costs.*

Plaintiffs ask that the Court appoint the law firms of Morgan & Morgan, P.A., as Lead Settlement Class Counsel, and CPLS, P.A., as Co-Settlement Class Counsel, and find that they have and will fairly and adequately protect the interest of the Settlement Class.  *Id.* at 51 ¶ 3. Defendant agrees not to oppose an application for attorneys' fees in an amount not to exceed 33% of the $10 million Settlement Amount (*i.e.*, $3.3 million), payable from the Settlement Amount. *Id.* at 28 ¶ 12.  Class Counsel need not await final payment of claims to Settlement Class Members to be paid up to a $3.3 million fee.

-14-

## IV.     ANALYSIS.

### A.     *Requirements for Class Certification.*

Fed. R. Civ. P. 23 governs class actions in federal court.  Plaintiffs request conditional

certification of a class for settlement purposes only.  In 2003, Rule 23 was amended by deleting

the provision for conditional class certification.  Therefore, a court that is not satisfied that the

requirements of Rule 23 have been met should refuse certification until they have been met.  *See*

Fed. R. Civ. P. 23, Advisory Comm. Notes, 2003 Amendments.

The United States Supreme Court has observed that "[w]hen a district court . . . certifies

for class action settlement only, the moment of certification requires 'heightened attention . . . to

the justifications for binding the class members.'" *Ortiz v. Fibreboard*, 527 U.S. 815, 849 (1999)

(quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)(*Amchem*)).  "Such

attention is of vital importance, for a court asked to certify a settlement class will lack the

opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as

they unfold." *Amchem*, 521 U.S. at 620.

"A party seeking class certification must affirmatively demonstrate his compliance with

the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011).  Certification is proper only if the district court is satisfied, after rigorous analysis, that the

requirements of Rule 23(a) are satisfied.  Actual, not presumed, conformance with Rule 23(a) is

indispensable.  *Id.*

Plaintiffs request class certification under Rule 23(a) and (b)(3).

> Rule 23(a) states four threshold requirements applicable to all class
> actions:  (1) numerosity (a "class [so large] that joinder of all
> members is impracticable"); (2) commonality ("questions of law or
> fact common to the class"); (3) typicality (named parties' claims or
> defenses "are typical . . . of the class"); and (4) adequacy of
> representation (representatives "will fairly and adequately protect
> the interests of the class"). . . .

> To qualify for certification under Rule 23(b)(3), a class must meet
> two requirements beyond the Rule 23(a) prerequisites:  Common
> questions must "predominate over any questions affecting only
> individual members"; and class resolution must be "superior to other
> available methods for the fair and efficient adjudication of the
> controversy." . . .

> Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a
> court's "close look" at the predominance and superiority criteria:

>> "(A) the interest of members of the class in
>> individually controlling the prosecution or defense of
>> separate actions; (B) the extent and nature of any
>> litigation concerning the controversy already
>> commenced by or against members of the class; (C)
>> the desirability or undesirability of concentrating the
>> litigation of the claims in a particular forum; . . ."

> Confronted with a request for settlement-only class certification, a
> district court need not inquire whether the case, if tried, would
> present intractable management problems.

*Amchem,* 521 U.S. at 613-20.

    B.    *Plaintiffs' Motion for Class Certification.*

Plaintiffs have not presented evidence to establish <u>any</u> of the requirements for class

certification under Rule 23(a) or (b)(3).  Instead, Plaintiffs rely entirely on conclusory statements

in their supporting memorandum to the effect that "this class satisfies all of the Rule 23

requirements . . . ." Doc. No. 66 at 13.  Because Plaintiffs have not provided evidentiary support

-16-

for class certification, there is insufficient information before the Court to determine whether certification of a settlement class is appropriate.  To guide Plaintiffs' counsel in the event they choose to file a renewed motion, I will review some of the deficiencies in their current papers regarding each of the factors required for certification of a class under Rule 23(a) and (b)(3).

            1.     <u>Numerosity</u>.

