# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HEYDEE DE LEON and JENNIFER
MENDOZA, on behalf of themselves and
others similarly situated,**

**Plaintiffs,**

**-vs-**                                                    **Case No.  6:09-cv-1251-Orl-28KRS**

**BANK OF AMERICA, N.A. (USA) n/k/a
FIA CARD SERVICES, N.A.,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS (Doc. No. 65) |
|---|---|
| FILED: | June 2, 2011 |

| MOTION: | PARTIES' JOINT RENEWED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT AND FOR CERTIFICATION OF THE SETTLEMENT CLASS (Doc. No. 71) |
|---|---|
| FILED: | October 14, 2011 |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S PRELIMINARY MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS (Doc. No. 74)** |
| **FILED:** | **October 14, 2011** |

## I.   INTRODUCTION.

The parties and their counsel seek conditional certification of a settlement class to be

represented by two central Florida residents, Heydee DeLeon and Jennifer Mendoza.  Plaintiffs

DeLeon and Mendoza each had a Visa® consumer credit card account under a consumer

cardholder agreement with Bank of America N.A. (USA)("BANA (USA)"), now known as FIA

Card Services, N.A.  (collectively "Defendant").[1]  Plaintiffs each made at least the minimum

payment due on their credit cards on the due date (June 18, 2005, for DeLeon and July 2, 2005, for

Mendoza) at a Bank of America branch office in Orange County, Florida.  Each Plaintiff was

charged a late fee ($39.00 for DeLeon and $35.00 for Mendoza) because her payment was not

credited on the day it was received.  Each alleges that the failure to credit her payment on the day

it was received breached the "credit upon receipt" language in her cardholder agreement.  Under

the proposed settlement agreement, Doc. No. 65-1 ("Settlement Agreement"), Plaintiffs DeLeon

---

[1]  On April 1, 2004, Bank of America Corporation and its subsidiaries acquired 100% of the outstanding stock of Fleet Boston Financial Corporation.  BANA N.A. was the surviving entity after merger with Fleet National Bank on June 13, 2005.  Bank of Am. Corp. Annual Report (Form 10-K) at 106 (Feb. 28, 2007), found online at http://www.sec.gov/Archives/edgar/data/70858/000119312507042036/d10k.htm (last visited April 18, 2012). On January 1, 2006, Bank of America Corporation and its subsidiaries acquired 100% of the outstanding stock of MBNA Corporation. Effective June 10, 2006, MBNA America Bank N.A. was renamed FIA Card Services, N.A.  On October 20, 2006, BANA USA merged into FIA Card Services, N.A.  *Id.*  FIA Card Services, N.A. is a wholly owned subsidiary of NB Holdings, Inc., itself a wholly owned-subsidiary of Bank of America Corporation. NB Holdings, Inc., also wholly owns BAC North America Holding Company, which wholly owns BANA Holding Corporation, which wholly owns Bank of America, N.A. Doc. No. 71-1 at 24.  Bank of America Corporation listed 27 single-spaced pages of direct and indirect subsidiaries in its annual report for the year ending December 31, 2011. Bank of Am. Corp. Annual Report (Form 10-K), Ex. 21 (Feb. 23, 2012), found online at http://www.sec.gov/Archives/edgar/data/70858/000007085812000155/bac-12312011x10kex 21.htm (last visited April 18, 2012).

and Mendoza and other putative class members will receive, at most, $28.00 in settlement of the breach of contract claims.

The Settlement Agreement has a number of defined terms.  In footnote 1 of the Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class ("Memorandum"), counsel for the parties indicate that they use capitalized terms defined in the Settlement Agreement throughout the Memorandum, but they do not include the definitions of the terms in the Memorandum. Doc. No. 72 at 1 n.1.[2]  As a result, the Memorandum is misleading at best.

For example, the parties repeatedly refer to this case as a consumer class action.  However, the Settlement Class (a defined term) includes Persons (a defined term) who had a "credit card account," not solely a "consumer credit card account," with FIA (a defined term).  Doc. No. 65-1 ¶ 2(cc).  A Person is defined to include without limitation individuals ("natural persons") and "firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities, and all other entities."  Doc. No. 65-1 ¶ 2(t). Thus, the proposed settlement class encompasses credit card accounts of FIA held by consumers, businesses, governments and other entities.

The use of FIA in the Memorandum also creates an illusion that counsel are simply referring to Defendant BANA USA n/k/a FIA Card Services, N.A.  As defined, however, FIA means FIA Card Services, N.A. and all of its predecessor and successor entities.  *Id.* ¶ 2(p).  While

---

[2] Citations are to the internal pagination of a document, not to the pagination assigned when the document was electronically filed.

counsel have not identified those predecessor and successor entities, one of Defendant's attorneys indicated in the Class Action Fairness Act ("CAFA") Notice that the proposed Settlement Agreement in this case includes "predecessors, affiliates and successors" to BANA USA and FIA Card Services, N.A.  Doc. No. 71-1, Ex. G at n.1.  As discussed in footnote 1 above, there are an extensive number of Bank of America Corporation direct and indirect subsidiaries and an unidentified number of affiliates, some or all of which may fall within the Settlement Agreement definition of FIA.  In addition, predecessor entities to FIA Card Services, N.A. may include entities that issued credit cards during the relevant period under names other than a Bank of America entity -- such as MBNA America Bank, N.A. -- that are now part of the Bank of America family of companies.   Presently, no one can identify successors to FIA Card Services, Inc. that may be acquired in the future which issued credit cards during the relevant period.  As such, neither putative class members nor the Court can identify all of the individuals and entities encompassed by the Settlement Agreement's definition of FIA.

In sum, the parties ask that the Court certify the settlement class as defined in the Settlement Agreement, as follows:

> [A]ll Persons who, at any time between April 1, 2005 and October 19, 2006: (x) had a credit card account with FIA and (y) made a Qualifying Payment in connection with that account (i) in person at a Bank of America banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded. For avoidance of doubt, all three conditions (x) through (z) must be satisfied to be eligible for Settlement Class membership.

Doc. No. 65-1 ¶ 2(cc).

When the definitions of "Person," "Qualifying Payment," "Defendant" and "FIA" used in this settlement class definition are substituted for the defined terms, the Court can plainly see the expansive scope of the proposed settlement class, as follows:

> All natural persons, firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities, and all other entities who, at any time between April 1, 2005 and October 19, 2006:  (x) had a credit card account with FIA Card Services, N.A. or its predecessor or successor entities and (y) made a payment on that credit card account where the payment is [a] equal to or in excess of the minimum payment due for the monthly billing cycle in which it is made [b] not determined by FIA Card Services, N.A. to be deficient for non-sufficient funds; and [c] made, or alleged by the cardholder to be made, on or before the same day as the "Payment Due Date" or other deadline stated in the operative cardholder agreement, cardholder statement or other disclosure to the cardholder in connection with that account (i) in person at a Bank of America[3] banking center; (ii) by phone using Bank of America's pay-by-phone service; or (iii) electronically using Bank of America's online banking services; and (z) who incurred a late payment fee, finance charge, or other fees, penalties or charges, in connection with the timing of such payment that was not waived or refunded.  For avoidance of doubt, all three conditions (x) through (z) must be satisfied to be eligible for Settlement Class membership.

Doc. No. 65-1 ¶ 2 (k), (p), (t), (v), (cc).

As discussed in more detail herein, this proposed settlement class does not meet the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3); Plaintiffs DeLeon and Mendoza are not adequate class representatives under Rule 23(a)(4) because neither of them has standing to bring claims on behalf of all of the individuals and entities included in the settlement class; the proposed settlement class does not satisfy the commonality, typicality, predominance and superiority requirements of Rule 23(a) and (b)(3); the proposed notices are not adequate under

---

[3] "Bank of America" is not defined in the Settlement Agreement.  In the CAFA Notice, counsel for Defendant indicated that "Bank of America" refers to all Bank of America entities.  Doc. No. 71-1 at 24 n.1.

Rule 23(c)(2)(B); and, the settlement proposed in the Settlement Agreement is not fair, reasonable and adequate under Rule 23(e)(2).  Therefore, I **respectfully recommend** that the Plaintiffs' Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class (Doc. No. 65), the Parties' Joint Renewed Motion for Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class (Doc. No. 71), and Plaintiffs' Preliminary Motion for Award of Attorneys' Fees and Costs (Doc. No. 74) be **DENIED.**

## II.     THE PLAINTIFFS' MOTION AND THE PARTIES' JOINT MOTION.

In June 2011, DeLeon and Mendoza filed Plaintiffs' Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class ("Plaintiffs' Motion"), Doc. No. 65.  In support of Plaintiffs' Motion, Plaintiffs filed the following:

- Settlement Agreement, Doc. No. 65-1, with attached Exhibit A[4] (Claim Form), Exhibit B (Class Notice), Exhibit C ([Proposed] Preliminary Approval Order), and Exhibit D ([Proposed] Final Judgment and Order of Dismissal;

- A Declaration of J. Andrew Meyer, Doc. No. 65-2, with attached information concerning proposed Lead Class Counsel Morgan & Morgan, P.A., proposed Class Counsel CPLS, P.A. and proposed Settlement Administrator, Rust Consulting Inc.;

- A short form Notice of Class Action Settlement, Doc. No. 65-3;

- Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class, Doc. No. 66; and,

- A Declaration of David Fioccola, a partner with Morrison & Foerster, LLP, attorneys for Defendant, certifying that notice was given as required by the Class Action Fairness Act, Doc. No. 67-1.

---

[4] Subparagraph 31(a) of the Settlement Agreement states, "Each and every exhibit to this Settlement Agreement is incorporated herein by this reference as though fully set forth herein." Doc. No. 65-1 ¶ 31(a).

On August 31, 2011, I entered an Order denying without prejudice Plaintiffs' Motion because Plaintiffs failed to present evidence and legal authority sufficient to satisfy the requirements for class certification under Rule 23(a) and (b)(3).  Doc. No. 68.  I required the parties to present evidence in support of a renewed motion pursuant to my authority to take evidence regarding class certification issues.  *See* 28 U.S.C. § 636(b)(1)(B).[5]  To give counsel guidance regarding the evidence and legal authority required to support a renewed motion for certification, my Order discussed several provisions of the proposed Settlement Agreement, described the requirements that a party seeking class certification must affirmatively demonstrate to establish compliance with Rule 23, and expressed concerns about several aspects of the proposed settlement.

None of the parties appealed my Order.  Instead, they filed the Parties' Joint Renewed Motion for Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class ("Joint Motion"), in which they request that the Court "enter a Report and Recommendation (i) preliminarily approving the Settlement Agreement entered into by the Parties in this cause; (ii) conditionally certifying a Class for settlement purposes only; (iii) appointing Plaintiffs as named Class Representatives for the Settlement Class; (iv) appointing certain of Plaintiffs' counsel as Lead Class Counsel and certain of Plaintiffs' counsel as Class counsel; (v) appointing Rust Consulting, Inc. as the Settlement Administrator; (vi) authorizing the parties to

---

[5] Counsel now argue that I did not have authority to deny Plaintiffs' Motion without prejudice.  Unlike *Adelstein v. Unicare Life and Health Ins. Co.*, No. 99-cv-1544-Orl-28C, 2000 WL 35808378 (M.D. Fla. Dec. 27, 2000), cited by the parties in the Memorandum, Doc. No. 72 at 2 n.3, I did not resolve the merits of Plaintiffs' Motion and I did not deny the motion "outright."  I also did not dismiss or permit maintenance of a class action in violation of Local Rule 6.01(c)(18).  Nevertheless, because the parties incorporate Plaintiffs' Motion into the Parties' Joint Renewed Motion for Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class (Doc. No. 71), the arguments in Plaintiffs' Motion will be considered again in this Report and Recommendation.  Accordingly, the issue of the authority of a Magistrate Judge to deny a class certification motion without prejudice to permit further development of the record is moot.

disseminate notice to the Class as contemplated by the Parties' Settlement Agreement; and (vii) setting a hearing date for final approval of the Settlement Agreement." Doc. No. 71 at 1.  In support of the Joint Motion, the parties filed the following:

- A Declaration of David J. Fioccola, Doc. No. 71-1, attaching Exhibits A-H;

- An Affidavit of Amy Lake, Doc. No. 71-2, senior project administrator at Rust Consulting, Inc.;

- An Affidavit of Tracy Michaud, Doc. No. 71-3, Vice President, Senior Compliance Specialist at Bank of America Corporation;

- An Affidavit of Jacques Flachier, Doc. No. 71-4, Assistant Vice President of Consumer Product Strategy Analysis at Bank of America Corporation;

- An Affidavit of Jennifer Sifuentes, Doc. No. 71-5, Assistant Vice President in the Borrowing Products Operation and Production Division of Bank of America Corporation;

- An Affidavit of Jennifer Mendoza, Doc. No. 71-6, attaching a Bank of America Visa® Account Statement; and,

- An Affidavit of Heydee DeLeon, Doc. No. 71-7, attaching a Bank of America Visa® Account Statement; and,

- A Memorandum of Law in Support of the Parties' Joint Motion, Doc. No. 72.

The parties request that the discussion of the facts regarding fairness, reasonableness and adequacy of the settlement submitted in support of Plaintiffs' Motion be incorporated by reference and considered in support of the Joint Motion.  Doc. No. 72 at 2 n.2.  To address concerns raised in the Order, the parties also supplemented the factual information and legal authorities supporting Plaintiffs' Motion; submitted a revised claim form, revised short-form notice and revised long-form notice, Doc. No. 72 at 2; and, entered into stipulations regarding the definition of

"Qualifying Payments," *id.* at 25 n.20[6], and costs not charged to the "Settlement Fund," *id.* at 32.

Plaintiffs also filed Plaintiffs' Preliminary Motion for Award of Attorneys' Fees and Costs, Doc.

No. 74.

### III.   PROCEDURAL HISTORY.

    A.   *Proceedings in State Circuit Courts.*

State court records filed in connection with the removal of the underlying cases to this

Court reflect the following activity.  On January 9, 2006, Plaintiff DeLeon, and on January 17,

2006, Plaintiff Mendoza filed separate complaints against Bank of America Corporation ("BAC")

in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

Both complaints alleged one count of violation of Florida's Consumer Collection Practice Act,

Chapter 557, Fla. Stat.  Attorney William Peerce Howard, P.A., of counsel in the Tampa office of

Morgan & Morgan, P.A., signed each complaint.[7]  On February 1, 2006, answers to the complaints

were filed by "Bank of America, N.A. (USA), incorrectly named as Bank of America Corp."  In

late February 2006, on stipulation of the parties, Bank of America, N.A. (USA) was substituted for

BAC as the Defendant.

---

[6]  In footnote 20 of the Memorandum, the parties indicate that they "have stipulated that the definition of "Qualifying Payments' as set forth [in the Settlement Agreement] is limited to April 1, 2005 through October 17, 2006." Doc. No. 72 at 25 n.20.  Any stipulation that changes or clarifies the wording of the Settlement Agreement should be incorporated into an amended settlement agreement.

[7]  Curiously, Mendoza avers that she first conferred with Tee Persad, Esq., an attorney with CPLS, P.A., not with Attorney Howard.  Doc. No. 71-6 ¶ 6.  DeLeon avers that she was referred by an unnamed attorney to Attorney Persad. Doc. No. 71-7 ¶ 9.  Attorney Persad did not enter an appearance on behalf of Mendoza or DeLeon in the state court cases until March 6, 2008.

In both cases, the parties stipulated to transfer venue to Orange County, Florida.  Both cases were transferred to the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida, in January 2007.

In notices of change of responsible attorney for Defendant filed on March 10, 2008, counsel for Defendant stated that they were counsel for BANA (USA) "now known as FIA Card Services, N.A."  Beginning in May 2008, and through January 2009, Plaintiffs and Defendant served notices of depositions, interrogatories and requests for production of documents.  Plaintiff Mendoza gave a deposition on October 28, 2008.  DeLeon avers that she gave a deposition, Doc. No. 71-7 ¶ 12, but there is no indication in the record when that deposition was taken.

On February 17, 2009, Mendoza filed a First Amended Complaint.  Mendoza alleged four counts against BANA (USA):  Count I, BANA (USA) breached its cardholder agreement, which incorporated billing statements identical or similar to Exhibits A and B, by inappropriately charging late payment fees; Count II, BANA (USA) unjustly enriched itself; Count III, BANA (USA) violated the Florida Consumer Collection Practices Act; and, Count IV, BANA (USA) engaged in unfair trade practices in violation of Chapter 501, Fla. Stat.

On June 5, 2009, DeLeon and Mendoza each filed in the Circuit Court in Orange County, Florida a motion to amend and a three-count amended complaint on behalf of herself and others similarly situated against Bank of America N.A. (USA), a/k/a FIA Card Services, N.A.  Each complaint alleged in Count I - breach of a Bank of America Cardholder Agreement[8]; Count II - violation of the Federal Fair Credit Billing Act, 15 U.S.C. § 1666c ("FCBA"); and, Count III -

---

[8]  An exhibit to each amended complaint is an undated Bank of America Cardholder Agreement.  Section 7.18 of the Agreement states, "THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW." Case No. 6:09-cv-1251-Orl-28KRS, Doc. No. 2-2 § 7.18; Case No. 6:09-cv-1295-Orl-31KRS, Doc. No. 4, Cardholder Agreement § 7.18.

Deceptive and Unfair Trade Practices ("DUTPA").  Pursuant to the stipulation of the parties,

Circuit Court judges granted leave to file the amended complaints on June 30 and July 20, 2009,

respectively.

B.      *Proceedings in This Court.*

On July 20, 2009 and July 27, 2009, Defendant removed these cases to this Court based on

federal question jurisdiction under CAFA and diversity of citizenship.   Shortly after removal,

Mark P. Ladner, Esq., and David J. Fioccola, Esq., both of whom are associated with Morrison &

Foerster, LLP, specially appeared in the cases as counsel for Defendant.[9]  This Court later

consolidated the two cases into the present lead case.[10]

Defendant filed motions to dismiss the amended complaints.  On November 16, 2009, the

Court entered an Order granting Defendant's motion to dismiss Counts II and III, Plaintiffs'

claims for violations of FCBA and DUTPA, but denying Defendant's motion to dismiss Count I,

Plaintiffs' breach of contract claims.  Doc. No. 42.

The gist of Count I, the only remaining claim before the Court, is that each Plaintiff timely

made an in-person payment on her credit card account with BANA (USA) on the payment due

date at a local Bank of America branch in Orange County, Florida (DeLeon on June 18, 2005;

Mendoza on July 2, 2005); and that BANA (USA) breached section 6.1 of its cardholder

agreement with each Plaintiff, which required it to credit the payments "upon receipt," by delaying

credit for the payment and then improperly charging DeLeon a late fee of $39.00 and Mendoza a

---

[9]   At the time they were permitted to specially appear in this Court, Attorneys Ladner and Fioccola were representing Defendant in *Trombley v. Bank of America Corporation*, Case No. 1:08-cv-456-JD-LM, pending in the United States Court for the District of Rhode Island.  The *Trombley* case will be discussed *infra*.

[10]   Hereinafter, citations to docket numbers will refer to documents filed in the lead case.

late fee of $35.00.  The Court rejected the argument that the place and manner of payments were set forth in billing statements and found that "the Statement is not part of the parties' contractual relationship."  Doc. No. 42 at 5-6.

On December 10, 2009, Defendant filed an Answer, in which it treated both amended complaints as a single complaint.[11]  Doc. No. 48 at 1 n.1.  Defendant denied knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation "that the Agreement is standardized."  *Id*. ¶ 84.  Defendant averred that "Bank of America, N.A. (USA) no longer exists, but that its successor, FIA Card Services, N.A., is a national banking association and citizen of Delaware."  *Id*. ¶ 5.

On March 5, 2010, the parties filed a motion seeking an extension of deadlines in the Case Management and Scheduling Order.  They represented that they were engaged in efforts to resolve disputes regarding discovery.  Doc. No. 50.  The Court granted the motion and extended the scheduling order deadlines by ninety days.  Doc. Nos. 51, 52.  On May 28, 2010, the parties filed a motion to stay the litigation, in which counsel indicated that they were engaged in settlement negotiations.  Doc. No. 55.  The Court granted the motion and stayed the case through September 15, 2010.  Doc. No. 56.  Thereafter, the parties filed additional motions to extend the stay on August 31, 2010 (Doc. No. 59), December 1, 2010 (Doc. No. 61), and February 10, 2011 (Doc. No. 63), each of which was granted, Doc. Nos. 60, 62, 64.

---

[11]  Hereafter, I will refer to the Mendoza and DeLeon's complaints in this case collectively as the "Amended Complaint."

Plaintiffs' Motion was filed June 2, 2011, Doc. No. 65.  The Joint Motion was filed October 14, 2011.  Doc. No. 71.  Plaintiffs also filed a Preliminary Motion for Award of Attorneys' Fees and Costs on October 14, 2011.  Doc. No. 74.

## IV.    ANALYSIS.

### A.    *Requirements for Certification of The Settlement Class.*

#### 1.    <u>Federal Rule of Civil Procedure 23</u>.

Rule 23 governs class actions in federal court.  The parties request conditional certification of a class for settlement purposes only.  In 2003, Rule 23 was amended by deleting the provision for conditional class certification.  Therefore, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  *See* Fed. R. Civ. P. 23(c)(1)(C), Advisory Comm. Notes, 2003 Amendments.

The United States Supreme Court has observed that "[w]hen a district court . . . certifies for class action settlement only, the moment of certification requires 'heightene[d] attention . . . to the justifications for binding the class members.'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)("*Amchem*")).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem*, 521 U.S. at 620.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Certification is proper only if the district court is satisfied, after a rigorous analysis, that

-13-

the requirements of Rule 23(a) are satisfied.  Actual, not presumed, conformance with Rule 23(a) is indispensable.  *Id.*

The parties request class certification under Rule 23(a) and (b)(3).

Rule 23(a) states four threshold requirements applicable to all class actions:  (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). . . .

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." . . .

Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria:

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; . . ."

Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.

*Amchem,* 521 U.S. at 613-20.  The decision whether to certify a class is within the broad discretion of the district court and is reviewed for an abuse discretion.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

2.     <u>Standing</u>.

"'For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each requirement specified in Rule 23(a), as well as at least one of the requirements of Rule 23(b).'"  *Vega v. T-Mobile, U.S.A., Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting *Klay*, 382 F.3d at 1250).  "'[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'"  *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2550 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Because Plaintiffs seek certification of a settlement class solely on their breach of contract claim, their qualifications to serve as class representatives are limited to one claim for breach of their common cardholder agreement ("Cardholder Agreement"), Doc. No. 2-2, based on the factual allegations in the Amended Complaint and supported by their affidavits filed with the Joint Motion.

A summary of the terms of the Cardholder Agreement that are pertinent to Plaintiffs' breach of contract claim is as follows:

> Section 1.2 The named Plaintiff, others who agree to be liable on the account and BANA (USA) are the only parties to the Agreement, which governs the credit card account ("Account").
>
> Section 2.1 Plaintiff may use the Account only for specified types of "consumer transactions."
>
> Section 2.2.1 Plaintiff's Account is a "consumer Account and should not be used for business purposes."
>
> Section 6.1.  Plaintiff promises to pay BANA (USA) for all transactions on her Account for which she is liable.  BANA (USA) agrees to "credit your payment to your Account upon receipt."

Section 7.18 "This Agreement is governed by applicable Arizona law and Federal law."[12]

The facts alleged in the Amended Complaint and supported in Plaintiffs' affidavits are as follows:

¶ 40    On June 8, 2005 (DeLeon), Doc. No. 71-7 at 1 ¶ 4, and July 2, 2005 (Mendoza), Doc. No. 71-6 at 1 ¶ 3, Plaintiffs made payments in person at one of the Defendant's locations in Orange County, Florida.

¶ 41    Defendant did not credit until the next "Business Day" the payments Plaintiffs made at one of Defendant's locations.  Doc. Nos. 71-6 at 1 ¶ 4; Doc. No. 71-7 at 5 ¶ 5.

¶ 42    Defendant did not credit "upon receipt" the payments made by Plaintiffs at one of Defendant's locations.  Doc. No. 71-6 at 1 ¶ 4; Doc. No. 71-7 at 1 ¶ 5.

¶ 43    Defendant's failure to credit upon receipt the payments made by Plaintiffs at one of Defendant's locations is a breach of Defendant's contractual covenant to credit Plaintiffs' Account "upon receipt" of the payment as provided in section 6.1 of the Cardholder Agreement.

¶ 46    Defendant's breach of its contract with Plaintiffs caused Plaintiff Mendoza to incur a late payment fee of $35.00, Doc. No. 71-6 at ¶ 4, and Plaintiff DeLeon to incur a late payment fee of $39.00, Doc. No. 71-7 at ¶ 4.  Plaintiffs allege that they also had the interest rate on their respective credit card balances increased, had the interest rate on subsequent credit card charges increased, or had a negative entry in credit history, all of which caused monetary losses.

Under Arizona law, for a plaintiff to bring a breach of contract action against a defendant, the plaintiff and defendant must have a contractual relationship.  *See, e.g., Gruender v. Rosell*, Case No. CV-09-1347-PHX, DGC, 2010 WL 2079759, at * 1-2 (D. Ariz. May 24, 2010), and cases cited therein.  A party to a contract cannot sue a person who is not a party for breach of contract.  *Id.* at * 2. Because only BANA (USA), not other entities, was a party to the Cardholder

---

[12]  The Cardholder Agreement was modified effective on the first day following the Statement Billing Date in June 2006.  Among other things, the modification indicated that the Cardholder Agreement was governed by Delaware Law, without regard to its conflict of law principles, and applicable federal law.  *See* Doc. No. 1 (DeLeon State Court record, Defendant's Responses to Plaintiff's Second Request for Production).

Agreement with Deleon and Mendoza, DeLeon and Mendoza have standing to sue only BANA (USA) and its successor-in-interest, FIA Card Services, N.A., for breach of their common Cardholder Agreement.

       B.     *Requirements of Rule 23(a) and (b)(3).*

       1.     <u>Numerosity</u>.

The numerosity requirement of Rule 23(a)(1) requires that parties seeking class certification present evidence which shows that "the class is so numerous that joinder of all members is impracticable."  The Eleventh Circuit has observed that "'less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors.' . . ." *Vega*, 564 F.3d at 1267 (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  "'[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class.'"  *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)).

The parties offer the Affidavit of Jacques Flachier and Exhibit H to the Declaration of David J. Fioccola to establish numerosity.  Flachier analyzed BAC's data for the period April 1, 2005 through October 19, 2006, to identify cardholders who met three criteria:  (i) made a payment in person, by phone or electronically, on or before the payment due date; (ii) the payment was posted after the payment due date; and (iii) a late fee was assessed.  Doc. No. 71-4 ¶ 4. BAC's data were contained on three separate computer databases, depending on the method of payment – that is, BAC maintains a separate database for cardholders who made in-person payments, electronic or online payments, and phone payments.  *Id.* ¶ 5.  Flachier identified

-17-

"approximately 500,000 accounts" that met the three criteria specified for identification of

potential class members.  *Id*.  Flachier candidly admitted that this number was overstated to some

extent due to false positives included in his search results.  *Id.* ¶ 6.

Attorney Fioccola authenticated Exhibit H to his declaration, entitled "Settlement Class

Estimates by State," which was an attachment to the June 8, 2011 CAFA Notice Letter.  Doc. 71-1

at 3 & Ex. H.  The total "Estimated Number of Plaintiffs" is 480,976 and includes residents of all

fifty states, the District of Columbia and Puerto Rico.  *Id.*, Ex. H.

Based on this evidence, even in light of the possibility of some reduction in the class due to

"false positive" results, the potential class members are "so numerous that joinder of all members

is impracticable."  Therefore, the proposed settlement class satisfies the numerosity requirement of

Rule 23(a).

       2.    <u>Commonality</u>.

The United States Supreme Court's decision in *Wal-Mart Stores, Inc.* contains its most

recent explanation of the commonality requirement in Rule 23(a)(2).  In that case, the Court noted

that "the crux of this case is commonality – the rule requiring a plaintiff to show that 'there are

questions of law or fact common to the class.'" 131 S. Ct. at 2550-51 (quoting Rule 23(a)(2)).

> That language is easy to misread, since "[a]ny competently crafted class complaint
> literally raises common 'questions.'" . . . Commonality requires the plaintiff to
> demonstrate that the class members "have suffered the same injury," . . . This does
> not mean merely that they have all suffered a violation of the same provision of
> law. . . . Their claims must depend on a common contention . . . . That common
> contention, moreover, must be of such a nature that it is capable of classwide
> resolution – which means that determination of its truth or falsity will resolve an
> issue that is central to the validity of each one of the claims in one stroke.

*Id*. at 2551.  "'What matters to class certification . . . is not the raising of common 'questions' –

even in droves – but, rather the capacity of a classwide proceeding to generate common *answers*

apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have

the potential to impede the generation of common answers.'"  *Id*. (quoting Nagareda, *Class*

*Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

"[C]laims of breach of contract are peculiarly driven by the terms of the parties'

agreement, and common questions rarely will predominate if the relevant terms vary in substance

among the contracts.  It is the form contract, executed under like conditions by all class members,

that best facilitates class treatment."  *Sacred Heart Health Sys., Inc. v. Humana Military Health*

*Care Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("*Sacred Heart*").

As discussed in the introduction, the settlement class definition in the Settlement

Agreement expands membership in the proposed settlement class far beyond the parties, the type

and terms of the Cardholder Agreement, and the parties' conduct upon which the Plaintiffs' claim

for breach of contract in the Amended Complaint is based.  The settlement class, as defined, is

composed of natural persons, businesses, governments and other entities who had credit card

accounts with FIA Card Services, N.A. and any of its predecessor and successor entities.  DeLeon

and Mendoza are two natural persons who each had a common Cardholder Agreement with

BANA (USA) for a consumer account for use in specified consumer transactions.  Doc. No. 2-2

§§ 2.1, 2.2.1.  Their Cardholder Agreements specifically prohibited using their credit cards for

business purposes.  *Id.* § 2.2.1.

The parties attempt to establish commonality through the Affidavit of Tracy Michaud.

However, Michaud does not address whether the cardholder agreements of all members of the

settlement class as defined in the Settlement Agreement contained a credit upon receipt provision.

Instead, she discusses only *consumer* credit card agreements in BAC's cardholder agreement

-19-

repository. Doc. No. 71-3 ¶ 5.  Michaud avers as follows, "I confirmed that all versions of Bank of America's *consumer* cardholder agreements during the April 1, 2005 through October 19, 2006 period contained the credit 'upon receipt' provision at issue." *Id.* ¶ 7 (emphasis added).  Further, "I confirmed that the cardholder agreement attached to Plaintiffs' amended complaints contains the same credit 'upon receipt' provision that is found in all other *consumer* cardholder agreements effective during the April 1, 2005 through October 19, 2006 period." *Id.* ¶ 8 (emphasis added).

If any of the entity members of the proposed settlement class had cardholder agreements with BANA (USA) n/k/a FIA Card Services, N.A., their cardholder accounts surely were not "consumer accounts" restricted to consumer transactions.  Michaud did not state whether the BAC repository contains business, government and other entities' cardholder agreements or whether any of those agreements contained credit upon receipt language.  Therefore, Michaud's affidavit is insufficient to establish commonality as to all proposed members of the settlement class.

The parties do not cite any legal theory supporting a finding that either DeLeon or Mendoza has standing to represent any of the firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities or other entities that are included in the settlement class definition.  They also do not show that any of these entities had cardholder agreements with BANA (USA) n/k/a FIA Card Services, N.A., which are the only companies that DeLeon or Mendoza has standing to sue. Further, the parties do not show that any cardholder agreement between any of these entities and BANA (USA) n/k/a FIA Card Services, N.A. included the credit upon receipt language contained in DeLeon and Mendoza's Cardholder Agreement.

-20-

In *Sacred Heart*, the Eleventh Circuit reviewed a number of class certification decisions in breach of contract cases.  It observed that breach of contract cases are suitable for class certification when the claim arose from a form contract executed under like conditions by all class members or when different contracts were materially similar with respect to the provision allegedly breached.  Because the contracts entered into by members of the proposed class in *Sacred Heart* were not the same and because there was substantial variation in the material terms of the contracts, the Eleventh Circuit held that the district court abused its discretion in certifying a breach of contract class by focusing solely on the defendant's course of conduct.  601 F.3d at 1176.

In the present case, there is no evidence that all members of the proposed settlement class had a common form of cardholder agreement with BANA (USA) n/k/a FIA Card Services, N.A., or that each different cardholder agreement with BANA (USA) n/k/a FIA Card Services, N.A. had the same "credit upon receipt" language contained in DeLeon and Mendoza's Cardholder Agreement.  Without evidence of the existence of a common contract or contracts with common terms entered into with a common defendant, there can be no commonality with respect to the Defendant's failure to credit payment on credit card accounts on receipt, even if taken pursuant to a uniform policy.

        3.    <u>Typicality</u>.

"'[T]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their

absence.'" *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 n. 5 (quoting *Gen. Tel. Co. v. Falcon*, 457

U.S. 147, 157 n. 13 (1982)).  "'[T]ypicality measures whether a sufficient nexus exists between

the claims of the named representative and those of the class at large.'"  *Vega*, 564 F.3d at 1275

(quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)).

　　　As discussed above, DeLeon and Mendoza's claims arise from breach of the credit upon

receipt provision in their common Cardholder Agreement.  It is apparent that the entity members

of the proposed settlement class did not have the same Cardholder Agreement as DeLeon and

Mendoza because Plaintiffs' Cardholder Agreement is limited to consumer transactions.  There is

also no evidence that the cardholder agreements of the entity members of the proposed settlement

class contained the same credit upon receipt provision.

　　　Again, the broad definition of settlement class in the Settlement Agreement precludes a

finding that Plaintiffs' claim for breach of the Cardholder Agreement and claims of absent class

members are "so interrelated that the interests of the class members will be fairly and adequately

protected in their absence."  Therefore, the parties have not established and cannot establish the

typicality requirement of Rule 23(a)(3).

　　　　　　4.　　Adequacy of Representation.

　　　The requirements of commonality and typicality "tend to merge with the adequacy-of-

representation requirement . . . ."  *Wal-Mart Stores, Inc*, 131 S. Ct. at 2551 n.5.  In addition, "[t]he

adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named

parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  As discussed above,

because  DeLeon and Mendoza assert only breach of the credit on receipt provision in their

common Cardholder Agreement neither of them would be an adequate representative for (1) entity

-22-

class members asserting breach of other forms of cardholder agreements not limited to consumer transactions; (2) for class members who claim breach of cardholder agreements entered into with FIA Card Services, N.A.'s predecessor or successor entities other than BANA (USA); or, (3) for class members who assert breach of cardholder agreements that do not contain the credit on receipt provision contained Plaintiffs' common Cardholder Agreement.

                5.   <u>Predominance</u>.

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. "In order to determine whether common questions predominate, 'we are called upon to examine the cause [ ] of action asserted in the complaint on behalf of the putative class.'" *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984)). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay*, 382 F.3d at 1255.

Under Arizona law, to establish breach of contract as alleged in Count I of the Amended Complaint, each class member would have to prove the following: (1) existence of a contract between the class member and BANA USA n/k/a FIA Card Services, N.A. during the relevant period; (2) breach of the credit upon receipt provision of the contract; and, (3) resulting damages. *See Graham v. Asbury*, 540 P. 2d 656, 657 (Ariz. 1975).

As discussed above, there is no evidence that any entity member of the proposed settlement class had a contract with BANA USA n/k/a FIA Card Services, N.A. or that, if it had such a contract, that contract contained a credit on receipt provision.

As to the individual members of the proposed settlement class, each would have to prove that he or she had a contract with BANA USA n/k/a FIA Card Services, N.A. during the relevant period and that each contract contained a credit on receipt provision.  Michaud's affidavit establishes that Bank of America's consumer cardholder agreements had credit on receipt provisions.  It does not establish, however, that each individual member of the proposed settlement class had a cardholder agreement with BANA USA n/k/a FIA Card Services, N.A., rather than some other predecessor or successor of FIA Card Services, N.A.

Assuming that there could be classwide proof that each individual member of the proposed settlement class had a cardholder agreement with BANA (USA) n/k/a FIA Card Services, N.A. during the relevant period that contained a credit upon receipt provision, each individual settlement class member would still have to present individual proof that Defendant breached the credit on receipt provision by showing that he or she (1) made a payment on a specific day and (2) that the payment was not credited on the day it was made.

Finally, each individual settlement class member would also have to present individual proof that the damages he or she suffered *resulted* from the failure to credit the payment made on the day received.  As indicated in the proposed settlement class definition, there are many reasons that the individual might have been assessed fees, penalties or had other consequences that did not result from the Defendant's failure to credit a payment on the day it was received.  The payment may have been made after the due date.  The payment may have been for less than the minimum

-24-

payment amount.  The payment may have been rejected for insufficient funds.  The fees, penalties

or other consequences may have resulted from other provisions of the cardholder agreement, such

as overlimit fees.

In his affidavit, Flachier attests that these individual elements of proof cannot be resolved

on a classwide basis.  Rather, it would require "pulling all 500,000 potential Class Members'

account statements and analyzing each one on an *individual basis* in an effort to identify the false

positive scenarios."  Doc. No. 71-4 ¶ 6 (emphasis added).  Because the class members would have

to introduce a great deal of individualized proof to establish their breach of contract claims,

despite a classwide showing that BANA (USA) n/k/a FIA Card Services, N.A., failed to apply

same-day credit for payments made on or before the payment due date in violation of the

cardholder agreement, this case fails to satisfy the predominance requirement of Rule 23(b)(3).

6.    Superiority.

The determination of whether "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy" under Rule 23(b)(3), focuses on "'the relative

advantages of a class action suit over whatever other forms of litigation might be realistically

available to the plaintiffs.'"  *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1183-84 (quoting *Klay*,

382 F.3d at 1269).  The predominance analysis has a tremendous impact on the superiority

analysis.  "[T]he less common the issues, the less desirable a class action will be as a vehicle for

resolving them."  *Id.* at 1184.

Because of the lack of evidence that (1) the individuals and entities comprising the

proposed settlement class had common cardholder agreements or common credit on receipt

provisions in their cardholder agreements, (2) the cardholder agreements were with BANA (USA)

n/k/a FIA Card Services, N.A., and (3) the late fees, penalties or other consequences assessed against each putative settlement class member resulted from breach of the credit on receipt provision in the cardholder agreement, a class action is not the superior vehicle for resolving the diverse claims of absent class members.

**V.     Fair, Reasonable and Adequate Settlement.**

Rule 23(e)(2) provides that if a proposed class action settlement would bind absent class members, the Court may approve it only after a hearing and based on a finding that it is fair, reasonable, and adequate.  Because the parties request the Court to approve the Settlement Agreement preliminarily, a discussion of whether the Settlement Agreement is fair, reasonable and adequate is appropriate.  "Determining the fairness of the settlement is left to the sound discretion of the trial court. . . ."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  Among other things, the Court should consider whether there was fraud or collusion in arriving at the settlement.  *Id.*

*A.     Fraud or Collusion.*

The settlement amount considered in the light of the Settlement Agreement as a whole raises the possibility that there was some collusion.  In the Settlement Agreement, Defendant agrees to pay *up to* $10,000,000.  Doc. No. 65-1 ¶¶ 2(bb), 9(a).  This settlement amount will first be used to pay the pay costs of administering the notice and claims process (estimated to be $118,875), to pay up to $2,500 each to DeLeon and Mendoza as fees for their service as named Plaintiffs, and to pay Class Counsel up to 33% of the settlement amount (counsel now request $2,500,000), before making any distributions to the absent class members.  *Id.* ¶ 2(s), (ff), ¶ 9(j), ¶ 12; Doc. No. 71-2 ¶ 7; Doc. No. 74 at 1.  DeLeon, Mendoza and absent class members who satisfy

-26-

the requirements of the Settlement Agreement to receive a payment or account credit of up to $28.00 will then be paid from the Net Settlement Amount, that is, the amount remaining after payment of the costs of administration, service fees and attorneys' fees.  Doc. No. 65-1 ¶¶ 2(s), 9(b).  After all of these payments are made, a maximum of $500,000 from any funds remaining will constitute the *cy pres* fund to be paid to organization(s) agreed to by the parties.  All remaining funds will revert to Defendant.  *Id.* ¶ 9(i).

Considering the predictable claims-rate in this case, it is more than likely that funds will be returned to Defendant after all payments are made.  The proposed settlement administrator in this case, Rust Consulting, Inc., has indicated that the claims-rate in consumer class settlements range from 2% to 20%, depending on a variety of factors, including the amount a claimant will receive, the difficulty of obtaining information required to complete a claim form and even the requirement to submit a claim form.  *See* Tiffany Allen*, Anticipating Claims Filing Rates in Class Action Settlements*, found online at http://www.rustconsulting.com/Legal_Sector_Knowledge_ Sharing/Articles_and_Publications/articleType/ArticleView/articleId/124/Anticipating_Claims_Fi ling_Rates_in_Class_Action_Settlements.aspx (last visited April 19, 2012) ("Allen, *Anticipating Claims*").  This analysis is supported by the claims-rate in *Trombley v. Bank of America Corporation*, Case No. 1:08-cv-456-JD-LM (D.R.I.) ("*Trombley*"), cited in the Memorandum, which is a class action case in which the settlement agreement was substantially the same as the proposed Settlement Agreement in this case.  After preliminary approval and notice in that case,

-27-

the claims-rate was less than 1% of the class.  *See Trombley,* Aff. of Amy Lake, Doc. No. 113-2

(D.R.I. Mar. 22, 2012).[13]

     Based on this range of claims-rates, the low end of the distribution to class members in this

case would be $140,000 and the high end would be $2,800,000.[14]  Even if the high end of this

range is used, it is likely that a substantial portion of the settlement amount will revert to

Defendant, as follows:  ($10,000,000 Settlement Amount) - ($5,000 service fees to named

Plaintiffs) - ($2,500,000 to class counsel) - ($118,875 administrative costs) - ($2,800,000

distribution to class members) - ($500,000 *cy pres* payment) = $4,076,125 reverting to Defendant.

     In light of this analysis, a reasonable concern exists that the stated settlement amount was

negotiated to maximize the amount of fees that could be awarded to Plaintiffs' counsel under a

common fund theory before any distributions were made to their clients (other than the service fee

to the named Plaintiffs), while giving Defendant comfort that it would, in all likelihood, never pay

the full $10,000,000 to settle this case.  Defendant also had an incentive to work with Plaintiffs'

counsel to maximize their possible fee award because the Settlement Agreement will extinguish a

---

[13]  Although the *Trombley* court preliminary approved the proposed settlement of a class action based on a claim of breach of the obligation of good faith and fair dealing with respect to Bank of America's policy regarding when payments on credit card accounts were credited, as of the writing of this Report and Recommendation it had not granted final approval of the settlement pending receipt of notice of the costs of administration, the claims rate and other information. The *Trombley* court also did not approve the proposed preliminary injunction language or the initial short-form notice requested by the parties. It appears that, as in the present case, counsel did not alert the *Trombley* court to the expansive definitions of terms contained in the settlement agreement in the motions and memoranda they filed in support of the request for conditional certification of the class and preliminary approval of the settlement agreement.

[14]  The calculations are as follows: 500,000 putative class members x 1% claims-rate x $28.00 payment = $140,000; 500,000 putative class members x 20% claims-rate x $28.00 payment = $2,800,000.

vast array of claims that might have been brought against Defendant by class members who fail to opt-out of the class.[15]

        B.     *Scope of Releases and Covenants Not to Sue.*

      All members of the settlement class who fail timely to opt-out of the settlement, whether or not they receive any payment, are defined in the Settlement Agreement as "Releasors" who release a wide variety of "Released Claims" "for themselves and *on behalf of* their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors in interest and assigns and any authorized users of their . . . credit card accounts with [FIA Card Services, N.A. and its predecessors and successors]." Doc. No. 65-1 ¶ 2(y)(emphasis added). It is not clear whether this language means that the "on behalf of" releasors are simply agreeing not to bring claims that DeLeon, Mendoza and other class members could have asserted on her, his or its own behalf, or whether the intent is that DeLeon, Mendoza and other class members will release claims that the "on behalf of" releasors could have asserted on their own behalf. Other settlements approved by this Court have made clear that "on behalf of" releasors release only the right to bring claims that they could assert in their capacity as heirs, agents or assigns of class members, not their own claims. *See, e.g., In re PainCare Holdings, Inc. Sec. Litig.*, No. 6:06-cv-362-Orl-28DAB, Doc. No. 143 at 14 (M.D. Fla. May 7, 2008) (class

---

    [15] Defendant Releasees include FIA Card Services, N.A. "and each of its predecessors, successors . . . and assigns; the past, present and future, direct and indirect, parents . . ., subsidiaries, affiliates and associates . . . of any of the above; financial institutions, corporations, trusts, or other entities that may hold or have held any interest in any account or any receivable relating to any account, or any receivables or group of receivables, or any interest in the operation of ownership of [FIA Card Services, N.A. and its predecessors and successors]; and the past, present and future principals, trustees, partners, contractual counterparties . . ., officers, directors, employees, agents, vendors . . ., attorneys, shareholders, advisors, predecessors, successors . . ., assigns, representatives, heirs, executors and administrators of any of the above." Doc. No. 65-1 ¶ 2(l).

members release their own claims and claims of their heirs, agents and assigns *in their capacity as such*).

The released claims in this case include federal and state causes of action, release and waiver of consumer protection statutes, and release of all common law claims.  Doc. No. 65-1 ¶ 2(w).  Courts have generally permitted releases in class actions to include claims not presented "'as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.'" *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1317 (S.D. Fla. 2005) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)).  The parties stretch the concept of "identical factual predicate" in the Settlement Agreement to release not only claims arising from the allegations of the Amended Complaint but also claims arising from facts asserted in the Litigation, which is defined to include "any appeals or requests for leave to appeal therefrom, and any matters asserted in any of the complaints, pleadings, filings, interrogatory responses, or other papers filed or served or consolidated" in the present consolidated case.  Doc. No. 65-1 ¶ 2 (r), (ww).  Neither the Court nor absent class members have notice of facts asserted in discovery or other papers served but not filed.

For these reasons, among others, the Settlement Agreement is not a fair, reasonable and adequate resolution of this case on a class-wide basis.

**VI.     Class Counsel**.

Rule 23(g) provides that a court that certifies a class must appoint class counsel.  In making the appointment, the court must consider the following:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and,

(iv)    the resources that counsel will commit to representing the class [.]

Rather than seeking appointment of specifically identified lawyers, Plaintiffs seek appointment of Morgan & Morgan, P.A. as lead counsel and CPLS, P.A. as class co-counsel. They submitted the Declaration of J. Andrew Meyer and firm resumes for both law firms in support of the motion. Doc. No. 65 at 2; Doc. No. 65-2. Additional affidavits and declarations were submitted in support of the motion for an award of attorney's fees and costs. Doc. Nos. 74 through 74-4.

Because I recommend that a settlement class not be certified, I will not address the issues regarding the proposed class counsel in this Report and Recommendation. It is, however, worthy of note as to factor (iii) above that the Plaintiffs' Motion was not supported by the evidence and legal analysis required to certify a class action. Further, as discussed in more detail below, the revised short-form notice does not comply with the requirements of Rule 23. As to factors (i) and (iv), the Court may wish to review time sheets reflecting the resources provided and the work performed if a class is certified.

**VII.    Adequacy of Notice to the Settlement Class Members**.

    A.    *Notice Required for Rule 23(b)(3) Class.*

Due process and Rule 23(c)(2)(B) require that absent class members receive the "best notice that is practicable under the circumstances," for any class certified under Rule 23(b)(3). Rule 23(c)(2)(B) specifies the content of the required notice, as follows:

> For *(b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

-31-

who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)   that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)   the time and manner for requesting exclusion; and

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

"The standard for adequacy of a settlement notice in a class action is measured by reasonableness.  *See* Fed. R. Civ. P. 23(e).  We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'"  *Faught  v. Am. Home Shield Corp.*, Nos. 10-12496,10-12534, 10-12536, 2011 WL 7118832, at * 4 (11th Cir. Feb. 1, 2012) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977)).

When, as in this case, names of past and present holders of credit cards issued by Defendant and their addresses are readily available to Defendant, Rule 23(c)(2)(B) requires individual notice. Of course, the identity of Persons, as defined in the Settlement Agreement, who had cardholder agreements between April 1, 2005 and October 19, 2006 with yet unknown successors of FIA Card Services, Inc. are not currently available to Defendant.

-32-

B.       *Proposed Revised Short Form Notice*.

The parties' notice plan contemplates that all potential settlement class members will

receive the revised short-form notice through direct mail using their last known address, which

will be checked against the national change-of-address database.  Doc. No. 72 at 16.  The last

paragraph of the short-form notice states:

> You can read the complete settlement notice, file a claim, and obtain
> more information about your rights under the Settlement by visiting
> www._____.com.  You can also obtain this same information,
> including requesting by mail the complete settlement notice and the
> claim form, and filing a claim by mail, by either calling toll-free
> _____ or writing to _____ at P.O. Box _____.

Doc. No. 71-1, Ex. A.

The parties assert that "[s]hort-form notices, like the one presented here, are increasingly

common in consumer class action settlements."  Doc. No. 72 at 18.  While it may be true that use

of short-form notices is increasingly common, it is not true that the short-form notice proposed

here contains the information required by Rule 23(c)(2)(B).

In the 2010 version of the "Judges' Class Action Notice and Claims Process Checklist and

Plain Language Guide" produced by the Federal Judicial Center ("FJC Guide"), one item on the

checklist responds to the questions "Do the notices include the Rule 23 elements?  Even the

summary notice?," as follows:

> Summary notices, whether mailed or published, encourage
> readership, and the FJC illustrative notices show that even summary
> notices can include *all elements* required by Rule 23(c)(2)(B).   But
> an overly short summary notice, one that *mostly points interested
> readers to a detailed notice*, can result in most class members (who
> read only the summary notice) being unaware of basic rights.

FJC Guide at 5 (emphasis added), found online at http://www.fjc.gov/public/pdf.nsf/lookup/

-33-

NotCheck.pdf/$file/NotCheck.pdf (last visited April 19, 2012), *cited in* Doc. No. 72 at 20 & n. 16.[16]

The revised proposed short-form notice does not include six of the required elements:  (1) the complete definition of the class certified, Rule 23(c)(2)(B)(ii)[17]; (2) that the class claims are for breach of the Plaintiffs' common consumer Cardholder Agreement, Rule 23(c)(2)(B)(iii); (3) that a class member may appear through an attorney, Rule 23(c)(2)(B)(iv);  (4) that the Court will exclude from the class any member who requests exclusion, Rule 23(c)(2)(B)(v); (5) the manner for requesting exclusion, Rule 23(c)(2)(B)(vi); and, (6) the binding effect of the final judgment on class members, Rule 23(c)(2)(B)(vii).

As discussed in more detail *infra*, the absence of a clear explanation of the manner of opting out also implicates due process.

> [W]e hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Sending a "fully descriptive notice" to each class member "with an explanation of the right to 'opt out' satisfies due process."  *Id.*

---

[16] The parties submitted a copy of the short-form notice mailed to 13,000,000 class members, approximately 96% of the identifiable settlement class, in the *Overdraft Litigation*. *See In re: Checking Account Overdraft Litig.*, No. 09-MD-02036-JLK, 2011 WL 5873389, at * 4 (S.D. Fla. Nov. 22, 2011).  Doc. No. 71-1, Ex. D. That short-form notice contains all elements required by Rule 23(c)(2)(B) except the manner for requesting exclusion.

[17] The opening paragraph of the proposed revised short-form notice does not include all of the elements of the class that the parties seek to have the Court certify.

-34-

Omission of a fully descriptive explanation of the binding effect of the class judgment will dissuade readers from requesting a detailed notice and lull them into taking no action, unaware of their basic rights.

For these reasons, the proposed revised short-form is not the best notice practicable under the circumstances.

C.    *Proposed Revised Long-Form Notice.*

The proposed revised long-form notice contains each of the seven requirements specified in Rule 23(c)(2)(B). Doc. No. 71-1, Ex. B.  However, under the proposed Notice Plan, only class members whose interest to inquire further was piqued sufficiently by the short-form notice to cause them to look for additional information on the Settlement Website, *see* Doc. No. 65-1 ¶ 2(gg), request it by email or by mail will receive the proposed revised long-form notice and the accompanying Appendix A.  Doc. No. 71-1, Ex. B.

Even those individuals and entities who receive the proposed revised long-form notice and Appendix A will not be fully informed, however, because these documents use terms defined in the Settlement Agreement without disclosing the definition of those terms.  Instead, the proposed revised long-form notice and Appendix A instruct the reader as follows:  "For a full statement of your rights and options as a member of the Settlement Class, you should refer to the complete Settlement Agreement.  The terms of the Settlement Agreement trump in case of any discrepancies between this Settlement Notice and the Settlement Agreement."  Doc. No. 71-1, Ex. B.  The proposed revised long-form notice also does not explain how a class member can obtain or review the Settlement Agreement.  Instead, the final sentence states, "You may contact the Class Counsel listed above for additional information."  *Id.*  Merely advising a class member that he, she or it can

wade through the dense prose, legalisms and defined terms contained in a separate appendix is not sufficient notice of the extraordinary scope of released and waived claims.

Additionally, the Advisory Committee notes to the 2003 Amendments to Rule 23(h)(1) indicate that "it would be important to require the filing of at least the initial motion [for an award of attorneys' fees] in time for inclusion of information about the motion in the notice to the class about the proposed settlement . . . ."  Counsel for Plaintiffs have filed their initial motion for attorney's fees, Doc. No. 74, but the proposed revised long-form notice does not refer to the motion, and there is no indication that it will be made available for review by putative class members.  Similarly, the proposed revised long-form notice does not reveal that DeLeon and Mendoza may receive a service fee of up to $2,500.00 each, which information a putative class member may consider important in deciding whether either of them can adequately represent the interests of each putative class member.

For these reasons, the proposed revised long-form notice is not the best notice practicable under the circumstances.

## VIII.   The Procedure for Making a Claim.

Several factors assure that few settlement class members will submit a claim form to obtain, at most, a $28.00 cash payment.  As discussed above, one of the factors is that consumer class settlements typically do not attract takers.  Second, a maximum $28.00 payment is not likely to induce class members to submit a claim.  As Rust Consulting has observed, "The value, or perceived value, of settlement benefits to class members is another key driver of claims-filing rates.  A class member must feel the benefits being offered are worth the time and effort required to file a claim." Allen, *Anticipating Claims* at "Benefit Type and Value."

Third, and most importantly, the proposed revised claim form requires the class member to provide specific factual details, under the penalty of perjury, regarding the credit card account, the method of payment used and the late payment fee, finance change, or other fee or penalty assessed on a credit card payment made between April 1, 2005 and October 19, 2006.  Doc. No. 71-1, Ex. C.[18]  Many class members likely will not recall the circumstances that triggered assessment of a late payment fee 5 ½ to 7 years ago.  If a class member can recall that a late fee was imposed on a timely payment, it is unlikely that he or she will have retained or have access to the credit card statements needed to complete a claim form.

For precisely that reason, the FJC Guide, in response to the question, "Are the claim form questions reasonable, and are the proofs sought readily available to the class member?," cautions as follows:

> Watch for situations where class members are required to produce documents or proof that they are unlikely to have access to or to have retained.  A low claims rate resulting from such unreasonable requirements may mean your eventual fairness decision will overstate the value of the settlement to the class and give plaintiff attorneys credit for a greater class benefit than actually achieved.

FJC Guide at 6.

In view of the meager payment that filing a claim may produce, and the likelihood that the required proof is not readily available to putative class members, the requirements to file a claim likely will attract few takers.  *See In re Checking Account Overdraft Litig.*, 2011 WL 5873389, at *15 n.14 (citing *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) (finding that

---

[18]  In the Memorandum, the parties state that they are willing to remove the penalty of perjury language and replace it with a statement that the claim is based on a good faith belief that the class member is entitled to payment.  Doc. No. 72 at 24.  Because they did not remove the penalty of perjury language from the proposed revised claim form, it appears that they will require a Court order to make the change they indicate that they are "willing" to make.

"'claims made' settlements regularly yield response rates of 10% or less.'").  This raises the question of why a claims made process is actually necessary.

Defendant presented evidence that BAC maintains databases that enabled it to identify approximately 500,000 cardholders who were assessed late fees on timely payments made between April 5, 2005 and October 19, 2006.  The FJC Guide, in response to the question "Is a claims process actually necessary?" states, as follows:

> In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members.  When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.

FJC Guide at 6.  So, for example, in implementing the settlement in the *Overdraft Litigation*, BAC used its customer databases to identify class members who did not have to submit a claim to receive payment.  *In re Checking Account Overdraft Litig.*, 2011 WL 5873389, at * 5 ("Of particular note, Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement . . . . BofA and the Settlement Administrator will distribute the Net Settlement Fund to all identifiable Settlement Class Members who do not opt out of the Settlement and who are entitled to a distribution under the formula provided in the Settlement . . . .").

In view of the factors that will surely result in a low claims rate here, a settlement that does not require class members to submit a claim form to receive payment would be preferable in this case.  Nevertheless, it is not the Court's obligation or prerogative to modify terms of the proposed settlement; rather, the Court's function in ruling on the motion is to preliminarily approve or reject the proposed settlement as a whole.  *See Evans v. Jeff D.*, 475 U.S. 717, 726 (1986) ("[T]he

power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they had not agreed.").

For these reasons, the proposed claim form procedure is not reasonable.

## IX.    The Procedure for Exclusion.

As noted above, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co.*, 472 U.S. at 812. Rule 23 does not contain any specific requirements for absent class members to exercise the right to opt out of a class settlement. Mailing a simple written request to be excluded from the class to a designated address should suffice.

But the Settlement Agreement requires far more than a simple written request for an absent class member to opt out. A class member who desires to opt out must not only (1) compose a letter that conforms precisely to the specific requirements of the Settlement Agreement, (2) mail it the proper address and (3) submit it within the required time; he, she or it must also advise "any and all joint account holders" that they will be excluded from the class and affirm that this was done in the letter, as provided in subsection 6(b) of the Settlement Agreement:

Exclusion requests must: (i) include the full name, current mailing address and e-mail address (if any) of the Person(s) requesting exclusion; (ii) be personally signed by the member of the Settlement Class who seeks to opt out; (iii) list the account number(s) for the credit card account on which a late fee or other charges were assessed in connection with Qualifying Payments; and (iv) include the following statement:  "I/we request to be excluded from the class settlement in *DeLeon et al v. Bank of America, N.A. (USA) a/k/a FIA Card Services, N.A.*, Case No. 6:09-cv-JA-KRS."  In addition, if there are joint account holders for any of the account(s) included in respect of subsection 6(b)(iii) above, the exclusion request must also include an affirmation that the Person requesting exclusion has advised any and all joint account holders that they will be excluded from the settlement class as a result of the request for exclusion. *No request for exclusion will be valid*

-39-

> *unless all of the information described above is included.*  No member of the
> Settlement Class may opt out through an actual or purported agent or attorney.  No
> opt out request may be made on behalf of a group of persons. Settlement Class
> Counsel, the Settlement Administrator, and Defendant shall use such opt-out
> information only for the purposes of determining and/or establishing whether a
> Person has timely and properly opted out of the Settlement Class.

Doc. No. 65-1 ¶ 6(b) (emphasis added).

The parties do not discuss in their Memorandum why such a detailed request for exclusion is necessary.  Defendant has access to BAC's databases that contain the account numbers on which late payment fees were assessed, from which it should be able to identify an individual or entity that wishes to opt-out by information readily available to the class member, such as name, address and social security or tax identification number.  On the other hand, an absent class member who desires to be excluded may not have access to old records showing the account number on which a late payment or other fee was assessed between April 1, 2005 and October 19, 2006.  Even if the absent class member retained old account statements, he, she or it has little incentive to scour them to find the required information.  Further, the affirmative obligation to contact joint account holders – who may be deceased or divorced spouses, deceased or estranged relatives, or adult children who no longer reside with the absent class member requesting exclusion – is an extraordinary imposition on an absent class member that could dissuade an absent class member from exercising his, her or its right to opt out.

Faced with satisfying all of the burdensome requirements that the Settlement Agreement imposes to opt out, an absent class member more than likely will do nothing.  The inevitable result of imposing these requirements is that absent class members who do not opt out of the class will be bound by the class judgment and forfeit potentially valuable rights by virtue of the release and waiver provisions in the Settlement Agreement.

**X.      Preliminary Approval Order**.

The Settlement Agreement provides for entry of a preliminary approval order and final

judgment and order of dismissal with prejudice in the form submitted by the parties "without

material modification by the Court."  Doc. No. 65-1 ¶ 17.  The parties submitted their proposed

Order Preliminarily Approving Class Action Settlement and Related Matters ("Preliminary

Approval Order") in support of the Plaintiff's Motion. Doc. No. 65-1, Ex. C.  As with the other

documents submitted by the parties, the Preliminary Approval Order incorporates the definition of

terms contained in the Settlement Agreement without providing those definitions in the order

itself.  *See id.* n.1.  Thus, the scope of the Preliminary Approval Order is more expansive than it

appears on its face, and it imposes restrictions on more individuals and entities than it appears to

affect on its face.

In the prior sections of this Report and Recommendation, I addressed deficiencies in

several aspects of the proposed settlement that the Preliminary Approval Order adopts and

approves.  Two provisions not previously addressed appear for the first time in the Preliminary

Approval Order.  Both of these provisions would preliminarily enjoin settlement class members

from taking certain actions even before they receive any notice about the settlement and, more

than likely, before they are made aware of the pendency of this putative class action.

The first sentence of paragraph 23 of the Preliminary Approval Order states as follows:

> All **Settlement Class Members**, and any **Person** actually or
> purportedly acting on behalf of any **Settlement Class Member(s)**,
> are stayed and enjoined from commencing, instituting, continuing,
> pursuing, maintaining, prosecuting or enforcing any **Released
> Claim** (including, without limitation, in any individual, mass or
> putative class, representative or other action or proceedings),
> directly or indirectly, in any judicial, administrative, arbitral, or
> other forum until **Final Settlement Approval** or termination of the

**Settlement Agreement**, whichever occurs earlier; provided, that this stay and injunction shall not apply to individual claims of any member of the **Settlement Class** who has timely and properly opted out from the **Settlement Class** as permitted by the Court.

*Id.* ¶ 23 (defined terms reflected in **bold** typeface).

Paragraph 30 of the Preliminary Approval Order states as follows:

In the event that any of the provisions of this Preliminary Approval Order is [*sic*] asserted by any **Defendant Releasee** as a defense in whole or in part to any **Claim**, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action, or other proceeding brought by one of more **Settlement Class Members** or any **Person** actually or purportedly acting on behalf of any such **Settlement Class Members(s)**, that suit, action or other proceeding shall be immediately stayed and enjoined as to such **Settlement Class Member(s)** until the Court has entered an order or judgment finally determining any issues relating to such defense or assertion and <u>no further judicial review of such order or judgment is possible</u>. Solely for purposes of such suit, action, or other proceeding, to the fullest extent they may effectively do so under applicable law, the **Parties** irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum.

*Id.* ¶ 30 (defined terms in **bold** typeface; emphasis added).

Under these provisions, the Preliminary Approval Order would stay and enjoin not only absent Settlement Class Members but also all Persons (individuals and entities) from continuing, pursuing, maintaining, or enforcing Released Claims, as defined in the Settlement Agreement, against Defendant Releasees, as defined in the Settlement Agreement, before a settlement class has been finally certified.

In the Memorandum, the parties state that they are "unaware of any actions in which such an injunction will be used."  Doc. No. 72 at 45.  This representation ignores the scope of the class for which certification is sought in *Trombley*.  While counsel represent that "liability in *Trombley* begins where the *Mendoza* Settlement Class period ends," Doc. No. 72 at 16 n.6, review of the *Trombley* case reveals that the class period in that case (August 1, 2006 through February 22, 2010) overlaps the class period in this case (April 1, 2005 through October 19, 2006).  *See Trombley v. Bank of Am. Corp.*, Civil No. 08-cv-456-JD, 2011 WL 3273930, at *1 (D.R.I. July 29, 2011).  Indeed, counsel for Plaintiffs in *Trombley* expressed concern that Defendant would settle the present case, thus rendering the *Trombley* case moot.  *See Trombley*, 2010 WL 4878992, at * 1 (D.R.I. Dec. 1, 2010).  The presiding district judge in *Trombley* also appears to have recognized the overlap of the cases in his order denying the request for entry of a preliminary injunction in that case, noting that "[t]he parties appear to intend to block a separate class action based on the same claims." *Trombley*, 2011 WL 3740488, at *5 (D.R.I. Aug. 24, 2011).

Even if the injunction in this case would not enjoin some or all of the putative class members in *Trombley*, in view of the passage of 5 ½ to 7 years since Qualifying Payments (as defined) must have been made, the possibility that an absent class member will file an action that would interfere with administration of the proposed settlement in this case is too remote to justify the requested injunctive relief.

## XI.    CAFA.

CAFA requires class action defendants to notify federal and state officials of a proposed settlement agreement within ten days after a proposed settlement is filed in court.  28 U.S.C. § 1715(a)-(b).  Defendant filed a CAFA Notice Letter, dated June 8, 2011, in which counsel for

Defendant notified the Office of the Comptroller of the Currency, the Federal Reserve Bank of Richmond, the Attorney General of the United States and the State Attorneys General of the information required by CAFA.  *See* Doc. No. 71-1 at 24. It appears, therefore, that Defendant has satisfied the notice requirements of § 1715.

## XII.   RECOMMENDATION.

For the reasons set forth above, I **respectfully recommend** that the Plaintiffs' Motion for Preliminary Approval of Settlement Agreement and for Certification of Settlement Class (Doc. No. 65), the Parties' Joint Renewed Motion for Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class (Doc. No. 71), and Plaintiffs' Preliminary Motion for Award of Attorneys' Fees and Costs (Doc. No. 74) be **DENIED.**  Because the parties have already been given an opportunity to file a revised motion for class certification, and have failed to establish that the proposed settlement class can be certified consistently with Rule 23, I further **recommend** that the Court **DISMISS** the class action allegations of the Amended Complaint and enter a scheduling order for this case to proceed to trial solely on the breach of contract claims asserted by Plaintiffs DeLeon and Mendoza individually.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** in Orlando, Florida on April 20,  2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE