# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HEYDEE DE LEON, and
JENNIFER MENDOZA, on behalf of
themselves and others similarly
situated,

        Plaintiffs,

                                              Case No. 6:09-cv-1251-Orl-28KRS

-vs-

BANK OF AMERICA, N.A. (USA) n/k/a
FIA CARD SERVICES, N.A.,

        Defendant.

## Submission in Response to Information Requested in the Court's January 2, 2013 Order and Notice of Hearing

      Heydee DeLeon and Jennifer Mendoza (collectively, "Plaintiffs") submit the following responses to the Court's Request for additional information in the Order and Notice of Hearing, dated January 2, 2013.

1. The Court previously indicated that it was not clear whether the settlement agreement included individuals who had cardholder agreements with entities other than Bank of America, N.A. (USA) now known as FIA Card Services, N.A. The concern arises from failure of the parties to explain whether putative class members include individuals who had cardholder agreements with MBNA America Bank, N.A. before it merged with Bank of America and before it was renamed FIA Card Services, N.A.[1] Although the definition of "FIA" has been narrowed to Bank of America, N.A. (USA) and FIA Card Services, N.A. in the amended settlement agreement, the parties still have not addressed whether putative class members include individuals who had cardholder agreements with MBNA America Bank, N.A. (or any other financial institutions other than Bank of America, N.A. (USA) n/k/a FIA Card Services, N.A.). Counsel shall address this question at the hearing.

---

[1] *See* Bank of America 10K for year ending December 31, 2006, found online at http://www.secinfo.com/d14D5a.u191r.htm (last visited January 2, 2013).

Response:  The putative class members do not include individuals who had cardholder agreements with MBNA America Bank, N.A., or any other financial institution; all putative class members had cardholder agreements only with Bank of America, N.A. (USA) n/k/a FIA Card Services, N.A.

2. To the extent that counsel contend that putative class members include natural persons who held consumer credit cards issued by MBNA America Bank N.A. (or any other financial institutions other than Bank of America, N.A. (USA) n/k/a FIA Card Services, N.A.) that were in effect during the proposed Class Period, it is **ORDERED** that, on or before January 14, 2013, the parties shall file each non-identical form of consumer cardholder agreement issued by such other financial institutions, including MBNA America Bank N.A., in effect during the proposed Class Period.

Response:  As stated above, no putative class members held credit cards issued by MBNA America Bank N.A. or any other financial institution other than the Defendant, therefore there are no non-identical forms of consumer cardholder agreements issued by MBNA America Bank N.A. or other financial institutions to submit.

3. Counsel shall advise the Court at the hearing of the choice of law provisions in the cardholder agreements entered into by putative class members in effect during the Class Period and the extent to which the various governing state and federal laws regarding breach of contract differ in terms of elements of proof or available defenses, including but not limited to the voluntary payment defense.

Response:  The choice of law provisions in the cardholder agreements that were effective for the class period up through June 2006 provided for the application of Arizona and federal law.  (Exs. 1A-1K.)  In June 2006, choice of law provisions in the cardholder agreements were updated, providing for the application of Delaware and federal law.  (Exs. 1I-1K.)

There are no conflicts between Arizona and Delaware breach of contract law.  Under Arizona law, the elements for a breach of contract are (1) existence of a contract; (2) breach of the contract; and (3) resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975); *see also* Report and Recommendation, Doc. 75, at 23.  Similarly, under Delaware law, the elements for a breach of contract are "(1) a contractual obligation; (2) a breach of that obligation by the

defendant; and (3) resulting damage to the plaintiffs." *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011)

In addition, both states recognize the voluntary payment defense. *See Brown & Bain, P.A., v. O'Quinn* , No. 03-0923, 2006 U.S. Dist. LEXIS 7016, *19 (D. Ariz. Feb. 22, 2006) (noting that the voluntary payment doctrine is an affirmative defense to a breach of contract claim and bars recovery for money "voluntarily paid with full knowledge of all the facts, and without fraud, duress or extortion.") (citing Arizona law); *Nieves v. All Star Title, Inc.*, No. N10C-3-191, 2010 Del. Super. LEXIS 319, at *21 (Del. Super. Ct. July 27, 2010) (same, applying Delaware law).

4. The Court previously found that the named Plaintiffs' qualifications to serve as class representatives were limited to one claim for breach of their common cardholder agreement. Under the Settlement Class definition in the amended settlement agreement, the named Plaintiffs propose to serve as representatives of a class that includes individuals who made payments by telephone and through online banking. The parties have not shown that the named Plaintiffs had pay-by-phone and online banking agreements that are the same (or contain the same material terms) as other putative members of the Settlement Class or that these agreements had the same credit on receipt provision as contained in the named Plaintiffs' common cardholder agreements. Accordingly, it is **ORDERED** that, on or before January 14, 2013, the parties shall file copies of the pay-by-phone and online banking agreements entered into by the named Plaintiffs in effect at any time during the Class Period and each nonidentical form of pay-by-phone and online banking agreement entered into by putative members of the Settlement Class in effect at any time during the proposed Class Period.

Response: Payments made by phone are not governed by a separate agreement, but are part of the cardholder agreement, governed by Sections 7.20 to 7.20.5 in these agreements. (Exs. 1A-1K.) Copies of the online banking agreements in effect during the Class Period are attached as Exhibits 2A-2B; other versions are identical. Both Plaintiffs entered into the version with an effective date of September 24, 2005. (Ex. 2B.) Plaintiffs believe that to the extent there is conflict among the terms of the cardholder agreement and online banking agreement, the online banking agreement is subject to the cardholder agreement; accordingly, payments made by any method should have been credited upon receipt. Further, to the extent there is ambiguity with

regard to whether online payments were required to be credited upon receipt, the settlement resolves this legal issue in favor of consumers and allows them to participate in the settlement.

5. The Court previously observed that the named Plaintiffs' cardholder agreements were consumer agreements because, among other things, the cardholder agreements prohibited using the credit cards for business purposes. The definition of "Consumer Credit Card" in the amended settlement agreement does not limit credit cards to those that prohibit use of the card for business purposes. Counsel should discuss at the hearing whether any cardholder agreements for Consumer Credit Cards, as defined in the amended settlement agreement, permitted use of the credit card for business purposes and, if so, whether the named Plaintiffs' have standing to represent putative class members who held Consumer Credit Cards that could be used for business purposes.

Response: Section 2.21 of all versions of the consumer credit card cardholder agreements in effect during the Class period prohibit cardholders from using their credit cards for business purposes. (Exs. 1A-1K.) In addition, whether a class member used a "Consumer Credit Card" for business purposes would not affect that class member's ability to recover in this matter. Thus, whether the credit card is used for a business purpose or not, named Plaintiffs have standing to represent putative class members who held cards that may have been used for business purposes, in the event they made a "Qualifying Payment," because they are entitled to relief under the amended settlement agreement.

6. During the hearing, counsel should cite evidence in the record (other than hearsay statements in the named Plaintiffs' affidavits) that establish that the maximum late fee for payments in person, online or by phone during the Class Period was $39.00, that Defendant had a common policy of not crediting payments made in person, online or by phone on the day made during the Class Period, and that the "demographics of the class consist largely of indebted individuals who made minimum payments to their credit card accounts, shortly before the due date . . . ." *See* Doc. No. 97 at 11, 14, 43.

Response: Evidence in the record establishing that the maximum late fee during the Class Period was $39 is found in the cardholder statements of the named plaintiffs as well as the change-in-terms notices the named Plaintiffs received, which set out various fees associated with consumer credit cards then in effect, including the range of late fees. (Ex. 5B at 5, Section 13.)

In addition, Plaintiffs learned information regarding Defendant's common policy through discovery, including that Defendant had a policy of crediting payments on the day received only if those payments met certain requirements. For example, payments made at bank branches had to be received before a certain cut-off time in order to receive same day credit, otherwise the payment would be credited the next business day. For example, exhibit 4 is a receipt one of the named Plaintiffs received when she made her in-person payment at a Bank of America branch; it provides that "Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are deemed and considered to be received as of the next business day." (Ex. 4)  Online payments and phone payments similarly had cut-off times for payments to receive same-day credit. Section III.B of the online agreements provides that Bank of America will process and credit payments made to a Bank of America credit card "effective the same business day, provided the payment is scheduled prior to the 5:00 p.m. Eastern time cut-off." (Exs. 2B; 2A (providing for a 2:00 p.m. PT cut-off).)  Section 7.20.1 of the consumer credit card agreements provides that payments made by phone "will occur on the date you requested." (Exs. 1A-1K.)  And Plaintiffs' monthly billing statements provided that phone payments "are credited as of the date you request, so long as your request is made by 5 pm ET." (Exs. 5A at 4, 5B at 5.)  Plaintiffs contend, and the Bank disputes, that the Bank's common policies detailed above all constitute breaches of the "credit upon receipt" provision of the cardholder agreements.

The Court has also asked for evidence in the record that the class consists largely of indebted individuals who made minimum payments to their credit card accounts, shortly before the due date. Indeed, one of the reasons an individual who made a timely payment was assessed a late fee, could be that the cardholder's payment, while timely, was not sufficient to meet the minimum payment amount, thereby incurring a late fee.

7. During the hearing, counsel should advise the Court of the amount of money likely to be returned to Defendant in light of the predictive claims rate in consumer class action settlements and the claims rate in the *Trombley* case.

<u>Response:</u>  As requested, counsel will be prepared to discuss this issue during the hearing.

8. It appears that under the amended settlement agreement, class members will release all claims related to late fees allegedly improperly assessed by any Defendant Releasees. To assess the fairness of the amended settlement agreement it is, therefore, necessary to identify Defendant Releasees who have, or may have had, credit card agreements with putative class members. Accordingly, it is **ORDERED** that counsel must file, on or before January 14, 2013, the identity of each Defendant Releasee who at any time through December 31, 2012 issued Consumer Credit Cards, as those terms are defined in the amended settlement agreement.

<u>Response:</u>  The release in the amended settlement agreement is limited to the Class Period, April 1, 2005 through October 19, 2006.  (*See* Amended Settlement Agreement, § 2 Definitions (v) (Released Claims), (t) (Qualifying Payment), and (u) (Qualifying Period.)  During that time period, the only Defendant Releasees who issued Consumer Credit Cards are FIA Card Services, N.A. and its predecessor Bank of America, N.A. (USA).

9. Counsel should address at the hearing whether they propose to include in a Preliminary Approval Order any provision staying and enjoining ongoing cases and, if so, it is **ORDERED** that, on or before January 14, 2013, counsel shall file a list of all such cases as of January 1, 2013, of which the parties are aware, whether or not service of process has been perfected.

<u>Response:</u>  The parties are unaware of any such actions and are willing to forego the request that the Preliminary Approval Order stay and enjoin any ongoing cases.

10. Counsel should be prepared to address whether an amended CAFA notice is required to state the changes made in the amended settlement agreement and, if so, it is **ORDERED** that, on or before January 14, 2013, counsel shall file a copy of the amended CAFA notice.

<u>Response:</u>  An amended CAFA notice was mailed on October 5, 2012.  A copy of the notice, a letter confirming receipt from the Office of the Comptroller of the Currency, and the mailing receipts are attached here to as Exhibit 3.

11. Counsel should address at the hearing whether this Court retains subject-matter jurisdiction over the claims of the named Plaintiffs, individually, if settlement class certification is denied, *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n. 12 (11th

6

Cir. 2009), and, if not, whether the Court has the authority to remand the cases to state court. *See generally* 2 *Newberg on Class Actions* § 6:18 (5th ed.)(updated November 2012).

<u>Response</u>:  In the event that settlement class certification is denied, this Court will retain jurisdiction over the Named Plaintiffs' claims, as jurisdictional facts are assessed at the time of removal and post-removal events do not divest the court of subject matter jurisdiction.  In addition, denial of settlement class certification does not foreclose the possibility that plaintiffs may obtain class certification in the future.  Counsel will be prepared to address this issue further during the hearing.

Dated: January 14, 2013

Respectfully submitted,

/s/ J. Andrew Meyer
J. Andrew Meyer
Florida Bar No. 0056766
John Yanchunis, Esquire
Florida Bar No. 0324681
William Peerce Howard, Esq.
Florida Bar No. 103330
Tamra Givens, Esq.
Florida Bar No. 657638
**MORGAN & MORGAN, P.A.**
201 N. Franklin St., 7th Floor
Tampa, FL 33602-5157
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: ameyer@forthepeople.com
whoward@forthepeople.com
tgivens@forthepeople.com

Scott Wm. Weinstein, Esq.
Florida Bar No. 563080
**MORGAN & MORGAN, P.A.**
12800 University Drive, Suite 600
Fort Myers, FL 33907-5337
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email: sweinstein@forthepeople.com

                                                    Tee Persad, Esq.
                                                    Florida Bar No. 0045594
                                                    Alberto E. Lugo-Janer, Esq
                                                    Florida Bar No. 0972592
                                                    Samuel A. Walker, Esq.
                                                    *Admitted Pro Hac Vice*
                                                    **CPLS, P.A.**
                                                    Attorneys & Counselors at law
                                                    201 E. Pine Street, Ste. 445
                                                    Orlando, FL 32801
                                                    Telephone: (407) 647-7887
                                                    Facsimile: (407) 647-5396
                                                    Email: attorneypersad@cplspa.com
                                                    Alugo-janer@cplspa.com
                                                    swalker@cplspa.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 14th day of January, 2013, the foregoing **Submission in Response to Information Requested in the Court's January 2, 2013 Order and Notice of Hearing** was served by the Court's CM/ECF System and a Notice of this filing will be sent by email to the attorneys listed below by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                                  /s/ J. Andrew Meyer