# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HEYDEE DE LEON and JENNIFER MENDOZA,**

                              **Plaintiffs,**

**-vs-**                                                        **Case No.  6:09-cv-1251-Orl-28KRS**

**BANK OF AMERICA, N.A. (USA), n/k/a FIA CARD SERVICES, N.A.,**

                              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration after oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF AMENDED SETTLEMENT AGREEMENT AND FOR CERTIFICATION OF THE SETTLEMENT CLASS (Doc. No. 96)** |
| **FILED:** | **September 25, 2012** |

## I.      PROCEDURAL HISTORY.

The parties and their counsel seek certification of a settlement class to be represented by two central Florida residents, Heydee DeLeon and Jennifer Mendoza.  Plaintiffs DeLeon and Mendoza each had a Visa® consumer credit card account under a consumer cardholder agreement with Bank of America N.A. (USA), and its successor-in-interest, FIA Card Services, N.A.

("Defendant"). Plaintiffs each made at least the minimum payment due on the due date (June 18, 2005, for DeLeon and July 2, 2005, for Mendoza) at a Bank of America branch office in Orange County, Florida.  Each Plaintiff was charged a late fee ($39.00 for DeLeon and $35.00 for Mendoza) because her payment was not credited on the day it was received.  Each alleges that the failure to credit her payment on the day it was received breached the "credit upon receipt" provision in her cardholder agreements.

The *DeLeon* and *Mendoza* cases began more than six years ago when Morgan & Morgan, P.A., filed complaints in the wrong state court against the wrong defendant.   On June 5, 2009, after the cases were transferred to the Circuit Court in and for the Ninth Judicial Circuit, CPLS, P.A., filed competing amended class action complaints seeking certification of the same class, with DeLeon proposed as the class representative in one of the complaints and Mendoza proposed as the class representative in the other complaint, then moved to consolidate the cases.

 Defendant removed both cases to this Court.  This Court dismissed all of the causes of action asserted in the *DeLeon* and *Mendoza* class action complaints except the breach of contract claim.  In August 2009, on joint stipulation of the parties, this Court consolidated the two cases.  Thereafter, new attorneys with Morgan & Morgan, P.A., appeared as counsel for DeLeon and Mendoza.  Lawyers from CPLS, P.A., continued as co-counsel, but the record does not reflect that they were actively involved in the litigation after Morgan & Morgan, P.A., again entered the case.

On June 20, 2011, after a lengthy stay of the case, J. Andrew Meyer, Esq., an attorney with Morgan & Morgan, P.A., filed the first motion for certification of a settlement class.  Doc. No. 65.  The only evidence in support of the motion was Attorney Meyer's declaration seeking appointment of class counsel and a settlement administrator.  Doc. No. 65-2.  The Court denied

the motion without prejudice and reviewed for counsel and the parties many problems with the proposed settlement agreement and class certification motion.  Doc. No. 68.

On October 14, 2011, the parties filed a joint motion for certification of a settlement class, this time supported by evidence.  Doc. No. 71.  However, they did not address all of the issues noted by the Court in its earlier order.  Indeed, the Report and Recommendation on the renewed motion consists of a 44-page discussion of the problems with the Settlement Agreement and proposed notices.  Doc. No. 75. The Court adopted that Report and Recommendation and gave the parties leave to submit a motion for approval of an amended settlement agreement that addressed all of the flaws previously identified in the Settlement Agreement.  Doc. No. 86.

The parties then negotiated an Amended Settlement Agreement.  Doc. No. 96-1.  I issued an Order and Notice of Hearing that required submission of additional information.  Doc. No. 99. Plaintiffs submitted additional evidence and briefing in response to that order.  Doc. No. 100 with exhibits 100-1 through 100-17. I also held a hearing on January 16, 2013, during which counsel for the parties made various stipulations that are reflected in the transcript of the hearing.  Doc. No. 102.  At my request, Defendant also submitted a supplemental declaration of Jacques Flachier, Doc. No. 104-1.

While the Amended Settlement Agreement addressed many of the flaws previously identified by the Court, the parties have stipulated to further changes in the document.  Even if those changes were accepted, and a Second Amended Settlement Agreement and notices were prepared, problems remain.   The Court is presented with a proposed Amended Settlement Agreement that is "too little" because more changes must be made to it, and "too late" because the

federal litigation is already more than three years old.[1]   Because the case is still not in a posture to

warrant preliminary certification of a settlement class, I recommend that the Court not give the

parties a further opportunity to prepare yet another round of class certification papers and, instead,

set the claims of DeLeon and Mendoza for trial.

## II.      ISSUES PREVIOUSLY IDENTIFIED.

The Court is familiar with the procedural setting of the case and the law regarding class

certification.  Accordingly, I will address only the remaining issues that the Court told the parties

must be resolved in order for a settlement class to be preliminarily certified.

A.      *Standing.*

### 1.      Definition of "FIA."

Plaintiffs DeLeon and Mendoza seek certification of a breach of contract settlement class.

As the Court previously found, because Plaintiffs entered into cardholder agreements with Bank of

America, N.A. (USA), they have standing only to enforce cardholder agreements that putative

class members had with Bank of America, N.A. (USA).   *See, e.g.,* Doc. No. 75 at 16-17; *see also*

Doc. No. 100-1 through 100-11 (copies of the Bank of America, N.A. (USA) cardholder

agreements effective during the class period, each of which contains the same "credit on receipt"

provision).[2]  Accordingly, the proposed Settlement Class must be limited to individuals who had

cardholder agreements with Bank of America, N.A. (USA).

---

[1]  The Court had to spend excessive time unraveling the meaning of provisions in the
Settlement Agreement and researching and writing the legal analysis not provided by the parties.
Thus, to the extent that the litigation was prolonged due to the time taken to rule on motions, that
delay is directly attributable to the problems presented in the parties' filings.

[2]  Throughout this Report and Recommendation, citations are to the pagination assigned
when the document was electronically filed, not to the internal pagination.

In the Amended Settlement Agreement, however, the parties define the proposed Settlement Class to include individuals who had cardholder agreements with "FIA," which is defined to mean FIA Card Services, N.A. *and* its predecessor Bank of America, N.A. (USA). Doc. No. 96-1 ¶ 2(n)(emphasis added).  During the proposed class period FIA Card Services, N.A. and Bank of America, N.A. (USA) were separate entities.  Doc. No. 102 at 10.  The named Plaintiffs do not have standing to represent individuals who had cardholder agreements with FIA Card Services, N.A. during the proposed class period.[3]

### 2.      Online Banking and Pay-By-Phone Agreements.

The proposed settlement class includes natural persons who, during the class period, made payments in person at a Bank of America banking center, by phone using Bank of America's pay-by-phone service, or electronically using Bank of America's online banking services.  Doc. No. 96-1 ¶ 2(z).  Both of the named Plaintiffs made the payments at issue in their respective complaints in person, not online or by phone.  Accordingly, the Court questioned whether there were separate agreements governing payments made online and by phone.

In response to the Order and Notice of Hearing, the parties filed for the first time a copy of an  "Online Banking Services, Transfers Outside Bank of America, and Pay by Phone Service Agreement," effective April 9, 2005 (Doc. No. 100-12) and a copy of an "Online Banking and Transfers Outside Bank of America Service Agreement and Electronic Disclosure" effective

---

[3]  Counsel told the Court for the first time during the hearing on the present motion that only Bank of America, N.A. (USA) issued cardholder agreements in effect during the proposed class period that contained the same "credit on receipt" provision found in the named Plaintiffs' cardholder agreement.  Doc. No. 102 at 11. This concession further illustrates the confusion created by referring to the Defendant as "FIA" rather than as "Bank of America, N.A. (USA), and its successor-in-interest, FIA Card Services, N.A."

September 24, 2005 (Doc. No. 100-13).  Counsel represent that the named Plaintiffs entered into the agreement that was effective September 24, 2005.  Doc. No. 100 at 3.

Both of these agreements are between the Bank of America customer and Bank of America, N.A., which is a separate entity from Bank of America, N.A. (USA).  Doc. No. 102 at 57.  Neither agreement contains a "credit on receipt" provision.  Rather, they provide for different crediting of payments depending on the methods used and the time the payment was scheduled.  Both agreements provide that payments will be credited only on business days, which are defined to mean "Monday through Friday, excluding bank holidays."  Doc. No. 100-12 at 8; Doc. No. 100-13 at 11.

Counsel for the named Plaintiffs argued at the hearing that the different crediting provisions in these separate online banking and pay-by-phone agreements do not override the "credit on receipt" provision in the named Plaintiffs' cardholder agreements.  *See* Doc. No. 102 at 21-40. He relied on the following language in each agreement:  "[W]hen you use Online Banking services to access a credit account, you do so under the terms and conditions we gave you in the agreement and disclosure for the credit account."  Doc. No. 100-12 at 3; Doc. No. 100-13 at 4.

While Bank of America, N.A. (USA) could assert that individuals who made payments online and by phone should not be included in the proposed settlement class because these payments were governed by different crediting provisions set forth in the agreements made with Bank of America, N.A., it has chosen not to make that argument.  Instead, Bank of America, N.A. (USA) wishes to resolve the dispute in the manner indicated in the Amended Settlement Agreement.  Because the proposed breach of contract settlement class is based on alleged breach of the common cardholder agreements –  not the separate online banking and pay-by-phone

agreements – and the online banking and pay-by-phone agreements incorporate the common cardholder agreements by reference, I recommend that the Court find that the named Plaintiffs have standing to represent putative settlement class members who made payments online or by phone which were not credited on receipt.

### 3.      Definition of "Persons" and "Consumer Credit Card."

The original Settlement Agreement defined "Persons" to include  "firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities or other entities."  Doc. No. 65-1 ¶ 2(t).   In the Amended Settlement Agreement, "Persons" is now defined to include only natural persons.   Doc. No. 96-1 ¶ 2(r).  The proposed settlement class is further limited to "Persons" who had a "Consumer Credit Card account."  *Id.* ¶ 2(z).

During the hearing, counsel for Defendant advised the Court that, during the proposed class period, Bank of America, N.A. (USA) entered into small business line cardholder agreements with natural persons that permitted business use.  Doc. No. 102 at 59-60, 62.  Counsel could not recall whether these small business line cardholder agreements contained the same "credit on receipt" provision as in the named Plaintiffs' cardholder agreements.  *Id.* at 60.  However, counsel noted that "Consumer Credit Card," as defined in the Amended Settlement Agreement, means a credit card "containing the same contractual provision providing that payments would be credited upon receipt as contained in the cardholder agreement governing the named Plaintiffs' credit card accounts . . . ."  Doc. No. 96-1 ¶ 2(i).  Therefore, natural persons who held small business line cardholder agreements would only be included in the settlement class if

they had the same "credit on receipt" provision in their cardholder agreements as in the named Plaintiffs' cardholder agreements.

If the same "credit on receipt" provision is in the small business line cardholder agreements, I recommend that the Court find that the named Plaintiffs have standing to represent natural persons who held small business line cardholder agreements that contain the "credit on receipt" provision. In order for the Court to make this finding, however, counsel must present evidence to the Court in its response/objection to this Report and Recommendation regarding whether the small business line cardholder agreements in effect during the proposed class period contained the same "credit on receipt" provision contained in the named Plaintiffs' cardholder agreements.

     B.     *Requirements of Fed. R. Civ. P. 23(a).*

     1.     **Numerosity.**

The parties submitted a supplemental affidavit of Jacques Flachier providing further information about the estimated number of putative class members. Flachier states that 466,450 cardholders made a payment on or before the payment due date and were assessed a late fee.[4] Of these, 193,539 cardholders had small business accounts. If the small business cardholder agreements did not have the "credit on receipt" provision, the estimated number of putative class members would be 272,911. Doc. No. 104-1 at 2. Therefore, even if small business cardholders are excluded, the proposed settlement class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

---

[4] Flachier averred that 11,614 of these payments were made by phone and 2,955 of these payments were made online. Doc. No. 104-1 at 2.

### 2.   Commonality.

The parties submitted cardholder agreements in effect during the proposed class period with the "credit on receipt" provision.  Doc. No. 100-1 through 100-11.  This is sufficient to establish commonality under Fed. R. Civ. P. 23 (a)(2) as to individuals who entered into cardholder agreements with the "credit on receipt" provision during the proposed class period.

### 3.   Typicality.

The information before the Court shows that claims of the named Plaintiffs are interrelated with the claims of putative settlement class members whose payments were not credited on the day received, resulting in a late payment fee.  This is sufficient to establish typicality as required by Fed. R. Civ. P. 23(a)(3).

### 4.   Adequacy of Representation.

Adequacy of representation under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. Of Sw. v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982)) ("*AmChem*").   The only potential conflict between the named Plaintiffs and other putative members of the settlement class is that the named Plaintiffs will each receive a $2,500.00 service fee deducted from the Settlement Amount before any payments are made to other settlement class members.

"Although there is no rule that settlements benefit all class members equally, a disparate distribution favoring the named plaintiffs requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class."  *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (internal citations omitted).  Incentive awards to named plaintiffs

in class action cases have been approved when the named plaintiffs actively participated in the litigation.  *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-22 (S.D. Fla. 2006) (collecting cases).  "The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (citing *Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998)).

The named Plaintiffs have submitted sworn statements setting forth the tasks they performed in prosecuting their respective cases.  Doc. Nos. 96-3, 96-4.  The amount of the proposed service award to each of them is not great in the context of the settlement amount. Therefore, the service award does not, at this preliminary approval stage, create the type of conflict that would preclude either named Plaintiff from being an adequate class representative.

      C.    *Requirements of Fed. R. Civ. P. 23(b).*

        1.    **Predominance.**

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *AmChem*, 521 U.S. at 623.  The Court earlier observed that assuming there could be classwide proof that each member of the settlement class had a cardholder agreement with Bank of America, N.A. (USA) that had the "credit upon receipt" provision contained in the named Plaintiffs' cardholder agreements, there still would need to be individual proof that the damages each settlement class member suffered resulted from the failure of Bank of America, N.A. (USA) to credit the payment on the day it was received.  Doc. No. 75 at 24-25.

The parties have resolved the problem of individual proof of damages in the Amended Settlement Agreement.  Rather than putting the burden on the settlement class members to establish their damages, Bank of America, N.A. (USA) has agreed to assume the burden to review its books and records upon receipt of proper and timely claim forms to confirm that a claimant has suffered damages.  Doc. No. 97 at 11.  Settlement class members need only submit a claim form stating the name on the credit card account, the last four digits of the claimant's social security number, current contact information and that the claimant has "a good faith belief that I made a payment equal to or in excess of the minimum payment due . . . on or before my payment due date and was assessed a late payment fee that was not waived or refunded."  Doc. No. 96-1 at 42.

Under these circumstances, predominance exists.

**2.    Superiority**.

The parties have now submitted information showing that members of the proposed settlement class had cardholder agreements with Bank of America, N.A. (USA) that contained the same "credit on receipt" provision and, as discussed above, they have streamlined the method of determining damages for the settlement class members.  Because of the small amount of damages at issue for each individual claimant, a class action is superior to filing individual claims.  *See, e.g.,* Doc. No. 96-5 (Decl. of Amy Guinan); Doc. No. 96-6 (Decl. of Lynn Drysdale).

D.    *Fair, Reasonable and Adequate Settlement.*

Rule 23(e)(2) provides that if a proposed class action settlement would bind absent class members, the Court may approve it only after a hearing and based on a finding that it is fair, reasonable, and adequate.  Because the parties request that the Court approve the Amended Settlement Agreement preliminarily, a discussion of whether the Amended Settlement Agreement

is fair, reasonable and adequate is appropriate.  Ultimately, as in *Trombley v. Bank of America Corporation*,  Case No. 1:08-cv-456-JD-LM (D.R.I.)*,* the Court will not be able to determine whether the (Second) Amended Settlement Agreement is fair, reasonable and adequate before the claims process is completed and objections (if any) are resolved.

1. **Payments to Approved Settlement Class Members**.

The original Settlement Agreement provided that each Approved Settlement Class Member could receive up to $28.00 in full satisfaction of his or her claim.  Doc. No. 65-1 ¶ 9(b).  In the Amended Settlement Agreement, each Approved Settlement Class Member could receive $40.00 for each late fee, up to a maximum of five Qualifying Payments.  Doc. No. 96-1 ¶ 9(b).  Therefore, Approved Settlement Class Members who paid multiple late fees as a result of Bank of America, N.A. (USA)'s failure to credit their payments on receipt could receive up to $200.00, provided that the Settlement Amount is sufficient to pay all of the claims.

As with the original Settlement Agreement, the total Settlement Amount under the Amended Settlement Agreement is $10,000,000.00.  Doc. No. 96-1 ¶ 2(y).  From this amount, the service award to the Representative Plaintiffs ($2,500.00 each), the Settlement Costs, and the approved attorneys' fees (up to $2,500,000.00) and costs would first be deducted, along with any other deduction permitted by the Court.  Doc. No. 96-1 ¶ 2(q), ¶ 12.  Thereafter, Approved Settlement Class Members would be paid on a *pro rata* basis if the Net Settlement Amount was insufficient to pay all Approved Settlement Class Members' claims in full.  If any funds remain after these payments, up to $500,000.00 will be paid to two *cy pres* beneficiaries.  Any remaining funds would revert to Defendant.

Rust Consulting, Inc. is the proposed Settlement Administrator.  It provided an affidavit of Jason Stinehart, a Project Administrator, stating that the estimated cost for Rust Consulting's services would be $118,875.00.  Doc. No. 96-8 at 4.  However, at the hearing on the motion, counsel stated that settlement costs could be as much as $500,000.00.  Doc. No. 102 at 6.  Counsel for Defendant candidly stated that he did not know what the settlement costs would be.  Doc. No. 102 at 7.

The Court will recall that a settlement class virtually identical to the settlement class proposed in the original Settlement Agreement in this case, albeit with a more recent class period, was preliminarily certified in *Trombley v. Bank of America Corporation*.  After notice was given in *Trombley*, less than 1% of the class members submitted claims.  Counsel for the parties in the present case estimated that if the claims rate is 1% of the putative settlement class, and the settlement costs are $500,000.00, more than $6,000,000.00 will be returned to the Defendant. Doc. No. 102 at 6.  If a claims-rate similar to the one in *Trombley* occurs in this case, the primary benefit from the Amended Settlement Agreement will go to the named Plaintiffs (who receive their claimed late fees plus service awards), counsel for the Plaintiffs (who may receive a fee award based on a percentage of the settlement amount), and the Defendant (who receives a release and potentially return of much of the $10,000,000.00 settlement amount).  Therefore, as noted above, final determination of whether the settlement is fair, reasonable and adequate cannot be made at this time.

**2.      Defendant Releasees and Released Claims.**

The scope of the "Defendant Releasees" and "Released Claims" has also been changed in the Amended Settlement Agreement.  Originally, the "Defendant Releasees" included FIA Card

-13-

Services, N.A.; its successors and assigns; and the future direct and indirect parents, subsidiaries, affiliates, associates, principals, trustees, partners, contractual counterparties, officers, directors, employees, agents, vendors, attorneys, shareholders, advisors, predecessors, successors, assigns, representatives, heirs, executors and administrators of any of the above.  Doc. No. 65-1 ¶ 2(l). The Court noted the inability of class members to identify individuals and entities who may, in the future, be among the Defendant Releasees.

The Amended Settlement Agreement narrows the definition of  "Defendant Releasees" to omit individuals and entities who are not currently identifiable.[5]  "Defendant Releasees" now means "FIA Card Services, N.A. and each of its past and present parents, subsidiaries, divisions, affiliates, predecessors, and assigns . . . , and past and present principals, trustees, partners, directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, vendors (including processing facilities), processors, wholesalers, resellers, distributors, and retailers."  Doc. No. 96-1 ¶ 2(j).  It is doubtful that a putative class member could identify all of the Defendant Releasees, even as narrowed, in light of the complicated relationships of the Bank of America family of companies.

The definition of "Released Claims" remains overly broad.  The Amended Settlement Agreement defines "Released Claims" to include all causes of action, whether known or unknown, matured or unmatured, accrued or not accrued that the settlement class members "ever had, now have, or can have, or shall or may hereafter have, either individually, or as a member of a class, against any and all Defendant Releasees for, based on, by reason of, or arising from or relating to

---

[5]  However, the amended CAFA notice continued to refer to successors to Bank of America, N.A. (USA) and FIA Card Services, N.A.  Doc. No. 100-14 at 3 n.1; Doc. No. 102 at 18.

the conduct alleged in the [*DeLeon* and *Mendoza* cases], including but not limited to" claims that could have been asserted against Bank of America, N.A. (USA), and its successor-in-interest, FIA Card Services, N.A., in the *DeLeon* and *Mendoza* cases.  Doc. No. 96-1 ¶ 2(v).[6] As discussed during the hearing, this language is so broad that it would release claims against Defendant Releasees other than Bank of America, N.A. (USA) who issued credit cards and who failed to credit payments made as provided for in governing cardholder agreements.   Doc. No. 102 at 13-17.  Counsel stipulated that the only claims that should be released are those that Plaintiffs DeLeon or Mendoza brought or could have brought against Bank of America, N.A. (USA).  *Id.* at 14, lines 20-24.  Several sections of the Amended Settlement Agreement would have to be revised to reflect these changes. *See, e.g.,* Doc. No. 96-1 ¶ 7(b) at 17.

### 3.    Requirement that Class Members Notify Joint Credit Card Holders.

In order to exclude oneself from the settlement class, a settlement class member is required to identify any joint account holders and affirm that the settlement class member has notified all joint account holders that they will be excluded from the settlement class as a result of the request for exclusion.  Doc. No. 96-1 ¶ 6(b). Due to the age of the matters in dispute, settlement class members may not recall who were joint account holders and may not be reasonably able to notify them (due to death, divorce, relocation to an unknown address, etc.).  *See* Doc. No. 75 at 39-40.

Defendant proposes to search its records to provide direct written notice to putative settlement class members.  Presumably, this review could also identify the joint account holders

---

[6] The Court previously questioned the meaning of claims released "on behalf of" others. Doc. No. 75 at 29. The "Covenants Not to Sue" provision has been amended to make clear that only claims that could have been asserted by the settlement class member would be released. *See* Doc. No. 96-1 ¶ 8.

and send notice directly to them.  Alternatively, the exclusion request should contain an option for a settlement class member to state that he or she cannot make the required notification and the reasons the notification cannot be made and give the Court discretion to exclude putative class members who cannot provide notice to joint account holders.

### 4.      Injunction.

The Amended Settlement Agreement provides that in the final order of approval, the Court will prohibit settlement class members from, among other things, continuing or pursuing any Released Claim in any proceeding.  Doc. No. 96-1 ¶ 4(a)(viii).  The parties agreed to withdraw the request for an injunction in both the preliminary and final approval orders.  Doc. No. 102 at 44-45.

### E.      *Notice*.

The notice forms submitted by the parties will require significant revision to conform them to the stipulated and proposed revisions to the Amended Settlement Agreement discussed above.[7] *See* Doc. No. 96-1 at 51-53.  Assuming that is done, the Court must consider whether the proposed short- and long-form notices satisfy the requirements of Fed. R. Civ. P. 23(c)(2)(B).

### 1.      Amended Short-Form Notice.

Rule 23(c)(2)(B)(iii) requires that putative class members be told about "the class claims, issues, or defenses."  The class claims are stated in the "What is This Case About?" section of the short-form notice, but the defenses are not stated.  Doc. No. 96-1 at 51.

Rule 23(c)(2)(B)(v) requires that the notice state that the Court will exclude from the class any member who so requests.  The short-form notice contains a provision entitled "You May

---

[7] Among other things, the notices must refer to credit card accounts with Bank of America, N.A. (USA), not with credit card accounts with FIA or FIA Card Services, N.A.

Request The Court Exclude You."  Doc. No. 96-1 at 52.  A provision should be inserted indicating that if a class member timely and properly requests exclusion, the Court will exclude the person from the class.

> ### 2.      Amended Long-Form Notice.

The "Who Represents Me?" and "Do I Have to Pay the Lawyers Representing Me?" provisions of the amended long-form notice should both make clear that any service fees and attorneys' fees and costs awarded by the Court will be deducted from the total settlement fund before payments are made to approved class members.  Doc. No. 96-1 at 45.

The "What Benefits Can I Receive as A Result of This Settlement?" provision of the amended long-form notice should advise the settlement class members that their claims could be denied for the "expressly excluded" reasons statement in the "Qualifying Payment" definition in the Amended Settlement Agreement, Doc. No. 96-1 ¶ 2(t).

The Appendix stating the "Released Claims, Releasees, and Covenants Not to Sue," must provide the definitions of defined terms, as amended by the parties' stipulation and pursuant to any further instructions from the Court.

> ### F.      Class Counsel.

Fed. R. Civ. P. 23(g) requires a Court that certifies a class action to appoint class counsel. The Amended Settlement Agreement contemplates that settlement class counsel will be lawyers designated by the Court from the law firms of Morgan & Morgan, P.A., Tampa, Florida, and CPLS, P.A., Orlando, Florida.  Doc. No. 96-1 ¶ 2(aa).  In the motion, Plaintiffs propose that John Yanchunis, Scott Wm. Weinstein, and J. Andrew Meyer of Morgan & Morgan, P.A., be appointed

"Lead Class Counsel," and that Teeluck Persad, Alberto E. Lugo-Janer and Samuel A. Walker of

CLPS, P.A., be appointed as additional "Class Counsel."

     In deciding who to appoint as class counsel, the Court must consider the following:

        (1)     the work counsel has done in identifying or investigating
                potential claims in the action;

        (2)     counsel's experience in handling class actions, other complex
                litigation, and the types of claims asserted in the action;

        (3)     counsel's knowledge of the applicable law; and,

        (4)     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i) - (iv).

     Attorney Meyer filed a declaration summarizing the work performed by proposed Lead

Class Counsel and Class Counsel along with information about each attorney's background and

experience.  Doc. No. 96-2.  The Court is also familiar with the work product filed and arguments

made in this case by these attorneys.

     Based on this information, I recommend that the Court find that none of the attorneys who

represented the named Plaintiffs through the filing of the Parties' Joint Renewed Motion for

Preliminary Approval of the Settlement Agreement and for Certification of the Settlement Class

(Doc. No. 71) have the necessary skill and experience to be class counsel.  Attorneys with Morgan

& Morgan, P.A., filed the original complaints in the wrong court against the wrong defendant

arising from causes of action long-ago abandoned.  While the CPLS, P.A., attorneys were finally

able to file class action complaints, they filed two competing cases rather than one class action

complaint on behalf of both of their clients.  Moreover, after the case was removed to this Court

and class certification was sought, the lawyers from CPLS, P.A., appear not to have been actively involved in the litigation.

The work product of the attorneys with Morgan & Morgan, P.A., who entered appearances shortly after the case was removed to this Court undermine a finding that they have the requisite skill and experience to act as class counsel.  Although they contend that they have extensive experience in class action matters, the original motion for class certification was not supported by evidence to establish any of the requirements under Fed. R. Civ. P. 23(a) or (b)(3).  As discussed in an earlier Report and Recommendation, the Settlement Agreement originally negotiated would have primarily benefitted named Plaintiffs' counsel and Defendant, not putative settlement class members.

Based on Attorney Meyer's declaration, the current Amended Settlement Agreement was negotiated with the assistance of Attorney Yanchunis, who joined Morgan & Morgan, P.A. a little over one year ago.  Doc. No. 102 at 3.  Attorney Yanchunis has extensive experience handling class actions and other complex litigation, and he is knowledgeable about class certification law. *See* Doc. No. 96-2 at 16-17.  He has previously served as co-lead class counsel in two large class actions, and as lead, co-lead or class counsel in a number of other cases in a wide variety of substantive areas.  *Id.* at 16.  His law firm has and will continue to commit the resources necessary to represent the settlement class members.  Accordingly, if a settlement class is preliminarily approved, I recommend that the Court appoint Attorney Yanchunis and the Tampa office of Morgan & Morgan, P.A., to be "Class Counsel."

G.      *Preliminary Approval Order.*

Counsel have not filed an amended preliminary approval order to the Court.

### III.    RECOMMENDATION.

The Court granted the parties leave to file another motion for preliminary approval of the settlement class "based on ambitious – but perhaps unrealistic –  representations of Plaintiffs' counsel that all flaws in the Settlement Agreement . . . can be cured."  Doc. No. 86 at 2. Plaintiffs now present the third motion to approve a settlement class based on an Amended Settlement Agreement that the parties stipulate must be changed even further.  Therefore, the papers currently before the Court do not solve all the flaws previously found by the Court.

Furthermore, as I stated during the hearing, I have a continuing concern due to the lack of precision in the parties' papers that the Court must scrutinize every line of every document to make sure that it has not missed something that extends the terms of the releases, covenants not to sue, and other provisions to the extent that the proposed settlement is not fair and reasonable.  *See* Doc. No. 102 at 19.  Before this can be done, the parties must prepare a Second Amended Settlement Agreement incorporating their proposed changes, as well as amended notices and claim forms.

As currently written, the Amended Settlement Agreement and supporting papers are not appropriate for preliminary approval.  As noted at the beginning of this Report, giving counsel an opportunity to made further amendments would unduly prolong this already aged case.  Therefore, I **RESPECTFULLY RECOMMEND** that Plaintiffs' Amended Motion for Preliminary Approval of Amended Settlement Agreement and for Certification of the Settlement Class (Doc. No. 96) be **DENIED**. Because the Court had jurisdiction under CAFA at the time the cases were removed, it retains jurisdiction to conduct a trial on the named Plaintiffs' individual claims.  Doc. No. 102 at 54-55.

Alternatively, of course, the Court may grant the motion based on the review of the (Second) Amended Settlement agreement and supporting documents, allow the claim process to proceed, and determine at the final approval hearing whether, in light of the claims made and exclusions granted, among other things, the settlement is fair, adequate and reasonable.  If the Court elects this option, counsel should advise the Court in their objections/response to this Report and Recommendation who will carry the costs of the claims administration process should the Court conclude, as did the Court in *Trombley*, that the final approval will not be granted.

Finally, I **RESPECTFULLY RECOMMEND** that the case remained stayed until the above-referenced motion is denied or, if the motion is granted, until the final approval hearing is held.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 28, 2013.

*Karla R. Spaulding*
_____
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

-21-