      The proposed Settlement Class expands the nature of the conduct underlying the breach of contract claim in Count I of the named Plaintiffs' amended complaints.  As pleaded, the breach of contract occurred when Defendant assessed and collected a late fee and other penalties for a timely in-person payment at a local Bank of America branch.  The Settlement Class definition expands the breach of contract to include late payment fees or other charges and penalties that Defendant assessed and collected when a cardholder made payment by phone using Bank of America's pay-by-phone service or by electronically using Bank of America's online banking services.

      "The parties estimate that the Class for which certification is sought contains hundreds of thousands of members and potentially as many as 500,000 consumers."  Doc. No. 66 at 13.  The parties' unsupported estimate is not evidence upon which the Court can reasonably rely to determine the likely number of class members.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

            2.     <u>Commonality</u>.

      Plaintiffs assert that common questions of law and fact include the following:  "Plaintiffs' and the proposed Class members' claims stem from the same alleged conduct – the Bank allegedly not crediting certain payments <u>made in person</u> at Bank of America banking centers 'upon receipt'"

-17-

and "whether this conduct constituted a breach of the <u>operative</u> Cardholder Agreement."  Doc. No. 66 at 14 (emphasis added).  In regard to the allegedly common conduct, Plaintiffs ignore the expansion of the proposed Settlement Class to include payments made by phone using Bank of America's pay-by-phone service and payments made by using Bank of America's electronic claim service.  At best, the conduct common to Plaintiffs and the proposed Settlement Class are claims arising from in-person payments at a Bank of America branch.

More important, Plaintiffs have not shown that Plaintiffs and putative class members had the <u>same</u> cardholder agreement during the period April 1, 2005 through October 19, 2006.  For purposes of establishing commonality, the "common contention . . . must be of such a nature that it is capable of a classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.  Thus, if any of the putative class members had different "cardholder agreements, cardholder statements or other disclosure to the cardholder," each of them could not use identical evidence to establish the breach of contract claim.  *See, e.g., Vega*, 564 F.3d at 1272.   As such, absent evidence that each member of the class had the same cardholder agreement as the one attached as an exhibit to Plaintiffs' amended complaints, the commonality requirement would not be satisfied.

> 3.    <u>Typicality</u>.

Typicality refers to the characteristics of the named plaintiff in relation to the class.  *Vega*, 564 F.3d at 1275.  The class representative must possess the same interest and suffer the same injury as the class members to be typical under Rule 23(a)(3).  *Id.*

Plaintiffs presented no evidence to establish that their claims are typical of the claims of each of the putative class members. Their claims for breach are based on in-person payments at a local branch bank not on payments by phone or electronically. They have not presented evidence that the form of cardholder agreement to which they were parties is identical to the cardholder agreement to which absent class members were parties. As such, they have not satisfied the typicality requirement. *See, e.g., id.* at 1276.

    4.    <u>Adequacy</u>.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. . . . A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625 (citations and internal quotation marks omitted). Because Plaintiffs have not established the existence of a common contract, they have not established that they possess the same interest and suffered the same injury as the absent class members.

Further, the proposed payment of $2,500 to each of the named Plaintiffs raises a possible conflict-of-interest between Plaintiffs and absent class members. The state court records reflect that discovery was taken before any class action allegations were brought. After the case was removed to this Court, there is no indication that Plaintiffs participated in further discovery. There is also no evidence regarding whether and to what extent either De Leon or Mendoza personally participated in the settlement discussions. Accordingly, there is no basis currently before the Court to support a payment to each named Plaintiff of 71 times her $35.00 late fee and more than 89 times the $28.00 maximum possible recovery for each Approved Settlement Class Member.

The possible conflict-of-interest created by the grossly disproportionate payment to the named Plaintiffs is enhanced by the extraordinary terms of release of claims, waiver of consumer protection statutes and covenants not to sue provided in the Settlement Agreement.  In the Settlement Agreement, De Leon and Mendoza represent that they "understand and acknowledge, . . . the significance of these releases and of this waiver of California Civil Code section 1542 and of any and all similar laws of other states relating to limitations on releases, including, without limitation, limitations on releases of unknown or unliquidated claims."  Doc. No. 65-1 at 12-13.  This statement strikes the Court as an exaggeration.  Because Plaintiffs' counsel has not addressed in their memorandum of law the scope of the releases, waivers and covenants not to sue, or, indeed, whether these releases, waivers and covenants not to sue would be enforceable under the various state laws, even the Court does not understand the full significance of the proposed releases, waivers and covenants.

For the named Plaintiffs to agree to extinguish for a class of an estimated 500,000 cardholders, as well as an unknown number of "on behalf of" releasors, a staggering number and variety of claims, in favor of an unknown but large number of Defendant Releasees through the date of final approval of the Settlement Agreement, raises legitimate questions regarding whether they act in the best interest of absent class members or in their own interest to obtain a service fee not available to the absent class members.  As such, the record is insufficient for the Court to conclude that the named Plaintiffs would be adequate class representatives.

     5.    <u>Predominance and Superiority</u>.

Because Plaintiffs presented no evidence establishing the requirements of Rule 23(a), the Court cannot meaningfully address the additional requirements for certification imposed by Rule

23(b)(3): predominance and superiority.  Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623.  Absent a common agreement, for example, Plaintiffs likely cannot satisfy the predominance requirement. Moreover, differences in state law regarding the claims released and consumer protection statutes waived raise disparate questions that undermine a finding that adjudication by representation is warranted here.

Superiority tests "'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).  Plaintiffs' counsel have not addressed the nature and extent of litigation already commenced by putative class members or the range of recovery that any of the putative class members could receive if they brought some or all of the claims that would be released under the Settlement Agreement.

Superiority also addresses the desirability of concentrating the litigation of claims in this particular forum.  Plaintiffs have not addressed why certification of the class in this Court is appropriate considering that the Settlement Agreement is governed by Delaware law, the Cardholder Agreement attached to Plaintiffs' complaints is governed by Arizona law, and the released claims appear to be governed by the laws of all fifty states.  Moreover, the injunction that the parties ask the Court to enter would require it to intervene in threatened or ongoing litigation in state and federal courts throughout the United States.

    C.    *Considerations Regarding Fairness, Reasonableness and Adequacy of the Settlement Agreement.*

Rule 23(e)(1) requires that the Court approve a settlement agreement only if it is fair, reasonable and adequate.  "The inquiry appropriate under Rule 23(e) . . . protects unnamed class

members from unjust or unfair settlements affecting their rights when the representatives become

fainthearted before the action is adjudicated or are able to secure satisfaction of their individual

claims by a compromise." *Amchem*, 521 U.S. at 623.  Because the named Plaintiffs have failed to

satisfy their burden to establish the requirements for certification in Rule 23(a) and (b)(3), it

would be premature for the Court to make any recommendation regarding fairness, adequacy and

reasonableness of the settlement.  That is not to say, however, that the Court has not carefully

reviewed the Settlement Agreement or that the Court does not have serious concerns about its

fairness, adequacy and reasonableness after reviewing it.

    For guidance to Plaintiffs' counsel in the event that they choose to renew their motion, the

Court will describe several of its concerns about the proposed settlement agreement.

    1.    <u>The Settlement Amount</u>.

    Plaintiffs suggest that the $10 million settlement amount is similar to a "common fund."

That is incorrect for two reasons: First, the settlement amount was determined by agreement, not

by inherent limitations.  Second, any unclaimed settlement funds revert to the Defendant, except

for a payment of a $500,000 contribution to Cy Pres beneficiaries.  If all of the potential 500,000

class members submit an approved claim, the settlement amount – after deduction of settlement

costs, attorneys' fees and costs, and service fees to the class representatives – will be far less than

the amount needed to pay $28.00 to each class member.[14]  However, the Court believes that it is

unlikely that even a modest fraction of class members will submit claim forms for payment.

---

    [14] For example, even if the Settlement Amount of $10,000,000 is reduced only by the
maximum  attorneys' fee award of $3,300,000 - - without considering other costs, expenses and
service awards  - - the Net Settlement Amount would be sufficient to pay only $13.40 to each of the
possible 500,000 Approved Settlement Class Members.

The Plaintiffs initiated this litigation more than five years ago.  The class definition includes only persons who had a credit card account with Bank of America, N.A. (USA), now known as FIA Card Services, N.A., at any time between April 1, 2005, and October 19, 2006.  Assuming that a cardholder during that period was assessed and paid a late fee, finance charge or other penalty, it seems unlikely that the cardholder will recall whether such a fee was paid during that nineteen-month class period or that the cardholder will have retained credit card statements for the five or six years between the assessment and the time that the claim form must be prepared.  Thus, many cardholders who would qualify to submit a claim form are not likely to have records that provide the information needed to submit a claim form signed under penalty of perjury.  *See, e.g.,* Doc. No. 65-1 at 44.

In addition, the maximum $28.00 payment to a class member who submits a claim form is hardly likely to motivate a putative class member to expend much time and effort to determine whether he or she made a Qualifying Payment during the nineteen-month period provided for in the Settlement Agreement.  In short, it appears to the Court that it is likely that a large portion of the Net Settlement Amount will not be claimed and will revert to the Defendant and that a significant number of class members will, nevertheless, be bound by the releases, waivers and covenants not to sue.

2.    Releases and Waivers of Claims.

The provision requiring all members of the Settlement Class to release an extraordinary number and variety of claims that are not asserted in the amended complaints – which claims are not before the Court – and to waive the consumer protections provided under the laws of California, New York, and South Dakota specifically and under other state laws potentially is at

-23-

least audacious, perhaps even unconscionable.  Class action settlements which contain releases of claims outside of the pleadings, much less claims that class members do not know about or even suspect exist, have not faired well in courts' analysis of fairness, reasonableness and adequacy of settlement agreements required by Rule 23(e).  *See, e.g., Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007).

Notably, even those class members who never receive notice of the settlement are bound by the release and waiver provisions, as are those who receive notice but fail to opt-out, and an undefined group of "on behalf of" releasors to whom no notice is to be given under the Settlement Agreement.  Under the Settlement Agreement, Defendant pays only a portion of the late fees it collected[15] to Approved Settlement Class Members and obtains, without any further consideration, the release and waiver of an unknown number of claims, of unknown value, in favor of a potentially large number of Defendant Releasees to and including the date of final approval of the settlement.

       3.    <u>Notice</u>.

The terms of the Settlement Agreement providing for notice of the settlement to absent class members virtually assure that many class members will not receive any notice and, if they do, that they will not receive the full class notice and claim form.  Instead, the form of notice requires only that class members be notified that there is a website which describes how they can

---

[15] Each of the named Plaintiffs paid a late fee of $35.00 but each of them would receive (before a service award) only $28.00.  If the late fee charged to the named Plaintiffs is typical of the late fee charged to each of the 500,000 potential class members, Defendant would make a profit of more than $7,000,000 on the difference between the late fees collected and the payment to be made under the Settlement Agreement.  (500,000 class members x $35.00 late fee = $17,500,000; $17,500,000 late fees collected - $10,000,000 Settlement Amount = $7,500,000).

obtain a full-length, downloadable class notice and claim form.  It appears the short form notice,

Doc. No. 65-3, is the abbreviated notice that may be sent, "at FIA's discretion,"  Doc. No. 65-1 at

19 ¶ 5(b), (c).  This short form notice refers to a toll-free telephone number that class members can

contact.  It is not clear from the Settlement Agreement, however, whether FIA would mail the full

class notice and claim form to individuals who call the toll-free telephone number, or if the caller

would simply be instructed to access the settlement administrator's website.  Any class member

who disregards the abbreviated notice or does not take any action, including a class member who

fails to obtain the Class Notice and Claim Form because he or she is not computer literate or does

not have a computer that would enable him or her to access the website, will be bound by the

terms of the Settlement Agreement, including its extraordinarily broad release and waiver of

claims and covenants not to sue.

        The proposed notice form, Exhibit B to the Settlement Agreement, contains a brief and

inadequate description of the waiver and release of claims in its four pages of text.  Doc. No. 65-1

at 43-48.  Only if the recipient plows through the notice to Appendix A will he or she be able to

read the definition of Released Claims and the terms of the releases, waivers and covenants not to

sue (although the definition of "Releasor" and "Defendant Releasees" are not contained in

Appendix A).  Without more, the form of notice and provisions governing sending notice seem

insufficient to protect the interests of absent class members.

        Additionally, the proposed notice form does not accurately describe the terms of the

Settlement Agreement.  It states, among other things, that "Settlement Class Members who submit

a valid Claim Form, in accordance with the procedure described below, will receive a distribution

of $28 in full satisfaction of their claims."  *Id.* at 44 (emphasis added).  As discussed above, there

is no guarantee that the Net Settlement Amount will be sufficient to pay $28.00 to each Approved

Settlement Class Member.

This inaccuracy highlights the additional problem that there is no way to notify the absent

class members of the actual amount of the payment he or she likely would receive upon

submission of an approved claim because the Court cannot begin to estimate the Net Settlement

Amount based on the information currently before the Court.  In support of any renewed motion,

Plaintiffs' counsel must file a preliminary motion for attorneys' fees and costs and evidence of the

likely amount of the fee of the Settlement Administrator and the costs and expenses of sending

notice and administering the claims process.  *See*, *e.g.,* Fed. R. Civ. P. 23, Advisory Comm. Notes,

2003 Amendments  ("For motions by class counsel in cases subject to court review of a proposed

settlement under Rule 23(e), it would be important to require the filing of at least the initial

motion [for an award of attorneys' fees] in time for inclusion of information about the motion in

the notice to the class . . . .").

4.    Preliminary Injunctions.

Paragraphs 28 and 31 of the Preliminary Approval Order provide for preliminary

injunctions which are likely unconstitutional for lack of due process.  Under the Settlement

Agreement, these injunctions are not reviewable.  Plaintiffs' counsel has not provided any legal

authority supporting such sweeping injunctive relief.  Moreover, the Plaintiffs have not complied

with the requirements of Fed. R. Civ. P. 65(a)(1) or Local Rule 4.06 necessary to obtain a

preliminary injunction.

Because the preliminary injunctions involve enforcing the terms of the releases, the Court

does not know whom it would be enjoining or in whose favor each injunction would run.  Further,

-26-

the length of the injunctions would run through the more than four-month period for sending

notices of the settlement plus the period between completion of sending notices and the date set

for the final hearing.  In view of the problems with the form of notice and method of providing

notice described above, it seems likely that a large number of the persons enjoined will not be

aware of the injunction unless and until a Defendant Releasee raises it in a response to a demand

letter or in a motion to stay an ongoing case.  Because these injunctions would go into effect upon

entry of the Preliminary Approval Order, Defendant Releasees will be able to use them before

notices of settlement must be sent to enjoin claims of putative class members then in existence and

even claims arising after issuance of the Preliminary Approval Order.

> 5.      Service Fees, Attorneys' Fees and Costs.

There are circumstances in which payments have been approved to class representatives to

compensate them for their costs and time and other extraordinary services that they provide for the

benefit of absent class members.  *See, e.g, Allapattah Servs., Inc. v. Exxon Corp,* 454 F. Supp. 2d

1185, 1220 (S.D. Fla. 2006).  Nevertheless, named Plaintiffs ordinarily ought not receive more

than absent class members who they purport to represent, because disproportionate payments

provide incentives to them to act in their own self-interests and not in the interests of absent class

members.  Based on the lack of information justifying a $2,500 service award to each named

Plaintiff, and the lengthy stay of the case after removal to this Court, the Court has difficulty

understanding why service awards would be appropriate in this case.

The bonanza to the named Plaintiffs pales in relation to the potential award of $3.3 million

to Plaintiffs' counsel.  The amount of attorneys' fees cannot be based on a percentage of a

common fund, because, as noted above, the Settlement Amount was established by the parties

rather than by an inherent limitation, such as the coverage limits of an insurance policy. Moreover, it appears likely that a large portion of the fund may not be claimed, in which even the remaining amount, less the $500,000 Cy Pres Fund, will revert to the Defendant.

> 6.  <u>CAFA</u>.

In the proposed order, counsel ask the Court to make findings under CAFA.  The memorandum of law does not provide the Court with legal support for the requested findings.

**V.      CONCLUSION.**

Plaintiffs' Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class (Doc. No. 65) is **DENIED without prejudice**.  It is **ORDERED** that, on or before October 14, 2011, the parties shall either file a renewed motion for certification of the settlement class and preliminary approval of the Settlement Agreement, Claim Form and Notice, supported by evidence and legal authority, or a motion requesting that the Court lift the stay of the proceedings to allow the litigation to proceed.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2011.

*Karla R. Spaulding*
_____
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE